**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO:** _____

In re Application of

THE BANK OF NEW YORK MELLON,
SOLELY IN ITS CAPACITY AS TRUSTEE
FOR THE TV AZTECA, S.A.B. DE C.V. 8.25%
SENIOR NOTES DUE 2024,

For an Order Pursuant to 28 U.S.C. § 1782
To Conduct Discovery for Use in a Foreign
Proceeding

_____ /

**THE BANK OF NEW YORK MELLON'S *EX PARTE* APPLICATION FOR**
**AN ORDER AUTHORIZING DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

Daniel S. Fridman, Esq.
Fla. Bar No. 176478
FRIDMAN FELS & SOTO, PLLC
150 Alhambra Circle
Suite 715
Coral Gables, Florida  33134
Tel.: (305) 569-7720
daniel.fridman@ffslawfirm.com

Justin M. Ellis (*pro hac vice* forthcoming)
Zachary R. Ingber (*pro hac vice* forthcoming)
Eric J. Rolston (*pro hac vice* forthcoming)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
Tel.: (212) 607-8159
jellis@mololamken.com

*Counsel for The Bank of New York Mellon, as Trustee*

June 2, 2026

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

I.      The Notes and TV Azteca's Default ........................................................................ 2

II.     TV Azteca's Mexican *Concurso* Proceedings ...................................................... 3

III.    AlterBank's Loan to TV Azteca .............................................................................. 5

IV.     AlterBank's Connections to This District ............................................................... 9

ARGUMENT ...................................................................................................................... 10

I.      The Court Has Authority To Grant the Application Because § 1782's
        Requirements Are Satisfied ................................................................................... 11

        A.      The Trustee Is an "Interested Person" ....................................................... 12

        B.      The Trustee Seeks Testimonial and Documentary Evidence .................... 12

        C.      The Information Sought Is For Use in a Foreign Proceeding .................... 13

        D.      The Proposed Respondents Are "Found" in This District ......................... 14

II.     The Court Should Exercise Its Discretion To Grant The Application .................. 16

        A.      The Respondents Are Not Parties to the Foreign Proceeding ................... 16

        B.      The *Concurso* Court Is Receptive to Evidence Obtained Under § 1782 ... 18

        C.      The Application Does Not Circumvent Discovery Limitations ................. 19

        D.      The Requested Discovery Is Not Unduly Burdensome ............................. 21

III.    The Court Should Grant the Application *Ex Parte* .............................................. 23

CONCLUSION ................................................................................................................... 24

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Devine*,
 No. 21-13587, 2025 WL 764608 (11th Cir. Mar. 11, 2025)..............................................14, 16

*Angarita v. Hypertoyz, Inc.*,
 No. 23-CV-20695, 2023 WL 8593312 (S.D. Fla. Dec. 6, 2023)............................................15

*In re Application of Grupo Qumma*,
 No. 8-MC-85, 2005 WL 937486 (S.D.N.Y. Apr. 22, 2005).....................................................19

*In re Application of Mesa Power Grp., LLC*,
 878 F. Supp. 2d 1296 (S.D. Fla. July 13, 2012).......................................................................18

*In re Application of Salem*,
 No. 24-mc-5, 2024 WL 3026670 (S.D.N.Y. June 17, 2024)...................................................23

*In re Application of Victoria, LLC.*,
 No. 18-MC-21202, 2019 WL 8810208 (S.D. Fla. Jan. 11, 2019) ....................................14, 17

*In re Bank Otkritie Fin. Corp.*,
 No. 22-MC-50, 2022 WL 2384169 (S.D.N.Y. July 1, 2022) ..................................................14

*In re Bernal*,
 No. 18-MC-21951, 2018 WL 6620085 (S.D. Fla. Dec. 18, 2018) .........................................19

*In re Braga*,
 272 F.R.D. 621 (S.D. Fla. 2011)..............................................................................................23

*In re Browne*,
 No. 25-CV-21129, 2025 WL 1984291 (S.D. Fla. July 17, 2025)............................................12

*Bush v. Cardtronics, Inc.*,
 No. 20-H-2642, 2020 WL 6261694 (S.D. Tex. Oct. 23, 2020)..............................................19

*In re Clerici*,
 481 F.3d 1324 (11th Cir. 2007) ...................................................................................10, 11, 22

*Matter of Colombo Agroindustria S.A.*,
 No. 22-MC-21670, 2022 WL 2167719 (S.D. Fla. June 16, 2022) ....................................17, 23

*Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA),
 Inc.*, 747 F.3d 1262 (11th Cir. 2014) .................................................................................13, 21

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)................................................................................................14, 15

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2019)....................................................................................14, 16

*In re Edelman*,
  295 F.3d 171 (2d Cir. 2002)...........................................................................................14

*In re Ernesto Andrade Grp.*,
  712 F. Supp. 3d 438 (S.D.N.Y. 2024)............................................................................23

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995)...........................................................................................18

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021)........................................................................................................16

*In re Furstenberg Fin. SAS v. Litai Assets LLC*,
  877 F.3d 1031 (11th Cir. 2017) .....................................................................................12

*Glock v. Glock, Inc.*,
  797 F.3d 1002 (11th Cir. 2015) .................................................................................11, 21

*In re Glozman*,
  No. 25-MC-24525, 2026 WL 291008 (S.D. Fla. Feb. 4, 2026)....................................13

*Golant v. German Shepherd Dog Club of Am., Inc.*,
  26 So. 3d 60 (Fla. Dist. Ct. App. 2010) ........................................................................15

*In re Gonzalez*,
  No. 20-MC-24628, 2021 WL 3835180 (S.D. Fla. Apr. 14, 2021) ................................14

*Gonzalez v. Verfruco Foods, Inc.*,
  No. 21-12922, 2023 WL 1794391 (11th Cir. Feb. 7, 2023) ..........................................14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)............................................................................................... *passim*

*In re Kurbatova*,
  No. 18-MC-81554, 2019 WL 2180704 (S.D. Fla. May 20, 2019) ................................14

*In re Letter of Request from Gov't of France*,
  139 F.R.D. 588 (S.D.N.Y. 1991) ...................................................................................23

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015)...........................................................................................13

iii

*In re MTS Bank*,
 No. 17-MC-21545, 2017 WL 3155362 (S.D. Fla. July 25, 2017) ........................................... 17

*In re MTS Bank*,
 No. 17-MC-21545, 2017 WL 3276879 (S.D. Fla. Aug. 1, 2017) ..................................... 12, 22

*In re MTS Bank*,
 No. 17-MC-21545, 2018 WL 3145806 (S.D. Fla. June 27, 2018) ....................... 12, 18, 19, 20

*Sergeeva v. Tripleton Int'l Ltd.*,
 834 F.3d 1194 (11th Cir. 2016) ....................................................................................... 12

*In re Sociedad Militar Seguro de Vida*,
 985 F. Supp. 2d 1375 (N.D. Ga. 2013) .................................................................................. 23

*Storms v. Haugland Energy Grp., LLC*,
 No. 18-CV-80334, 2018 WL 4347603 (S.D. Fla. Aug. 17, 2018) ........................................ 15

*In re Tecnologias Relacionadas con Energia y Servicios*
 *Especializados, S.A. de C.V.*, No. 25-MC-435, 2026 WL 768850
 (S.D.N.Y. Mar. 18, 2026) .............................................................................................. 13, 18

*In re Travessia Securitizadora de Creditos Financeiros VIII S.A.*,
 707 F. Supp. 3d 1366 (S.D. Fla. 2023) ................................................................................. 23

*In re Travessia Securitizadora de Creditos Financeiros VIII S.A.*,
 No. 23-CV-24235, 2024 WL 4201982 (S.D. Fla. Aug. 14, 2024) ......................................... 14

*Victorian, LLC v. Likhtenfeld*,
 791 F. App'x 810 (11th Cir. 2019) ....................................................................................... 13

*In re Vitro S.A.B. de CV*,
 701 F.3d 1031 (5th Cir. 2012) ............................................................................................. 13

*Weber v. Finker*,
 554 F.3d 1379 (11th Cir.2009) ............................................................................................. 22

**Statutes**

11 U.S.C. § 1515 ......................................................................................................................... 21

28 U.S.C. § 1782 ............................................................................................................. *passim*

Fed. R. Civ. P. 26(b)(1) ................................................................................................................ 21

St. Lucia International Business Companies Act, Ch. 12.14 § 12(1)(a) ....................................... 10

iv

## INTRODUCTION

This *ex parte* application under 28 U.S.C. § 1782 seeks U.S. discovery into a potential $290 million fraudulent transfer at issue in a Mexican bankruptcy proceeding. The Bank of New York Mellon acts here as Trustee for Senior Notes issued by the Mexican media company TV Azteca. TV Azteca has been in default on the Notes since 2022 and owes the Trustee more than $630 million. In March 2026, TV Azteca filed a petition to begin "*concurso mercantil*" insolvency proceedings in Mexico. But just five weeks before that filing, TV Azteca entered into a $290 million secured loan agreement with AlterBank Limited – a St. Lucian "international bank" connected to prior fraudulent transfers and criminal activity. TV Azteca and AlterBank then amended the loan agreement *four days* before TV Azteca filed its insolvency petition. The Trustee's investigation suggests that AlterBank lacked the funds to make such a large loan by itself, and TV Azteca has repeatedly sought to conceal information concerning the loan from the Trustee. The available evidence thus suggests that the AlterBank loan may be a fraudulent transfer.

Accordingly, the Trustee seeks U.S. discovery so it can pursue fraudulent-transfer claims in the *concurso* proceedings. Six former and current AlterBank directors and officers reside and conduct AlterBank's business in this District, and the Trustee seeks leave to serve subpoenas relating to the TV Azteca loan on those individuals and AlterBank itself.[1] The Trustee's proposed subpoenas satisfy all requirements for discovery under § 1782. And courts have repeatedly allowed § 1782 discovery in similar circumstances. The Court should grant the application.

---

[1] In addition to AlterBank, the proposed respondents are: (1) Blas Santander; (2) Alexander Soroka; (3) Timothy Richards; (4) Alejandro Cespedes; (5) Julio Luis Santander; and (6) Juan Ramirez (collectively, the "Individual Respondents"). *See* pp. 9-10, *infra*. The proposed subpoenas are attached as an appendix to the application.

## BACKGROUND

### I.        The Notes and TV Azteca's Default

TV Azteca is a Mexican multimedia conglomerate.  Ellis Decl. ¶4; Ex. 4 ("Offering Circular") at 58-59.[2]  It issued $400 million of Notes under a 2017 Indenture and Global Note, with various TV Azteca subsidiaries as guarantors; The Bank of New York Mellon, as Trustee; and The Bank of New York Mellon, London Branch, as Principal Paying Agent.  Ellis Decl. ¶3; Ex. 2 (Indenture).  In the Indenture and Global Note, TV Azteca agreed to pay semi-annual interest and repay the $400 million in principal when the Notes matured in August 2024.  Ellis Decl. ¶¶3-4; Ex. 2 § 3.1; Ex. 3 ("Global Note") at PDF 4.[3]

The Indenture has multiple terms designed to ensure that TV Azteca repays the Notes.  TV Azteca cannot defer or amend its payment obligations without the majority of the Notes' Holders' written consent.  Ex. 2 § 9.2.  The Indenture also restricts TV Azteca's ability to incur additional debt, transact with affiliates, transfer assets, or incur new liens.  *Id.* §§ 3.9, 3.10, 3.12, 3.15, 3.16. And the Indenture also requires TV Azteca to provide detailed financial reports every quarter and to give notice of any breach of its obligations.  *Id.* §§ 3.5, 3.18, 6.1(b).

TV Azteca announced on February 9, 2021, that it would not make the interest payment due that day.  Ellis Decl. ¶7; Ex. 1 ("Stipulated Facts of TV Azteca") ¶23.  Since then, TV Azteca has failed to make *any* payments on the Notes, including either interest or the principal that came due when the Notes matured in 2024.  Ellis Decl. ¶8; Chang Decl. ¶¶9-12.  TV Azteca's subsidiaries also failed to honor their guarantee of the Notes.  Ellis Decl. ¶8; Chang Decl. ¶¶11-12. At the same time, TV Azteca continued to make timely payments on its other debts.  For instance,

---

[2] Unless otherwise noted, Exhibits refer to those attached to the Ellis Declaration filed with the Trustee's application.

[3] References to Exhibits' PDF pages are inclusive of the cover sheet identifying each Exhibit.

2

TV Azteca remained current on a loan with a related party that shares the same owner as TV Azteca, as well as a Mexican entity known as Capiprom. *See Fitch Affirms TV Azteca's IDRs at 'RD,'* Fitch Ratings (Jan. 30, 2023), available at https://bit.ly/48Joc2W.

The Trustee sent notices of events of default under the Indenture in March 2021 and March 2022, as well as notices of acceleration in August 2022. Ellis Decl. ¶¶9-10; Chang. Decl. ¶10; Exs. 6-9 (Notices of Default and Acceleration). The Trustee then brought a breach of contract action in New York state court, which TV Azteca removed to the Southern District of New York. Ellis Decl. ¶11; *see also* Ex. 2 §6.8 (the Trustee has authority to recover judgment for the Notes in its own name). In March 2026, the district court stayed discovery in that action and granted the Trustee leave to move for summary judgment against both TV Azteca and the Guarantor Defendants. Ellis Decl. ¶11. The parties are currently briefing the Trustee's summary judgment motion. *Id*.

## II.     TV Azteca's Mexican *Concurso* Proceedings

On February 26, 2026, TV Azteca's management group announced that TV Azteca's shareholders had approved filing a commercial bankruptcy proceeding in Mexico known as a *concurso mercantil*. Castillo Decl. ¶24; Ex. 12 (Press Release with Translation). On March 10, 2026, TV Azteca filed the *concurso* petition in the First Bankruptcy Court in Mexico City. Castillo Decl. ¶25.

Under Mexican law, a *concurso* begins with a preliminary "examination" phase followed by two stages if a *concurso* is declared. Castillo Decl. ¶¶4-5. *First*, during the preliminary examination (or "*visita*") phase, a court-appointed examiner inspects the debtor's records to assess whether the debtor is insolvent and meets the requirements for *concurso* relief. *Id*. ¶¶5-6. If so, the court declares the debtor insolvent and accepts the *concurso* petition. *Id*. ¶¶5-6. *Second*, during the "conciliation" phase, a court-appointed conciliator (or "*conciliador*") and the court

recognize and give priority to creditors' claims, and the conciliator seeks to facilitate a plan of reorganization for the company. *Id*. ¶¶8-9. The conciliation stage lasts a maximum of one year. *Id.* ¶21. *Third*, if the debtor and a majority of creditors cannot approve a plan, a liquidation (or "*quiebra*") phase begins where the debtor's assets are liquidated, similar to a Chapter 7 bankruptcy in the United States. *Id.* ¶23. As of June 2, 2026, TV Azteca's *concurso* remains in the initial examination stage. The conciliation stage is likely to begin in June 2026. *Id.* ¶29.

The examination phase of the *concurso* is *ex parte*. Castillo Decl. ¶7. If the Mexican court accepts and declares the *concurso*, the Trustee will submit written proof of claims to TV Azteca's conciliator to obtain recognition of the Notes and participate as a party in the *concurso*. *Id.* ¶¶10-12, 30-31. As a party, the Trustee will have a short window of just three to five days to dispute other creditors' claims as fraudulent transfers and challenge the classification and ranking of creditor claims. *Id.* ¶¶10-12. The Trustee may request additional time to submit foreign discovery in support of its claims, but whether to grant or deny this request is in the Mexican court's discretion. *Id.* ¶10.

To successfully challenge a claim as a fraudulent transfer under Mexican law, the Trustee needs evidence concerning: the transfer's economic terms; the relationship between the debtor and transferee; and the debtor's and transferee's knowledge and intent. Castillo Decl. ¶¶13-14, 36. Mexican law permits parties to submit any lawfully obtained evidence that helps the tribunal ascertain the truth. *Id*. ¶16. However, while *concurso* rules allow creditors to submit relevant evidence and request limited categories of information from the debtor, creditors generally do not have an opportunity to obtain discovery from other creditors in Mexico. *Id.* ¶¶17-20, 40.

In connection with its *concurso* petition, TV Azteca submitted financial statements from between 2022 and 2024, a preliminary list of creditors and outstanding claims, a list of ongoing

litigation, and a restructuring plan. Castillo Decl. ¶ 34. In the Southern District of New York action, the Trustee repeatedly requested that TV Azteca produce its *concurso* filing, but TV Azteca refused. Ellis Decl. ¶¶ 14-15. The Trustee also repeatedly requested certain information, including financial statements, pursuant to the Trustee's rights under the Indenture. Chang Decl. ¶ 13. But TV Azteca also refused those requests. Ellis Decl. ¶ 15.

### III.   AlterBank's Loan to TV Azteca

The Trustee obtained the *concurso* petition on May 14, 2026 through a constitutional challenge in the Mexican courts to certain aspects of the *concurso* proceedings. Castillo Decl. ¶ 14. The *concurso* petition reveals that, weeks before filing the *concurso* petition, TV Azteca entered into a $290 million secured credit agreement with AlterBank, an "alternative financial institution" incorporated in St. Lucia. "AlterBank," https://www.alterbank.com; Ellis Decl. ¶¶ 17-18; Castillo Decl. ¶¶ 32-33. TV Azteca and AlterBank then amended the loan agreement on March 6, 2026, only four days before TV Azteca filed the petition. Castillo Decl. ¶ 33. Based on the Trustee's ongoing investigation, there are at least five reasons to believe that the AlterBank loan is a fraudulent transfer under Mexican law.

*First*, the AlterBank loan's timing and circumstances are indicative of a fraudulent transfer. TV Azteca executed a secured loan subordinating the Notes to the AlterBank loan around the same time that its shareholders voted to approve the *concurso* filing, and it amended the loan after the company voted to seek *concurso* protection. TV Azteca also publicly announced the results of the shareholder vote approximately one week before amending the AlterBank loan and approximately two weeks before the *concurso* petition was filed. Ellis Decl. ¶ 14; Castillo Decl. ¶¶ 24-25; Ex. 12. TV Azteca had also claimed as early as December 2025 that it was financially "impossib[le]" to

pay the Notes due to TV Azteca's tax liabilities.[4]  TV Azteca thus negotiated, executed, and then amended the AlterBank loan—TV Azteca's largest loan except for the Notes and its first new third-party debt in at least four years—at a time when TV Azteca was, by its own public statements, insolvent.  In addition, TV Azteca took out this loan while defending litigation over the more than $630 million in Notes it failed to pay.  *See* pp. 2-3, *supra*.

*Second*, AlterBank has recently been connected to other fraudulent transfers and criminal activity.  AlterBank was founded in 2023 by Juan Franciso Ramirez, the former owner and chairman of Nodus International Bank.  Ellis Decl. ¶¶ 18-21.  In October 2023, Puerto Rico's bank regulator, the Office of the Commissioner of Financial Institutions ("OCIF"), placed Nodus in receivership and found that Nodus had defrauded its depositors and creditors.  *Id*. ¶¶ 20-21.  OCIF also found that Mr. Ramirez and another individual had made fraudulent transfers to deplete Nodus's assets after it was ordered to liquidate.  *Id*. ¶¶ 20-21; Ex. 16 (OCIF Order).  Mr. Ramirez later pled guilty to conspiracy to commit wire fraud for siphoning depositors' funds for his personal benefit.  *See* Factual Proffer in Support of Guilty Plea, *United States v. Ramirez*, No. 25-cr-20384, Dkt. 71 (S.D. Fla. Nov. 22, 2025).

In December 2024, Ramirez purported to resign from AlterBank's board and transferred ownership of AlterBank to Augusto César Castillo Chávez, a Venezuelan citizen with an address in Mexico City.  Ellis Decl. ¶ 22; Ex. 14 (AlterBank Register) at 7.  However, Mr. Castillo Chávez has no apparent experience owning or managing a financial institution.  Ellis Decl. ¶ 22; Ex. 14 (AlterBank Register) at 2, 9.  Meanwhile, AlterBank remains tied to Mr. Ramirez.  AlterBank's current director and "chief business officer" responsible for AlterBank's "day-to-day business

---

[4] Answer at 12, *The Bank of New York Mellon v. TV Azteca, S.A.B. de C.V., et al.*, No. 22-cv-8164, Dkt. 148 (S.D.N.Y. Nov. 26, 2025); *see also* Letter dated Dec. 7, 2025 at 2, *The Bank of New York Mellon v. TV Azteca, S.A.B. de C.V., et al.*, No. 22-cv-8164, Dkt. 157 (S.D.N.Y. Dec. 7, 2025).

operations," Blas Santander, worked with Mr. Ramirez at AlterBank before Mr. Ramirez's resignation. Ellis Decl. ¶23; Ex. 14 at 7-9 (noting dates of Mr. Ramirez's resignation and Mr. Santander's appointment); Ex. 18 (Santander LinkedIn).

*Third*, it is doubtful that AlterBank had the capacity to extend a $290 million loan to TV Azteca by itself. AlterBank is not a traditional bank. It describes itself as an "alternative financial institution" founded in March 2023. Ellis Decl. ¶18. There is no public record of what assets AlterBank has under management and no indication that it would have the funds necessary to make such a large loan. Ellis Decl. ¶¶21, 27. In its own words, AlterBank offers "international trade products to small and medium-sized enterprises," not nine-figure loans to distressed companies. "AlterBank," https://www.alterbank.com.

In fact, in April 2024, Puerto Rican regulators found that AlterBank lacked the capacity to take on *any* new clients. During Nodus's OCIF liquidation, Mr. Ramirez proposed to transfer Nodus's assets to AlterBank. Ellis Decl. ¶21; Ex. 16 (OCIF Order) ¶¶130-131; *id.* at p. 31 (describing AlterBank as "not qualified to accept depositors"). OCIF rejected that proposal because AlterBank was "not ready to receive new customers, as it did not possess the licenses required to operate in Saint Lucia nor the infrastructure necessary to fulfill its obligations to the Receiver." Ellis Decl. ¶21; Ex. 16 (OCIF Order) ¶¶130-131. There is no public information showing that AlterBank has improved its compliance or infrastructure since the 2024 order.

*Fourth*, the AlterBank loan's terms seem designed to frustrate repayment of the Notes. TV Azteca and AlterBank structured the loan as secured and therefore senior to the Notes, giving AlterBank priority over the Notes in the *concurso*, in violation of Indenture provisions restricting TV Azteca from issuing senior or secured debt. *See* p. 2, *supra* (noting Indenture restrictions). The loan, if valid, directly reduces the amount the Trustee could recover in the *concurso*. Castillo

Decl. ¶ 37. TV Azteca and AlterBank also structured the loan to mature in less than six months, requiring TV Azteca to repay the loan or lose its collateral at a point when it claims it is illiquid and insolvent. Ex. 2 to Castillo Decl. (noting AlterBank loan's July 2026 maturity).

*Fifth*, TV Azteca has repeatedly hidden the AlterBank loan from the Trustee. TV Azteca never sought or received approval for the AlterBank loan from a majority of the Note Holders, as the Indenture requires. Ex. 2 §§ 3.9(a) (restriction on additional debt), 9.2(a) (requirements to waive restrictions under the Indenture); Ellis Decl. ¶ 5; Chang Decl. ¶ 14. TV Azteca has also breached its duty to provide financial statements to the Trustee since at least 2022, despite the Trustee's repeated requests. Ellis Decl. ¶ 6; Chang Decl. ¶ 13; *see also* Ex. 2 § 3.18. And TV Azteca repeatedly refused to provide the Trustee a copy of its *concurso* petition that revealed the AlterBank loan. Ellis Decl. ¶¶ 14-15.[5]

Given these badges of fraud, the Trustee intends to challenge the AlterBank loan in the Mexican *concurso* proceedings. Castillo Decl. ¶ 35. Potential challenges under Mexican law include, but are not limited to: fraudulent transfer claims; claims based on conducting transactions outside of fair market conditions; clawing back funds resulting from fraudulent transfers; and challenges to the classification or ranking of the Notes and the AlterBank loan. Castillo Decl. ¶¶ 10-12, 35-36. In preparation for bringing these claims, the Trustee and its counsel are investigating the AlterBank loan. Ellis Decl. ¶¶ 18-27. Accordingly, the Trustee seeks discovery from AlterBank, and its directors and officers, regarding the loan. Castillo Decl. ¶¶ 36-40.

---

[5] *See also, e.g.*, Letter at 3, *Bank of N.Y. Mellon v. TV Azteca, S.A.B. de C.V.*, No. 22-cv-8164, Dkt. 242 (S.D.N.Y. Mar. 18, 2026).

**IV.    AlterBank's Connections to This District**

AlterBank has strong connections to this District.  According to AlterBank's corporate filings and other public records, five current AlterBank directors and officers are located in this District.

- Blas Santander, AlterBank's director and "Chief Business Officer" who is "responsible for the day-to-day business operations for the [b]ank," is an American citizen whose address is 2501 Southwest 24th Avenue, Miami, Florida 33133. Ex. 18 (LinkedIn); Ellis Decl. ¶24(a); Ex. 14 (AlterBank Register) at PDF 9.

- Alexander Soroka, a director, resides at 952 Mockingbird Lane, Apartment 603, Plantation, Florida 33324.  Ellis Decl. ¶24(b); Ex. 14 (AlterBank Register) at PDF 10; Ex. 19 (LinkedIn).

- Timothy Richards, a director, is an American citizen and director whose address is 2000 Salzedo Street, Apartment 806, Coral Gables, Florida 33134.  Ellis Decl. ¶24(c); Ex. 14 (AlterBank Register) at PDF 11; Ex. 20 (LinkedIn).

- Alejandro Cespedes, Board Secretary and Economist, is an American citizen whose address is 2967 Bridgeport Avenue, Miami, Florida 33133.  Ellis Decl. ¶24(d); Ex. 14 (AlterBank Register) at PDF 13; Ex. 21 (LinkedIn).

- Julio Luis Santander is AlterBank's senior manager of regional operations based in Miami.  Ellis Decl. ¶24(e); Ex. 22 (LinkedIn).

In addition, Juan Ramirez, AlterBank's former owner and director, resides at 2821 S Bayshore Drive 33133, Unit 11C, Miami, Florida.  Ellis Decl. ¶24(f); Ex. 14 (AlterBank Register) at PDF 8.  AlterBank's LinkedIn page also shows that the Miami-Fort Lauderdale area has the highest number of individuals associated with AlterBank.  Ellis Decl. ¶26; Ex. 23 (LinkedIn).

By contrast, AlterBank's publicly available St. Lucia address is a mostly unoccupied office with just three staff members: a receptionist, a marketing employee, and a manager.  Ellis Decl.

¶27.[6]   Upon information and belief, AlterBank's directors and officers instead carry on AlterBank's business largely from their residences in Florida.  AlterBank also does not have a customer base in St. Lucia.  Under St. Lucian law, International Business Companies such as AlterBank are prohibited from "carry[ing] on business with persons resident in Saint Lucia."[7]

## ARGUMENT

Under § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a).  The Supreme Court and Eleventh Circuit have laid out a two-step process for § 1782 applications.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255-66 (2004); *In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007).  A district court must first decide whether it has authority to grant discovery under the statute.  *Clerici*, 481 F.3d at 1331-32.  Authority to grant a § 1782 application exists if:

(1)  the request is made by an "interested person";

(2)  the request seeks evidence, which may be a person's "testimony or statement" or the production of a document or other thing;

(3)  the evidence is "for use in a proceeding in a foreign or international tribunal"; and

(4)  the person from whom discovery is sought resides or is "found in the district of the district court ruling on the application for assistance."

*Id.* (quoting 28 U.S.C. § 1782).

---

[6] This address was listed by the Financial Services Regulatory Authority for Saint Lucia.  Ellis Decl. ¶27.  AlterBank's corporate filings list only a PO Box as its "Registered Office."  Ex. 14 (AlterBank Register) at PDF 2.  AlterBank's website does not list an address.  "AlterBank," https://www.alterbank.com.

[7] St. Lucia International Business Companies Act, Ch. 12.14 §12(1)(a); *see also* Ex. 14 at PDF 2 (AlterBank Register) (noting filing pursuant to International Business Companies Act, Ch. 12.14).

If those conditions are met, the court must then decide whether to exercise its discretion and grant the application. *Intel*, 542 U.S. at 264-66; *Clerici*, 481 F.3d at 1334. In *Intel*, the Supreme Court set out four factors for courts to consider:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding";
>
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
>
> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
>
> (4) whether the discovery request is "unduly intrusive or burdensome."

*Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264-65). Courts also consider the twin aims of the statute: "to provide efficient means of assistance in our federal courts for litigants involved in international litigation and to prompt foreign courts to follow our generous example and provide similar assistance to our court systems." *Glock v. Glock, Inc.*, 797 F.3d 1002, 1006-07 (11th Cir. 2015) (cleaned up).

The Trustee's application satisfies both steps. The Court has authority to grant the application because the statutory requirements are satisfied. And *Intel*'s discretionary factors strongly favor granting the application.

## I.  THE COURT HAS AUTHORITY TO GRANT THE APPLICATION BECAUSE § 1782'S REQUIREMENTS ARE SATISFIED

Each of the four statutory requirements under § 1782 are met. *Clerici*, 481 F.3d at 1331-32. The Trustee is an "interested person" in the *concurso* and seeks to serve the proposed subpoenas on Respondents in this District for documents and deposition testimony for use in the *concurso*.

11

### A.      The Trustee Is an "Interested Person"

The Trustee is an "interested person" in the *concurso* because it will appear and litigate in that proceeding to recover what it is owed on the Notes.  Castillo Decl. ¶¶30-31, 34-35; *see also* Ex. 3 to Castillo Decl. (*concurso* petition listing the Notes as TV Azteca's most significant overdue liabilities).  "No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256; *see also In re Browne*, No. 25-cv-21129, 2025 WL 1984291, at *4 (S.D. Fla. July 17, 2025) (applicant that "is or will be a litigant" is an "interested person[ ]").  And while the Trustee cannot participate until the *concurso* is accepted, a person that merely plans to participate in a proceeding, or is seeking to do so, is still "interested" under § 1782.  *In re Furstenberg Fin. SAS v. Litai Assets LLC,* 877 F.3d 1031, 1035 (11th Cir. 2017) (applicant that "plan[ned]" to file criminal complaint was "interested person"); *In re MTS Bank*, No. 17-MC-21545, 2018 WL 3145806, at *4 (S.D. Fla. June 27, 2018) (creditor that applied to participate in foreign bankruptcy was "interested person"); *In re MTS Bank*, No. 17-MC-21545, 2017 WL 3276879, at *13 (S.D. Fla. Aug. 1, 2017) ("Section 1782 is designed to support such contemplated claims" (internal quotations omitted)) (collecting cases).

### B.      The Trustee Seeks Testimonial and Documentary Evidence

The Trustee's proposed subpoenas seek documents about: (1) AlterBank's ownership and finances; (2) the loan extended to TV Azteca; and (3) the relationship between AlterBank, TV Azteca, and TV Azteca's owners and affiliates.  The Trustee further requests leave to depose the six current and former AlterBank directors and officers who are likely to have information on those topics, as well as AlterBank.  This "testimony and documentary evidence as listed in the subpoenas" meets the second § 1782 requirement.  *MTS Bank*, 2017 WL 3276879, at *4.

This information is also in Respondents' "possession, custody, or control." *See Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016).  In addition to AlterBank itself,

Respondents are AlterBank's directors, senior officers, and a former owner. It is highly likely that Respondents have information about AlterBank's ownership and finances and the TV Azteca loan. This information is proper testimony and documentary evidence. *Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.,* 747 F.3d 1262, 1272 (11th Cir. 2014) (under § 1782, courts "should grant discovery under the Federal Rules of Civil Procedure").

### C.      The Information Sought Is For Use in a Foreign Proceeding

The discovery the Trustee seeks is "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). Courts have held that foreign bankruptcies, including Mexican *concurso* bankruptcies, are foreign proceedings. *See, e.g.*, *Victorian, LLC v. Likhtenfeld*, 791 F. App'x 810, 816 (11th Cir. 2019) (Russian bankruptcy); *In re Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. de C.V.*, No. 25-MC-0435, 2026 WL 770360, at *5 (S.D.N.Y. Feb. 9, 2026), *report and recommendation adopted sub nom.*, No. 25-MC-435, 2026 WL 768850 (S.D.N.Y. Mar. 18, 2026) (Mexican bankruptcy); *see also In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1038 n.1 (5th Cir. 2012) ("A *concurso* proceeding is the Mexican equivalent of a voluntary judicial reorganization proceeding under United States law."). Although the *concurso* petition has not yet been accepted, to satisfy § 1782 a foreign proceeding need only be "within reasonable contemplation," *Intel*, 542 U.S. at 259, and "more than speculative," *Consorcio Ecuatoriano*, 747 F.3d at 1270. The *concurso* is not speculative. TV Azteca voluntarily petitioned to be declared insolvent, the proceedings are in the preliminary *visita* (examination) stage, and TV Azteca listed both the AlterBank loan and the Notes among its debts. Castillo Decl. ¶¶ 27, 33-34.

In addition, the Trustee's discovery is "for use" in the *concurso*. Discovery is "for use" in a foreign proceeding so long as the information will "be employed with some advantage or serve some use in the proceeding." *In re Glozman,* No. 25-MC-24525, 2026 WL 291008, at *2 (S.D. Fla. Feb. 4, 2026) (collecting cases); *see also Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)

13

(similar).  Here, the Trustee seeks to use the AlterBank discovery to investigate and prosecute claims challenging the loan – including potential fraudulent transfer claims – in the *concurso*. Castillo Decl. ¶¶35-40; *see* pp 5-8, *supra*.  Courts in this District and elsewhere have consistently found similar discovery permissible under §1782.  *In re Travessia Securitizadora de Creditos Financeiros VIII S.A.*, No. 23-CV-24235, 2024 WL 4201982, at \*2 (S.D. Fla. Aug. 14, 2024) (documentary evidence and depositions to investigate and prove fraudulent transfer claims);  *In re Gonzalez*, No. 20-MC-24628, 2021 WL 3835180, at \*1 (S.D. Fla. Apr. 14, 2021) (similar), *aff'd sub nom.*, 2023 WL 1794391 (11th Cir. Feb. 7, 2023); *In re Bank Otkritie Fin. Corp.*, No. 22-MC-50, 2022 WL 2384169, at \*1 (S.D.N.Y. July 1, 2022) (similar); *In re Application of Victoria, LLC.*, No. 18-MC-21202, 2019 WL 8810208, at \*2 (S.D. Fla. Jan. 11, 2019), *aff'd sub nom.*, 791 F. App'x 810 (11th Cir. 2019) (discovery for use by creditor in foreign bankruptcy).

### D.    The Proposed Respondents Are "Found" in This District

Each proposed Respondent is also "found" in this District.  Section 1782's "resides or is found" requirement is coterminous with "the limits of personal jurisdiction consistent with due process."  *Absolute Activist Value Master Fund Ltd. v. Devine*, No. 21-13587, 2025 WL 764608, at \*8 (11th Cir. Mar. 11, 2025) (citing *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019)).  Accordingly, a respondent is "found" in this District if the Court could constitutionally exercise general jurisdiction, specific jurisdiction, or "tag jurisdiction" based on service of process.  *Id.* (citing *In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002)); *see also In re Kurbatova*, No. 18-MC-81554, 2019 WL 2180704, at \*2 (S.D. Fla. May 20, 2019) (§1782 respondent was "found" in the district where it could be served under "tag" jurisdiction).

There is general jurisdiction over each respondent.  General jurisdiction is appropriate where the respondent's "affiliations . . . are so continuous and systematic as to render it essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (cleaned up).

14

Florida courts have general jurisdiction over Florida residents. *Angarita v. Hypertoyz, Inc.*, No. 23-CV-20695, 2023 WL 8593312, at *9 (S.D. Fla. Dec. 6, 2023). And Florida courts may exercise general jurisdiction over corporations that are incorporated or have a principal place of business in Florida. *Storms v. Haugland Energy Grp., LLC*, No. 18-CV-80334, 2018 WL 4347603, at *5 (S.D. Fla. Aug. 17, 2018) (citing *Daimler*, 571 U.S. at 137). Here, the Court has general jurisdiction over the six Individual Respondents because each maintains a home address in this District. Ellis Decl. ¶24. Indeed, five of the Individual Respondents list *only* Florida addresses on AlterBank's register. *Id.*

AlterBank is also subject to general jurisdiction in this District because its effective principal place of business is Florida. According to the Trustee's investigation, most of AlterBank's directors live in this District, this District has the highest number of AlterBank employees, and AlterBank does business in this District through its officers, employees, and directors. *See* pp. 8-9, *supra*; Ellis Decl. ¶¶24-27. AlterBank's St. Lucia address, on the other hand, is largely unoccupied and houses only a receptionist, a marketing professional, and a manager. Ellis Decl. ¶27. There is no reason to think that AlterBank negotiates, executes, or conducts diligence on $290 million secured loans from that office. *Id.* ¶¶24-27. AlterBank also cannot, under St. Lucian law, have customers who are residents of St. Lucia. *See* p. 10, *supra*. Those facts warrant exercising general jurisdiction over AlterBank because they strongly support that AlterBank's principal place of business is in this District. *Golant v. German Shepherd Dog Club of Am., Inc.*, 26 So. 3d 60, 63 (Fla. Dist. Ct. App. 2010) (company was subject to jurisdiction in Florida where it "maintains no physical office and [company] business is conducted largely, if not exclusively, from the homes of its Board members" in Florida).

15

In addition, all of the proposed Respondents are "found" in the District because they are subject to specific jurisdiction here.  Specific jurisdiction exists when the claims "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021).  The Trustee's potential claims concerning the AlterBank loan—and Respondents' possession of relevant evidence in this District—arise out of Respondents conducting AlterBank's business in this District.  *See Absolute Activist*, 2025 WL 764608, at *8 (citing *Valle Ruiz* 939 F.3d at 530).  Each Individual Respondent conducts AlterBank's affairs within this District, listing only Florida addresses within this District in AlterBank's register and on LinkedIn.  *See* pp. 9-10, *supra*.

## II.   THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT THE APPLICATION

The *Intel* factors also support granting the application.  542 U.S. at 264-65.  Without the Court's assistance, the Trustee will not have a meaningful way to seek discovery from AlterBank or its directors and officers.  Mexican courts are routinely receptive to § 1782 discovery.  The proposed subpoenas in no way circumvent proof-gathering restrictions in either the Mexican or United States courts.  And the subpoenas are relevant and proportional to the Trustee's claims in the *concurso*.

### A.   The Respondents Are Not Parties to the Foreign Proceeding

The first *Intel* factor is whether "the person from whom discovery is sought is a participant in the foreign proceeding."  *Intel*, 542 U.S. at 264.  Because "[a] foreign tribunal . . . can itself order [parties] to produce evidence," "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Id.* at 264.  When the material is in the hands of a non-party, "their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Id.*

16

None of the proposed subpoena respondents have appeared in the *concurso* proceeding, which is still in the examination phase.  Castillo Decl. ¶¶ 27, 40.  Even if AlterBank appears as a creditor in the *concurso* once it is declared, the Individual Respondents are not creditors of TV Azteca and will therefore not appear.

Discovery sought from AlterBank and its directors and officers is also beyond the Mexican courts' jurisdictional reach.  Castillo Decl. ¶ 20.  The Individual Respondents reside in Florida and are generally U.S. citizens, with no apparent connections to Mexico.  Ellis Decl. ¶¶ 24-26.[8] AlterBank operates through its directors and employees in Florida without any apparent offices or employees in Mexico.  *See* pp. 9-10, *supra*.[9]  The *Intel* factors favor the applicant where respondents are based outside the jurisdiction of the foreign tribunal.  *Matter of Colombo Agroindustria S.A.*, No. 22-MC-21670, 2022 WL 2167719, at *2 (S.D. Fla. June 16, 2022); *Victoria*, 2019 WL 8810208, at *9.

Even if AlterBank appears as a creditor, the *concurso* does not provide the Trustee a meaningful opportunity to obtain third-party discovery from AlterBank, or its directors or employees.  Castillo Decl. ¶¶ 17-20, 40.[10]  This discovery is critical to the Trustee's claims in the

---

[8] The citizenship of two Respondents is unknown.

[9] As of December 30, 2024, Augusto César Castillo Chávez, a Venezuelan citizen with an address in Mexico, is the listed owner of AlterBank and a director.  Ex. 14 at PDF 3, 10.  There is no information indicating that Mr. Castillo Chávez is engaged in AlterBank's day-to-day operations, and he has no apparent experience owning or managing a financial institution.  *See* pp. 6-7, *supra*.

[10] As the Castillo Declaration explains, creditors in a *concurso* may request narrowly tailored discovery from the *debtor* but are generally unable to obtain or compel discovery from other creditors.  Castillo Decl. ¶¶ 17-20.  Courts in this District routinely grant § 1782 applications for non-debtor discovery absent specific restrictions by the foreign court, even when the foreign proceedings provide limited opportunities to request information.  *See Victoria*, 2019 WL 8810208, at *8-9 (limited discovery could be requested through receiver); *MTS Bank*, No. 17-MC-21545, 2017 WL 3155362, at *7-8 (S.D. Fla. July 25, 2017) (same); *see also* Castillo Decl. ¶ 15 (information obtained through § 1782 is admissible in *concurso*).

*concurso*, especially given TV Azteca's repeated defiance of its obligations to provide relevant information.  TV Azteca refused the Trustee's requests for information required by the Indenture as well as any information relating to the *concurso*.  Ellis Decl. ¶¶ 14-15.  Those refusals effectively concealed the AlterBank loan until the Trustee independently obtained the *concurso* filings.  *See* pp. 4-5, *supra*.  Moreover, TV Azteca will not have materials solely in the possession of AlterBank, its directors and officers, or its affiliates.  Essential information regarding the Trustee's potential fraudulent transfer claims thus "may be unobtainable" without third-party discovery.  *Intel*, 542 U.S. at 264.

Courts regularly find that the first *Intel* factor favors U.S. discovery to support claims in foreign bankruptcy proceedings, including Mexico.[11]  This Court should reach the same result.

**B.      The *Concurso* Court Is Receptive to Evidence Obtained Under § 1782**

Under the next *Intel* factor, courts weigh "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the [tribunal] to U.S. federal-court judicial assistance."  542 U.S. at 264.  This inquiry is limited:  A court "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782."  *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995).  A "suspicion that the evidence gathered would ultimately be rejected is not enough to overcome the presumption that district courts allow for discovery to proceed under section 1782 to promote the statute's goals of efficiency and comity."  *MTS Bank*, 2018 WL 3145806, at *7; *see also In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1304 n.3 (S.D. Fla. July 13, 2012).

---

[11] *See, e.g.*, *Victoria, LLC v. Likhtenfeld*, 791 F. App'x 810, 817 (11th Cir. 2019); *In re Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. De C.V.*, No. 25-MC-0435, 2026 WL 770360, at *5 (S.D.N.Y. Feb. 9, 2026), *report and recommendation adopted sub nom. In re Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. de C.V.*, No. 25-MC-435 (JPO), 2026 WL 768850 (S.D.N.Y. Mar. 18, 2026).

This factor weighs heavily towards granting the application.  The *concurso* court will accept evidence lawfully obtained under the § 1782 process.  Castillo Decl. ¶¶ 15-16.  The First Bankruptcy Court in Mexico City has issued no specific directions or "authoritative proof" that it would reject § 1782 evidence.  *See MTS Bank*, 2018 WL 3145806, at *7.  On the contrary, Mexican courts must consider relevant evidence obtained through foreign discovery proceedings and have repeatedly considered evidence obtained under § 1782.  *See* Castillo Decl. ¶¶ 15-16; *see also Bush v. Cardtronics, Inc.,* No. 20-H-2642, 2020 WL 6261694, at *4 (S.D. Tex. Oct. 23, 2020); *In re Application of Grupo Qumma,* No. 8-MC-85, 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005).

In fact, the *concurso* court will expect that the Trustee gathers this information promptly for use in that proceeding.  Castillo Decl. ¶¶ 38-40.  The timing of *concurso* proceedings makes early third-party discovery essential.  Castillo Decl. ¶¶ 12, 38.  The Trustee is unable to appear in the *concurso* until the conciliation stage, which may begin at any moment.  Castillo Decl. ¶¶ 10, 29.  Once that stage begins, it is generally limited by statute to just 185 days, with a short period of only three to five days to bring the Trustee's contemplated claims once the Trustee appears.  Castillo Decl. ¶¶ 12, 21.[12]

### C.  The Application Does Not Circumvent Discovery Limitations

The third *Intel* factor is whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  "Proof-gathering restrictions" are "'rules akin to privileges that ***prohibit*** the acquisition or use of certain materials.'" *In re Bernal*, No. 18-MC-21951, 2018 WL 6620085, at *7 (S.D. Fla. Dec. 18, 2018) (quoting *Mees*, 793 F.3d at 303 n.20).  By contrast, legal rules that

---

[12] The Trustee expects to request an extension of time to provide foreign discovery it may obtain through this proceeding.  Whether to grant this request is in the discretion of the bankruptcy court. Castillo Decl. ¶ 12.

merely "***fail to facilitate*** investigation of claims" are not considered "proof-gathering restrictions" that raise circumvention concerns under this factor. *Id.*; *see also MTS Bank*, 2018 WL 3145806, at \*7 ("This is not the same as a foreign discoverability requirement; the fact that a § 1782 application requests documents that would not be discoverable by the foreign court if those documents were located in the foreign jurisdiction is not enough to render the application a 'circumvention' of foreign rules." (quotation marks omitted)).

The Trustee's application does not circumvent proof-gathering restrictions in the *concurso*. Mexican law does not prohibit gathering discovery from third parties in the United States. Castillo Decl. ¶ 16. Rather, Mexico's Code of Commerce establishes the general rule that all lawfully obtained evidence that may help establish the truth is admissible, and Mexican legal precedent establishes that evidence lawfully obtained abroad has evidentiary value in Mexico. *Id.* The discovery the Trustee seeks would help establish the truth of whether AlterBank's purported secured loan to TV Azteca is a fraudulent transfer or otherwise unlawful. And Mexican courts would consider U.S. evidence lawfully obtained if, as here, the Trustee's § 1782 application complies with U.S. discovery rules. *Id.*; pp. 18-19, *supra*.

Nor is there any conflict with United States proof-gathering restrictions. Whether similar discovery is or could become available in domestic litigation is irrelevant. *Intel* rejected the requirement "that a § 1782(a) applicant must show that United States law would allow discovery in domestic litigation analogous to the foreign proceeding." 542 U.S. at 263. And while the Trustee has pending litigation against TV Azteca in the Southern District of New York, that litigation does not affect whether the Trustee can also seek § 1782 discovery for use in Mexico. That case, which involves breaches of the Indenture by TV Azteca and its subsidiaries, raises different claims than those the Trustee seeks to raise in the *concurso*, and the Respondents here

20

are not parties to that litigation.  Ellis Decl. ¶12; Ex. 10 (Complaint).  And the protective order in the New York action does not currently permit the Trustee to use material it may obtain in that case for use in the *concurso*.  Ellis Decl. ¶12; *see also* Ex. 11 ¶15 (Protective Order) (restricting use of discovery materials, including materials produced by third parties, in any other proceedings).

In addition, the fact that § 1782 discovery ***could*** be later relevant to U.S. proceedings does not weigh against granting that discovery unless the § 1782 application is a "sham" to circumvent the normal discovery procedures in the Federal Rules.  *Glock*, 797 F.3d at 1009.[13]  That is hardly the case here.  TV Azteca has already filed for *concurso* protection, and the Trustee seeks to use this discovery to protect creditors' rights once the *concurso* is declared.  Potential future litigation in the United States is not a reason to prevent the Trustee from obtaining discovery for use in the Mexican proceedings.

### D.      The Requested Discovery Is Not Unduly Burdensome

The fourth *Intel* factor is whether the requested discovery is "unduly intrusive or burdensome."  542 U.S. at 265.  Courts analyze this factor by applying the federal discovery rules. *Consorcio Ecuatoriano*, 747 F.3d at 1272.  Rule 26 permits discovery that is relevant and proportional to the needs of the case, considering the importance of the issues, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the discovery's importance, and its relative burdens and benefits.  Fed. R. Civ. P. 26(b)(1).

---

[13] The Trustee continues to investigate the misconduct revealed in TV Azteca's *concurso* petition and reserves its right to seek any appropriate relief.  TV Azteca has also stated that it may file Chapter 15 bankruptcy proceedings in the United States in connection with the *concurso*, which may implicate the AlterBank loan.  *See* 11 U.S.C. § 1515; Letter at 2 n.2, *The Bank of New York Mellon v. TV Azteca, S.A.B. de C.V.,* 22-cv-8164, Dkt. 242 (S.D.N.Y. Mar. 18, 2026).  *Glock* makes clear that the potential use of the discovery in related litigation is not a basis to deny an otherwise lawful § 1782 application .  *See Glock*, 797 F.3d at 1006-07; *see also Intel*, 542 U.S.  at 263.

21

This factor, too, supports granting the application.  The proposed subpoenas seek targeted information about AlterBank's $290 million loan to TV Azteca executed just weeks before TV Azteca filed for insolvency protection.  The discovery is also proportional to the needs of the *concurso*.  The amount in controversy is substantial: TV Azteca owes more than $630 million on the Notes, and AlterBank's loan agreement is for up to $290 million.  *See* pp. 5-6, *supra*.  The issues are also important:  Whether AlterBank's loan is a fraudulent transfer or otherwise subject to subordination will directly affect the Trustee's recoveries in the *concurso*.  Castillo Decl. ¶37.  And the requested discovery into the AlterBank loan is essential to the Trustee's claims.  *Id.* ¶¶24-25, 33, 38-40.

By comparison, any burdens are modest.  The Respondents were carefully selected after an initial investigation into AlterBank.  Ellis Decl. ¶¶18, 23-27; *see also* pp. 5-10, *supra*.  Those Respondents are likely to have information concerning AlterBank's lending practices, its ability to make a loan of this size, its need for third-party funding, and documents relating to AlterBank's due diligence.

The Trustee's request is also appropriately tailored to the needs of the case.  The Trustee seeks a discrete set of materials relating to AlterBank's financial position, its relationship to TV Azteca and its affiliates, and a recent substantial loan.  Discovery requests like these are squarely within the discovery the Federal Rules permit and are standard fare for § 1782 proceedings.  *See Travessia*, 2024 WL 4201982, at *5 (authorizing documentary evidence and depositions relating to financial position, funding, and transfers); *MTS Bank*, 2017 WL 3276879, at *4 (authorizing documentary and testimony evidence to support foreign bankruptcy proceedings); *Clerici*, 481 F.3d at 1336 (§ 1782 and the Federal Rules authorize depositions and document requests); *Weber v. Finker*, 554 F.3d 1379, 1384-85 (11th Cir.2009) (similar).

### III.    THE COURT SHOULD GRANT THE APPLICATION *EX PARTE*

It is the "practice in this District" to grant § 1782 applications *ex parte*. *In re Travessia Securitizadora de Creditos Financeiros VIII S.A.*, 707 F. Supp. 3d 1366, 1370 (S.D. Fla. 2023); *see also In re Braga*, 272 F.R.D. 621, 625 (S.D. Fla. 2011); *Colombo Agroindústria*, 2022 WL 2167719, at *1 ("It is both common and proper for section 1782 applicants to apply for discovery assistance on an *ex parte* basis."). Indeed, "most § 1782 applications (at least in this district) are filed and decided *ex parte*." *Braga*, 272 F.R.D. at 625. *Ex parte* consideration is proper because "the respondent . . . may later move under Federal Rule of Civil Procedure 45(c)(3) to quash any such discovery request." *In re Application of Salem*, No. 24-mc-5, 2024 WL 3026670, at *9 (S.D.N.Y. June 17, 2024); *see also In re Sociedad Militar Seguro de Vida*, 985 F. Supp. 2d 1375, 1381 (N.D. Ga. 2013).

*Ex parte* treatment is particularly appropriate here because TV Azteca may take further action to frustrate collection on the Notes or conceal its conduct. TV Azteca has refused to pay for over five years while prioritizing other creditors and refusing to provide information it is required to provide under the Indenture. *See* pp. 1-2, *supra*. TV Azteca also incurred senior, secured debt, subordinating the Notes on the eve of filing its *concurso* petition despite Indenture provisions restricting those exact actions. *See* pp. 5-6, *supra*. TV Azteca "has the financial sophistication" to further frustrate or delay judgment on the Notes. *See, e.g.*, *In re Ernesto Andrade Grp.*, 712 F. Supp. 3d 438, 440 (S.D.N.Y. 2024) (permitting *ex parte* application where defendant had taken "significant steps in order to organize their insolvency and evade his obligation to pay debts owed to [the applicant]"); *In re Letter of Request from Gov't of France*, 139 F.R.D. 588, 592 (S.D.N.Y. 1991) (denying access request because disclosure "would create grave risk that evidence would be concealed or destroyed"). The Court should grant the application *ex parte*.

23

**CONCLUSION**

The Court should grant the Trustee's application and authorize the Trustee to serve its proposed subpoenas in substantially the form attached.  A proposed order is attached.

Dated: June 2, 2026

Respectfully submitted,

*s/ Daniel S. Fridman*
Daniel S. Fridman, Esq.
Fla. Bar No. 176478
FRIDMAN FELS & SOTO, PLLC
150 Alhambra Circle
Suite 715
Coral Gables, Florida  33134
Tel.: (305) 569-7720
daniel.fridman@ffslawfirm.com

Justin M. Ellis  (*pro hac vice* forthcoming)
Zachary R. Ingber (*pro hac vice* forthcoming)
Eric J. Rolston (*pro hac vice* forthcoming)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Tel.: (212) 607-8159
jellis@mololamken.com

*Counsel for The Bank of New York Mellon, as Trustee*

25