**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 1:26-mc-23885-JEM**

In re Application of

THE BANK OF NEW YORK MELLON,
SOLELY IN ITS CAPACITY AS TRUSTEE
FOR THE TV AZTECA, S.A.B. DE C.V. 8.25%
SENIOR NOTES DUE 2024,

For an Order Pursuant to 28 U.S.C. § 1782
To Conduct Discovery for Use in a Foreign
Proceeding

/

## DECLARATION OF JUSTIN M. ELLIS

JUSTIN M. ELLIS declares the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am an attorney in good standing of the bar of the State of New York. I am a partner of MoloLamken LLP, counsel for applicant The Bank of New York Mellon, in its capacity as Trustee for the TV Azteca, S.A.B. de C.V. 8.25% Senior Notes Due 2024.

2. This declaration is based upon my personal knowledge, as well as my review of the records described herein. To the best of my knowledge, all exhibits attached hereto are true and accurate copies of the documents they purport to be, or relevant excerpts therefrom.

3. Attached as **Exhibit 1** are AlterBank's Articles of Incorporation, filed on May 19, 2023, with Saint Lucia's Registry of International Business.

4. Attached as **Exhibit 2** is a true and accurate screenshot of AlterBank's LinkedIn page as of June 8, 2026, the date of the Trustee's Application (Dkt. 1).

5. Attached as **Exhibit 3** is a letter reviewing an agreement for AlterBank to rent office space in Coral Gables, Florida, that was produced on July 23, 2026 by Juan Ramirez, bearing Bates stamp JR-Alter 0097, in response to a subpoena served by the Tustee

6. Attached as **Exhibit 4** is an affidavit from the Trustee's process server, Henry Pinto, affirming service of Timothy Richards's subpoena, the Trustee's Application (Dkt. 1), and the Court's Order (Dkt. 12).

7. Attached as **Exhibit 5** is a document produced on July 23, 2026 by Juan Ramirez, bearing Bates stamps JR-Alter 0320 to JR-Alter 0334, in response to the Trustee's subpoena. The document is dated April 12, 2024, titled "Management accounts for the year to date to March 31, 2024," and reviews AlterBank's financial information.

8. Attached as **Exhibit 6** is a document produced on July 14, 2026 by Juan Ramirez, bearing Bates stamps JR-Alter 0001 to JR-Alter 0014, in response to the Trustee's subpoena. The document is a presentation reviewing AlterBank's business.

9. Attached as **Exhibit 7** is AlterBank's Company Register, filed with Saint Lucia's Registry of International Business on February 17, 2026.

10. Attached as **Exhibit 8** is a true and accurate screenshot taken on July 27, 2026 of the "Welcome Aboard" section of AlterBank's website at www.alterbank.com/welcomeaboard.

11. Attached as **Exhibit 9** is an affidavit from the Trustee's process server, Henry Pinto, affirming service of AlterBank's subpoena, the Trustee's Application (Dkt. 1), and the Court's Order (Dkt. 12) on Blas Santander.

12. Attached as **Exhibits 10, 11, and 12** are documents produced on July 23, 2026 by Juan Ramirez in response to the Trustee's subpoena, bearing Bates stamps JR-Alter 0165 to JR-Alter 0167, JR-Alter 0168 to JR-Alter 0169, and JR-Alter 0336, respectively.

13. Attached as **Exhibit 13** is an English translation of a document produced on July 14, 2026 by Juan Ramirez in response to the Trustee's subpoena. The produced document, in Spanish, follows the English translation and bears Bates stamps JR-Alter 0078 to JR-Alter 0079.

14. Attached as **Exhibit 14** is a true and accurate copy of Blas Santander's LinkedIn profile as of June 8, 2026, the date of the Trustee's Application (Dkt. 1).

15. Attached as **Exhibit 15** is a true and accurate copy of an email exchange on July 16 and July 18, 2026, in which counsel for the Trustee sent counsel for AlterBank AlterBank's subpoena, the Trustee's Application (Dkt. 1), and this Court's Order (Dkt. 12).

16. Attached as **Exhibit 16** is the transcript for the hearing held before the Honorable Barbara Moses, on July 15, 2026, in *The Bank of New York Mellon v. TV Azteca, S.A.B. de C.V.*, No. 22-Civ-8164.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: August 7, 2026
New York, New York

*/s/ Justin M. Ellis*
Justin M. Ellis

# Exhibit 1 to the Ellis Declaration

INTERNATIONAL BUSINESS COMPANIES REGISTRY - ST. LUCIA
Document No. 5162765
Company No. 2007-00022

# ARTICLES OF ASSOCIATION OF Alter Bank Ltd. - IBC

1. In these Articles, if not inconsistent with the subject or context, the words and expressions standing in the first column of the following table shall bear the meanings set opposite them respectively in the second column thereof.

| **Words** | **Meanings** |
|---|---|
| capital | The sum of the aggregate par value of all out-standing shares with par value of the Company and shares with par value held by the Company as treasury shares plus:<br><br>(a) the aggregate of the amounts designated as capital of all outstanding shares without par value of the Company and shares without par value held by the Company as treasury shares, and<br><br>(b) the amounts as are from time to time transferred from surplus to capital by a resolution of directors. |
| member | A person who holds shares in the Company. |
| resolution of directors | (a) a resolution approved at a duly constituted meeting of directors of the Company or of a committee of directors of the Company by the affirmative vote of a simple majority of the directors present who voted and did not abstain where the meeting was called on proper notice or if on short notice, if those directors not present have waived notice; or<br><br>(c) a resolution consented to in writing by all directors or of all members of the committee, as the case may be. |
| resolution of members | (a) A resolution approved at a duly constituted meeting of the members of the Company by the affirmative vote of:<br><br>i. a simple majority of the votes of the shares which were present at the meeting and were voted and not abstained, or<br><br>ii. a simple majority of the votes of each class or series of shares which were present at the meeting and entitled to vote thereon as a class or series and were voted and not abstained and of a simple majority of the votes of the |

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
MAY 19 2023
FILED

remaining shares entitled to vote thereon which were present at the meeting and were voted and not abstained; or

(b) a resolution consented to in writing by:

i. an absolute majority of the votes of shares entitled to vote thereon, or

ii. an absolute majority of the votes of each class or series of shares entitled to vote thereon as a class or series and of an absolute majority of the votes of the remaining shares entitled to vote thereon;

| | |
|---|---|
| securities | Shares and debt obligations of every kind, and options, warrants and rights to acquire shares, or debt obligations. |
| surplus | The excess, if any at the time of the determination, of the total assets of the Company over the aggregate of its total liabilities, as shown in its books of account, plus the Company's capital. |
| the Memorandum | The Memorandum of Association of the Company as originally framed or as from time to time amended. |
| the Act | The International Business Companies Act, 1999. |
| the Seal | The Common Seal of the Company. |
| these Articles | These Articles of Association as originally framed or as from time to time amended. |
| treasury Shares | Shares in the Company that were previously issued but were repurchased, redeemed or otherwise acquired by the Company and not cancelled. |

"Written" or any term of like import includes words typewritten, printed, painted, engraved, lithographed, photographed or represented or reproduced by any mode of representing or reproducing words in a visible form.

In these Articles the word "person" includes a trust, the estate of a de-ceased individual, a partnership, or an unincorporated association of persons.

Save as aforesaid any words or expressions defined in the Act shall bear the same meaning in these Articles.

Words denoting the singular shall include the plural and vice versa and words denoting the masculine shall include the feminine.

A reference in these Articles to voting in relation to shares shall be construed as a reference to voting by members holding the shares except that it is the votes allocated to the shares that shall be counted and not the number of members who actually voted and a reference to shares being present at a meeting shall be given a corresponding construction.

A reference to money in these Articles is a reference to the currency of the United States of America unless otherwise stated.

## REGISTERED SHARES

2. The Company shall issue to every member holding shares in the Company a certificate signed by a director or officer of the Company and under the Seal specifying the share or shares held by him and the signatures of the director or officer and the Seal may be facsimiles.

3. If a share certificate for shares is worn out or lost it may be renewed on production of the worn out certificate or on satisfactory proof of its loss together with such indemnity as may be required by a resolution of directors. Any member receiving such share certificate shall indemnify and hold the Company and its directors and officers harmless from any loss or liability which it or they may incur by reason of wrongful or fraudulent use or representation made by any person by virtue of the possession of such share certificate.

4. If several persons are registered as joint holder of any shares, any one of such persons may give an effectual receipt of any dividend payable in respect of such shares.

## SHARES, AUTHORIZED CAPITAL AND CAPITAL

5. Subject to the provisions of these Articles the unissued shares of the Company shall be at the disposal of the directors who may offer, allot, grant options over or otherwise dispose of the shares to such persons, at such times and upon such terms and conditions and subject to such designations, powers, preferences, rights, qualifications, limitations and restrictions whether in regard to dividend, voting, return of capital or otherwise as the Company may be resolution of directors determine.

6. Shares in the Company shall be issued for money, services rendered, personal property, an estate in real property, a promissory note or other binding obligation to contribute money or property or any combination of the foregoing as shall be determined by a resolution of directors.

MAY 19 2023

7. Shares in the Company may be issued for such amount of consideration as the directors may from time to time by resolution of directors determine, except that in the case of shares with par value, the amount shall not be less than the par value, and in the absence

of fraud the decision of the directors as to the value of the consideration received by the Company in respect of the issue is conclusive unless a question of law is involved.

8. A share issued by the Company upon conversion of, or in exchange for, another share or a debt obligation or other security in the Company, shall be treated for all purposes as having been issued for money equal to the consideration received or deemed to have been received by the Company in respect of the other share, debt obligation or security.

9. The Company may dispose of treasury shares on such terms and conditions as the Company may by resolution of directors determine.

10. The Company may issue fractions of a share and a fractional share shall have the same corresponding fractional liabilities, limitations, preferences, privileges, qualifications, restrictions, rights and other attributes of a whole share of the same class or series of shares.

11. Upon the issue by a company incorporated under this Act of a share without par value, the consideration in respect of the share constitutes capital to the extent designated by the directors and the excess constitutes surplus, except that the directors must designate as capital an amount of the consideration that is at least equal to the amount that the shares is entitled to as a preference, if any, in the assets of the Company upon liquidation of the Company.

12. The Company may purchase, redeem or otherwise acquire and hold its own shares only out of surplus but no purchase, redemption or other acquisition shall be made unless the directors determine that immediately after the purchase, redemption or other acquisition:

*(a)* the Company will be able to satisfy its liabilities as they become due in the ordinary course of its business; and

*(b)* the realizable assets of the Company will not be less than the sum of its total liabilities, other than deferred taxes, as shown in the books of account, and its capital;

and, in the absence of fraud, the decision of the directors as to the realizable assets of the Company is conclusive, unless a question of law is involved.

13. The Company may only purchase or otherwise acquire its own shares without fulfilling the requirements of Regulation 12 in exchange for newly issued shares of equal value in the Company or pursuant to an order of the court.

14. Shares that the Company purchases, redeems or otherwise acquires pursuant to Regulations 12 or 13 may be cancelled or held as treasury shares unless the shares are purchased, redeemed or otherwise acquired out of capital pursuant to Regulation 31 in which case they shall be cancelled but they shall be available for reissue. Upon the cancellation of a share, the amount included as capital of the Company with respect to that share shall be deducted from the capital of the Company.

15. Where shares in the Company are held by the Company as treasury shares or are held by another company of which the Company holds, directly or indirectly, shares having more than 50 percent of the votes in the election of directors of the other company, such shares of the Company are not entitled to vote or to have dividends paid thereon and shall not be treated as outstanding for any purpose except for purposes of determining the capital of the Company.

16. No notice of a trust, whether expressed, implied or constructive, shall be entered in the share register.

## TRANSFER OF SHARES

17. Subject to any limitations in the Memorandum, registered shares in the Company may be transferred by a written instrument of transfer signed by the transferor and containing the name and address of the transferee, but in the absence of such written instrument of transfer the directors may accept such evidence of a transfer of shares as they consider appropriate.

18. The Company shall not be required to treat a transferee of a registered share in the Company as a member until the transferee's name has been entered in the share register.

19. Subject to any limitations in the Memorandum, the Company must on the application of the transferor or transferee of a registered share in the Company enter in the share register the name of the transferee of the share save that the registration of transfers may be suspended and the share register closed at such times and for such periods as the Company may from time to time by resolution of directors determine provided always that such registration shall not be suspended and the share register closed for more than 60 days in any period of 12 months.

REGISTRY OF INTERNATIONAL BUSINESS
MAY 19 2023

## TRANSMISSION OF SHARES

20. The executor or administrator of a deceased member, the guardian of an incompetent member or the trustee of a bankrupt member shall be the only person recognized by the Company as having any title to his share but they shall not be entitled to exercise any rights as a member of the Company until they have proceeded as set forth in the next following two regulations.

21. Any person becoming entitled by operation of law or otherwise to a share or shares in consequence of the death, incompetence or bankruptcy of any member may be registered as a member upon such evidence being produced as may reasonable be required by the directors. An application by any such person to be registered as a member shall for all purposes be deemed to be a transfer of shares of the deceased, incompetent or bankrupt member and the directors shall treat it as such.

22. Any person who has become entitled to a share or shares in consequence of the death, incompetence or bankruptcy of any member may, instead of being registered himself, request in writing that some person to be named by him be registered as the transferee of such share or shares and such request shall likewise be treated as if it were a transfer.

23. What amounts to incompetence on the part of a person is a matter to be determined by the court having regard to all the relevant evidence and the circumstances of the case.

## REDUCTION OR INCREASE IN AUTHORIZED CAPITAL OR CAPITAL

24. With the prior or subsequent approval by a resolution of members, the Company may by a resolution of directors amend its Memorandum to increase or reduce its authorized capital and in connection therewith the Company may increase or reduce the number of shares which the Company may issue, increase or reduce the par value of any of its shares or effect any combination of the foregoing.

25. Where the Company reduces its authorized capital under the foregoing regulation, then, for purposes of computing the capital of the Company, any capital that before the reduction was represented by shares but immediately following the reduction is not longer represented by shares shall be deemed to be capital transferred from surplus to capital.

26. The Company may amend its Memorandum to divide the shares, including issued shares, of a class or series of shares into a larger number of shares of the same class or series.

27. The Company may amend its Memorandum to combine the shares, including issued shares, of a class or series of shares into a smaller number of shares of the same class or series.

28. The capital of the Company may by a resolution of directors be increased by transferring an amount of the surplus of the Company to capital and, subject to the provisions of Regulations 29 and 30, the capital of the Company may be reduced by transferring an amount of the capital of the company to surplus.

29. No reduction of capital shall be effected that reduces the capital of the Company to an amount that is less than the aggregate par value of all outstanding shares with par value and all shares with par value held by the Company as treasury shares and the aggregate of the amounts designated as capital of all outstanding shares without par value and all shares without par value held by the Company as treasury shares that are entitled to a preference, if any, in the assets of the Company upon liquidation of the Company.

30. No reduction of capital shall be effected unless the directors determine that immediately after the reduction the Company will be able to satisfy its liabilities as they become due in the ordinary course of its business and that the realizable assets of the Company will not be less than its total liabilities, other than deferred taxes, as shown in the books of the

Company and its remaining capital, and, in the absence of fraud, the decision of the directors as to the realizable value of the assets of the Company is conclusive, unless a question of law is involved.

31. Where the Company reduces its capital under Regulation 28 the Company may:

(a) return to its members any amount received by the Company upon the issue of any of its shares;

(b) purchase, redeem or otherwise acquire its shares out of capital; or

(c) cancel any capital that is lost or not represented by assets having a realizable value.

## MEETINGS AND CONSENTS OF MEMBERS

32. The directors of the Company may convene meetings of the members of the Company at such times and in such manner and places within or outside Saint Lucia as the directors consider necessary or desirable.

33. Upon the written request of members holding more than 50 percent of the outstanding voting shares in the Company the directors shall convene a meeting of members.

34. The directors shall give not less than 7 days notice of meetings of members to those persons whose names on the date the notice is given appear as members in the share register of the Company.

35. A meeting of members held in contravention of the requirement in Regulation 34 is valid:

(a) if members holding not less than 90 percent of the total number of shares entitled to vote on all matters to be considered at the meeting, or 90 percent of the votes of each class or series of shares where members are entitled to vote thereon as a class or series together with not less than a 90 percent majority of the remaining votes, have agreed to shorter notice of the meeting, or

(b) if all members holding shares entitled to vote on all or any matters to be considered at the meeting have waived notice of the meeting and for this purpose presence at the meeting shall be deemed to constitute waiver.

36. The inadvertent failure of the directors to give notice of a meeting to a member, or the fact that a member has not received notice, does not invalidate the meeting.

37. A member may be represented at a meeting of members by a proxy who may speak and vote on behalf of the member.

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
MAY 19 2023
FILED

38. The instrument appointing a proxy shall be produced at the place appointed for the meeting before the time for holding the meeting at which the person named in such instrument proposes to vote.

39. An instrument appointing a proxy shall be in substantially the following form or such other form as the Chairman of the meeting shall accept as properly evidencing the wishes of the member appointing the proxy. Only members who are individuals may appoint proxies.

**[Name of Company]**

*I/We ______________________________ being a member of the above Company with shares HEREBY APPOINT ________________________ of _____________________ or failing him ________________ of ______________________ To be my/our proxy to vote for me/us at the meeting of members to be held on the __________ day of ___________ and at any adjournment thereof.*

[**Any restrictions on voting to be inserted here.**]

Signed this__________ day of _________________

______________________________

*Member*

40. The following shall apply in respect of joint ownership of shares:

(a) if two or more persons hold shares jointly each of them may be present in person or by proxy at a meeting of members and may speak as a member.

(b) if only one of the joint owners is present in person or by proxy he may vote on behalf of all joint owners, and

(c) if two or more of the joint owners are present in person or by proxy they must vote as one.

41. A member shall be deemed to be present at a meeting of members if he participates by telephone or other electronic means and all members participating in the meeting are able to hear each other.

42. A meeting of members is duly constituted if, at the commencement of the meeting, there are present in person or by proxy not less than 50 percent of the votes of the shares of each class or series of shares entitled to vote on resolutions of members to be considered at the meeting. If a quorum be present, notwithstanding the fact that such quorum may be represented by only one person then such person may resolve any matter and a certificate signed by such person accompanied where such person be a proxy by a copy of the proxy form shall constitute a valid resolution of members.

43. If within two hours from the time appointed for the meeting a quorum is not present, the meeting, if convened upon the requisition of members, shall be dissolved; in any other case it shall stand adjourned to the next business day at the same time and place or to such other time and place as the directors may determine, and if at the adjourned meeting there are not present within one hour from the time appointed for the meeting in person or by proxy not less than one third of the votes of the shares or each class or series of shares entitled to vote on the resolutions to be considered by the meting, the meeting shall be dissolved.

44. At every meeting of members, the Chairman of the Board of Directors shall preside as chairman of the meeting. If there is not Chairman of the Board of Directors or if the Chairman of the Board of Directors is not present at the meeting, the members present shall choose some one of their number to be the chairman. If the members are unable to choose a chairman for any reason, then the person representing the greatest number of voting shares present in person or by prescribed form of proxy at the meeting shall preside as chairman failing which the oldest individual member or representative of a member present shall take the chair.

45. The chairman may, with the consent of the meeting, adjourn any meeting from time to time, and from place to place, but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place.

46. At any meeting of the members the chairman shall be responsible for deciding in such manner as he shall consider appropriate whether any resolution has been carried or not and the result of his decision shall be announced to the meeting and recorded in the minutes thereof. If the chairman shall have any doubt as to the outcome of any resolution put to the vote, he shall cause a poll to be taken of all votes cast upon such resolution, but if the chairman shall fail to take a poll then any member present in person or by proxy who disputes the announcement by the chairman of the result of any vote may immediately following such announcement demand that a poll be taken and the chairman shall there-upon cause a poll to be taken. If a poll is taken at any meeting, the result thereof shall be duly recorded in the minutes of that meting by the chairman.

47. Any person other than an individual shall be regarded as one member and subject to Regulation 48 the right of any individual to speak for or represent such member shall be determined by the law of the jurisdiction where, and by the documents by which, the person is constituted or derives its existence. In case of doubt, the directors may in good faith seek legal advice from any qualified person and unless and until a court of competent jurisdiction shall otherwise rule, the directors may rely and act upon such advice without incurring any liability to any member.

MAY 19 2023

48. Any person other than an individual which is a member of the Company may by resolution of its directors or other governing body authorize such person as it thinks fit to act as its representative at any meeting of the Company or of any class of members of the

Company, and the person so authorized shall be entitled to exercise the same powers on behalf of the person which he represents as that person could exercise of it were an individual member of the Company.

49. The chairman of any meeting at which a vote is cast by proxy or on behalf of any person other than an individual may call for a notarially certified copy of such proxy or authority which shall be produced within 7 days of being so requested or the votes cast by such proxy or on behalf of such person shall be disregarded.

## DIRECTORS

50. The first directors of the Company shall be elected by the subscribers to the Memorandum and thereafter, the directors shall be elected by the directors or the members for such term as the directors or the members determine. A director may be an individual or a company.

51. The minimum number of directors shall be three and the maximum number shall be ten.

52. Each director shall hold office until his successor takes office or until his death, resignation or removal.

53. A director may be removed from office, with or without cause, by a resolution of members or by resolution of directors.

54. A director may resign his office by giving written notice of his resignation to the Company and the resignation shall have effect from the date the notice is received by the Company or from such later date as may be specified in the notice.

55. A vacancy in the Board of Directors may be filled by a resolution of members or by a resolution of a majority of the remaining directors.

56. With the prior or subsequent approval by a resolution of members, the directors may, by a resolution of directors, fix the emoluments of directors with respect to services to be rendered in any capacity to the Company.

57. A director shall not require a share qualification, but nevertheless shall be entitled to attend and speak at any meeting of the members of the Company and at any separate meeting of the holders of any class or series of shares in the Company.

## POWERS OF DIRECTORS

58. The business and affairs of the Company shall be managed by the directors who may pay all expenses incurred preliminary to and in connection with the formation and registration of the Company and may exercise all such powers of the Company as are not by the Act or by the Memorandum or these Articles required to be exercised by the members of the Company, subject to any delegation of such powers as may be

authorized by these Articles and to such requirements as may be prescribed by a resolution of members; but no requirement made by a resolution of members shall prevail if it be inconsistent with these Articles nor shall such requirement invalidate any prior act of the directors which would have been valid if such requirement had not been made.

59. The directors may, by a resolution of directors, appoint any person, including a person who is a director, to be an officer or agent of the Company.

60. Every officer or agent of the Company has such powers and authority of the directors, including the power and authority to affix the Seal, as are set forth in these Articles or in the resolution of directors appointing the officer or agent, except that no officer or agent has any power or authority with respect to the matters requiring a resolution of directors under the Act.

61. Any director who is a body corporate may appoint any person its duly authorized representative for the purpose of representing it at meetings of the Board of Directors or with respect to unanimous written consents.

62. The continuing directors may act notwithstanding any vacancy in their body, save that if their number is reduced below the number fixed by or pursuant to these Articles as the necessary quorum for a meeting of directors, the continuing directors or director may act only for the purpose of increasing the number of directors to that number or summoning a meeting of members.

63. All cheques, promissory notes, drafts, bills of exchange and other negotiable instruments and all receipts for moneys paid to the Company, shall be signed, drawn, accepted, endorsed or otherwise executed, as the case may be, in such manner as the directors shall from time to time by resolution determine.

REGISTRY OF INTERNATIONAL BUSINESS
MAY 19 2023

## PROCEEDINGS OF DIRECTORS

64. The directors of the Company or any committee thereof may meet at such times and in such manner and places within or outside Saint Lucia as the directors may determine to be necessary or desirable.

65. A director shall be deemed to be present at a meeting of directors if he participates by telephone or other electronic means and all directors participating in the meeting are able to hear each other.

66. A director shall be given not less than 3 days notice of meetings of directors. A meeting of directors held without 3 days notice having been given to all directors shall be valid if all the directors entitled to vote at the meeting have waived notice of the meeting and for this purpose, the presence of a director at a meeting shall be deemed to constitute a waiver on his or her part. The inadvertent failure to give notice of a meeting to a director, or the fact that a director has not received the notice, does not invalidate the meeting.

67. A director may by a written instrument appoint an alternate who need not be a director and an alternate is entitled to attend meetings in the absence of the director who appointed him and to vote or consent in place of the director.

68. A meeting of directors is duly constituted for all purposes if at the commencement of the meeting there are present in person or by alternate not less than one half of the total number of directors, unless there are only 2 directors in which case the quorum shall be 2.

69. If the Company shall have only one director the provisions herein contained for meetings of the directors shall not apply but such sole director shall have full power to represent and act for the Company in all matters as are not by the Act or the Memorandum or these Articles required to be exercised by the members of the Company and in lieu of minutes of a meeting shall record in writing and sign a note or memorandum of all matters requiring a resolution of directors. Such a note or memorandum shall constitute sufficient evidence of such resolution for all purposes.

70. At every meeting of the directors the Chairman of the Board of Directors shall preside as chairman of the meeting. If there is no chairman of the Board of Directors or if the Chairman of the Board of Directors is not present at the meeting the Vice-Chairman of the Board of Directors shall preside. If there is no Vice Chairman of the Board of Directors or if the Vice Chairman of the Board of Directors is not present at the meeting the directors present shall choose some one of their number to be chairman of the meeting.

71. The directors shall cause the following corporate records to be kept:

(a) minutes of all meetings of directors, members, committees of directors, committees of officers and committees of members;

(b) copies of all resolutions consented to by directors, members, committees of directors, committees of officers and committees of members; and

(c) such other accounts and records as the directors by resolution of directors consider necessary or desirable in order to reflect the financial position of the Company.

72. The books, records and minutes shall be kept at the registered office of the Company.

73. The directors may, by a resolution of directors, designate one or more committees each consisting of one or more directors.

74. Each committee of directors has such powers and authorities as the directors, including the power and authority to affix the Seal as set forth in the resolution of directors establishing the committee, except that no committee has any power or authority with respect to the matters requiring a resolution of directors under Regulations 55 and 59.

75. The meetings and proceedings of each committee of directors consisting of 2 or more members shall be governed mutatis mutandis by the provisions of these Articles regulating the proceedings of directors so far as the same are not suspended by any provisions in the resolution establishing the committee.

## OFFICERS

76. The Company may by resolution of directors appoint officers of the Company at such times as shall be considered necessary or expedient. Such officers may consist of a Chairman of the Board of Directors, a Vice Chairman of the Board of Directors, a President and one or more Vice Presidents, Secretaries and Treasurers and such other officers as may from time to time be deemed desirable. Any number of offices may be held by the same person.

77. The officers shall perform such duties as shall be prescribed at the time of their appointment subject to any modification in such duties as may be prescribed thereafter by resolution of directors or resolution of members, but in the absence of any specific allocation of duties it shall be the responsibility of the Chairman of the Board of Directors to preside at all meetings of directors and members, the Vice Chairman to act in the absence of the Chairman, the President to manage the day to day affairs of the Company, the Vice Presidents to act in order of seniority in the absence of the President but otherwise to perform such duties as may be delegated to them by the President, the Secretaries to maintain the share register, minute books and records (other than financial records) of the Company and to ensure compliance with all procedural requirements imposed on the Company by applicable law, and the Treasurer to be responsible for the financial affairs of the Company.

78. The salaries of all officers shall be fixed by resolution of directors.

79. The officers of the Company shall hold office until their successors are duly elected and qualified, but any officer elected or appointed by the directors may be removed at any time, with or without cause, by resolution of directors. Any vacancy occurring in any office of the Company may be filled by resolution of directors.

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
MAY 19 2023

## CONFLICT OF INTERESTS

80. If the requirements of Regulations 81 and 82 are satisfied, no agreement or transaction between the Company and one or more of its directors or liquidators, or any person in which any director or liquidator has a financial interest or to whom any director or liquidator is related, including as a director or liquidator of that other person, is void or voidable for this reason only or by reason only that the director or liquidator is present at the meeting of directors or liquidators or at the meeting of the committee of directors or liquidators that approves the agreement or transaction or that the vote or consent of the director or liquidator is counted for that purpose.

81. An agreement or transaction referred to in Regulation 80 is valid if:

(a) the material facts of the interest of each director or liquidator in the agreement or transaction and his interest on or relationship to any other party to the agreement or transaction are disclosed in good faith or are known by the other directors or liquidators; and

(b) the agreement or transaction is approved or ratified by a resolution of directors or liquidators that has been approved without counting the vote or consent of any interested director or liquidator or by the unanimous vote or consent of all disinterested directors or liquidators if the votes or consents of all disinterested directors or liquidators are insufficient to approve a resolution of directors or liquidators.

82. An agreement or transaction referred to in Regulation 80 is valid if:

(a) the material facts of the interest of each director or liquidator in the agreement or transaction and his interest in or relationship to any other party to the agreement or transaction are disclosed in good faith or are known by the members entitled to vote at a meeting of members; and

(b) the agreement or transaction is approved or ratified by a resolution of members.

83. A director or liquidator who has an interest in any particular business to be considered at a meeting of directors, liquidators or members may be counted for purposes of determining whether the meeting is duly constituted.

## INDEMNIFICATION

84. Subject to Regulation 85, the Company may indemnify against all expenses, including legal fees, and against all judgements, fines and amounts paid in settlement and reasonably incurred in connection with legal, administrative or investigative proceedings any person who:

(a) is or was a party or is threatened to be made a party to any threatened, pending or completed proceedings, whether civil, criminal, administrative or investigative, by reason of the fact that the person is or was a director, an officer or a liquidator of the Company; or

(b) is or was, at the request of the Company, serving as a director, officer or liquidator of, or in other capacity is or was acting for, another company or a partnership, joint venture, trust or other enterprise.

85. Regulation 84 only applies to a person referred to in that subsection if the person acted honestly and in good faith with a view to the best interests of the Company and, in the

case of criminal proceedings, the person had no reasonable cause to believe that his conduct was unlawful.

86. The decision of the directors as to whether the person acted honestly and in good faith and with a view to the best interests of the Company and as to whether the person had no reasonable cause to believe that his conduct was unlawful, is in the absence of fraud, sufficient for the purposes of this Regulation, unless a question of law is involved.

87. The termination of any proceedings by any judgement, order, settlement, conviction or the entering of a nolle prosequi does not, by itself, create a presumption that the person did not act honestly and in good faith and with a view to the best interests of the Company or that the person had reasonable cause to believe that his conduct was unlawful.

88. If a person referred to in Regulation 84 has been successful in defense of any proceedings referred to in that Regulation the person is entitled to be indemnified against all expenses, including legal fees, and against all judgements, fines and amounts paid in settlement and reasonably incurred by the person in connection with the proceedings.

89. The Company may purchase and maintain insurance in relation to any person who is or was a director, an officer or a liquidator of the Company, or who at the request of the Company is or was serving as a director, an officer or a liquidator of, or in any other capacity is or was acting for, another company or a partnership, joint venture, trust or other enterprise, against any liability asserted against the person and incurred by the person in that capacity, whether or not the Company has or would have had the power to indemnify the person against the liability under Regulation 84.

90. The directors shall provide for the safe custody of the Seal. The Seal when affixed to any written instrument shall be witnessed by a director or any other person so authorized from time to time by resolution of directors. The directors may provide for a facsimile of the Seal and of the signature of any director or authorized person which may be reproduced by printing or other means on any instrument and it shall have the same force and validity as if the seal had been affixed to such instrument and the same had been signed as hereinbefore described.

REGISTRY OF INTERNATIONAL BUSINESS
MAY 19 2023

## DIVIDENDS

91. The Company may by a resolution of directors declare and pay dividends in money, shares, or other property but dividends shall only be declared and paid out of surplus. In the event that dividends are paid in specie the directors shall have responsibility for establishing and recording in the resolution of directors authorizing the dividends, a fair and proper value for the assets to be so distributed.

92. The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the Company.

93. The directors may, before declaring any dividend, set aside out of the profits of the Company such sum as they think proper as a reserve fund, and may invest the sum so set apart as a reserve fund upon such securities as they may select.

94. No dividend shall be declared and paid unless the directors determine that immediately after the payment of the dividend the Company will be able to satisfy its liabilities as they become due in the ordinary course of its business and the realizable value of the assets of the Company will not be less than the sum of its total liabilities, other than deferred taxes, as shown in its books of account, and its capital. In the absence of fraud, the decision of the directors as to the realizable value of the as-sets of the company is conclusive, unless a question of law is involved.

95. Notice of any dividend that may have been declared shall be given to each member in manner hereinafter mentioned and all dividends unclaimed for 3 years after having been declared may be forfeited by resolution of directors for the benefit of the Company.

96. No dividend shall bear interest as against the Company.

97. A share issued as a dividend by the Company shall be treated for all purposes as having been issued for money equal to the surplus that is transferred to capital upon the share.

98. In the case of a dividend of authorized but unissued shares with par value, an amount equal to the aggregate par value of the shares shall be transferred from surplus to capital at the time of the distribution.

99. In the case of a dividend of authorized but unissued shares without par value, the amount designated by the directors shall be transferred from surplus to capital at the time of the distribution, except that the directors must designate as capital an amount that is at least equal to the amount that the shares are entitled to as a preference, if any, in the assets of the Company upon liquidation of the Company.

100. A division of the issued and outstanding shares of a class or series of shares into a larger number of shares of the same class or series having a proportionately smaller par value does not constitute a dividend of shares.

## ACCOUNTS

101. The books of account shall be kept at the registered office of the Company.

102. The directors shall unless such requirement be waived by resolution of members cause to be made out and shall serve on the members or lay before a meeting of members at some date not later than eighteen months after the incorporation of the Company and subsequently once at least in every calendar year a profit and loss account for a period in the case of the first account since the incorporation of the Company and in any other case, since the preceding account, made to a date not earlier than the date of the notice by more than twelve months, and a balance sheet as at the date to which the profit and loss

account is made up. The Company's profit and loss account and balance sheet shall be drawn up so as to give respectively a true and fair view of the profit or loss of the Company for that financial period, and a true and fair view of the state of affairs of the Company as at the end of that financial period.

103. A copy of such profit and loss account and balance sheet shall be served on every member in the manner and with similar notice to that pre-scribed herein for calling a meeting of members or upon such shorter notice as the members may agree to accept.

104. The Company may by resolution of directors include in the computation of surplus for any purpose the unrealized appreciation of the assets of the Company, and, in the absence of fraud, the decision of the directors as to the value of the assets is conclusive, unless a question of law is involved.

**AUDIT**

105. The Company may by resolution of members call for the accounts to be examined by auditors.

106. The first auditors shall be appointed by resolution of directors; sub-sequent auditors shall be appointed by a resolution of members.

107. The auditors may be members of the Company but no director or other officer shall be eligible to be an auditor of the Company during his continuance in office.

108. The remuneration of the auditors of the Company:

(a) in the case of auditors appointed by the directors, may be fixed by resolution of directors;

(b) subject to the foregoing, shall be fixed by resolution of members or in such manner as the Company may by resolution of members determine.

109. The auditors shall examine each profit and loss account and balance sheet required to be served on every member of the Company or laid before a meeting of the members of the Company and shall state in a written report whether or not:

MAY 19 2023

(a) In their opinion the profit and loss account and balance sheet give a true and fair view respectively of the profit and loss for the period covered by the accounts, and of the state of affairs of the Company at the end of that period;

(b) all the information and explanations required by the auditors have been obtained.

110. The report of the auditors shall be annexed to the accounts and shall be read at the meeting of members at which the accounts are laid before the Company or shall be served on the members.

111. Every auditor of the Company shall have a right of access at all times to the books of account and vouchers of the Company, and shall be entitled to require from the officers of the Company such information and explanations as he thinks necessary for the performance of the duties of the auditors.

112. The auditors of the Company shall be entitled to receive notice of, and to attend any meetings of members of the Company at which the Company's profit and loss account and balance sheet are to be presented.

## NOTICES

113. Any notice, information or written statement to be given by the Company to members must be served in the case of members holding registered shares by mail addressed to each member at the address shown in the share register.

114. Any summons, notice, order, document, process, information or written statement to be served on the Company may be served by leaving it, or by sending it by registered mail addressed to the Company, at its registered office, or by leaving it with, or by sending it by registered mail, to the registered agent of the Company.

115. Service of any summons, notice, order, document, process, information or written statement to be served on the Company may be proved by showing that the summons, notice, order, document, process, information or written statement was mailed in such time as to admit to its being delivered in the normal course of delivery within the period prescribed for service and was correctly addressed and the postage was prepaid.

## PENSION AND SUPERANNUATION FUNDS

116. The directors may establish and maintain or procure the establishment and maintenance of any non-contributory pension or superannuation funds for the benefit of, and give or procure the giving of donations, gratuities, pensions, allowances or emoluments to any persons who are or were at any time in the employment or service of the Company or any company which is a subsidiary of the Company or is allied to or associated with the Company or with any such subsidiary, or who are or were at any time directors or officers of the Company or of any such other company as aforesaid or who hold or held any salaried employment or office in the Company or such other company, or any persons in whose welfare the Company or any such other company as aforesaid is or has been at any time interested, and to the wives, widows, families and dependents of any such person, and may make payments for or towards the insurance of any such persons as aforesaid, and may do any of the matters aforesaid either alone or in conjunction with any such other company as aforesaid. Subject always, if the Act shall so require, to particulars with respect thereto being disclosed to the members, and to the proposal being approved by the Company by resolution of members, a director holding any such employment, or office shall be entitled to participate in and retain for his own benefit any such donation, gratuity, pension allowance or emolument.

## ARBITRATION

117. Whenever any difference arises between the Company on the one hand and any of the members or their executors, administrators or assigns on the other hand, touching the true intent and construction or the incidence or consequences of these Articles or of the Act touching anything done or executed, omitted or suffered in pursuance of the Act touching any breach or alleged breach or otherwise relating to the premises of to these Articles, or to any Act or Ordinance affecting the Company or to any of the affairs of the Company such difference shall, unless the parties agree to refer the same to a single arbitrator, be referred to 2 arbitrators one to be chosen by each of the parties to the difference and the arbitrators shall before entering on the reference appoint an umpire.

118. If either party to the reference makes default in appointing an arbitrator either originally or by way of substitution (in the event that an appointed arbitrator shall die, be incapable of acting or refuse to act) for 10 days after the other party has given him notice to appoint the same, such other party may appoint an arbitrator to act in the place of the arbitrator of the defaulting party.

## VOLUNTARY WINDING UP AND DISSOLUTION

119. The Company may voluntarily commence to wind up and dissolve by a resolution of members but if the Company has never issued shares it may voluntarily commence to wind up and dissolve by resolution of directors.

## CONTINUATION

120. The Company may by a resolution of members or by a resolution passed unanimously by all directors of the Company continue as a company incorporated under the laws of a jurisdiction outside of Saint Lucia in the manner provided under those laws.

We, **Corporate Services St. Lucia (1996) Limited**, for the purpose of amending the above-named International Business Company under the laws of Saint Lucia, Corporate Services St. Lucia (1996) Limited hereby subscribe our name to this Articles of Association on this 27th day of April, 2023.

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
MAY 19 2023
FILED

[signature]

*Registered Agent*

April 27, 2023

*Date*

# Exhibit 2 to the Ellis Declaration




# AlterBank

Escape Limitations, Embrace Possibilities!

Banking · Castries · 333 followers · 11-50 employees

+ Follow | Message | ...

Home | About | Posts | Jobs | People | Insights

## 13 associated members

Search employees by title, keyword or school

**Where they live** + Add

- 4 | Florida, United States
- 4 | United States
- 4 | Miami-Fort Lauderdale Area
- 3 | Panama City
- 3 | Panama

**Where they studied** + Add

- 5 | Universidad Metropolitana (VE)
- 2 | The University of the West Indies
- 2 | UCAB - Universidad Católica Andrés Bello
- 1 | International School of Panama
- 1 | Florida International University - College of ...

## People you may know

**Blas S.** · 3rd
Finance / Banking
Message

**Myreen Cenac ...** · 3rd
Risk & Compliance, Banking& Leadership Professional....
Message

**Alexander Soro...** · 3rd
Executive and Board Director - Technology and Financial Services
3K followers
Follow

## Pages people also viewed

**369**
Blockchain Services
297 followers
+ Follow

**CABLOCK - Cámara Boliviana de Blockchain**
Non-profit Organizations
2,772 followers
+ Follow

**Tompkins Ventures**
Transportation, Logistics, Supply Chain and Storage
1,769 followers
+ Follow

Show all →

## People also follow

**Federal Bar Association**
Legal Services
17,037 followers
Caleb & 1 other connection follow this page
+ Follow

**New York State Bar Association**
Legal Services
44,736 followers
Pratik & 1 other connection follow this page
+ Follow

**Bloomberg Law**
Legal Services
78,165 followers
Sanaiya & 3 other connections follow this page
+ Follow

Show all →

Mariana Gonzál... · 3rd
Analista QA | Product Owner | Oficial de Operaciones en...
Message

Dinnel Jn Baptis... · 3rd
Finance Professional & Entrepreneur
Message

Antonio José R... · 3rd
Finanzas | Tecnología | Procesos
Message

LinkedIn Member
Senior Consultant in Payments & Compliance | Government and...


Mary Dubravsk... · 3rd
IT & Security Manager
Provides services - IT Consulting
Message


LinkedIn Member
General Manager, Alter Bank Ltd. FCCA, FICB.


Julio Luis Santa... · 3rd
Senior Manager of Regional Operations
Provides services - Financial Advisory, Business Consulting, Financial Consulting
Message


Cristobal Lopez... · 3rd
Chief Business Development Officer at AlterBank
Message


Jose Antonio Ya... · 3rd
Custody Operations Coordinator
Message


Juan Guillermo ... · 3rd
COO
Message

LinkedIn
Your job search powered by your network
Explore jobs


About Accessibility Help Center
Privacy & Terms Ad Choices
Advertising Business Services
Get the LinkedIn app More
LinkedIn LinkedIn Corporation © 2026

# Exhibit 3 to the Ellis Declaration

GROU
COFFEE + COWORK

# To Whom It May Concern

**Re: Verification of Coworking Membership and Office Rental – Alter Bank**

This letter serves to certify that **Alter Bank** was a member of **GROU Coffee & Cowork** and maintained a private office at our coworking facility located at:

**GROU Coffee & Cowork**
4100 Salzedo Street, Suite 5
Coral Gables, FL 33146

According to our records, Alter Bank rented a private office at our facility from **June 15, 2023 through October 1, 2024**. During this period, the company remained a member in good standing and utilized our coworking facilities and private office space.

Our records indicate that the **total amount paid** throughout the membership, including office rental and related charges, was **USD $30,252.19**.

The account remained in good standing throughout its membership, and all balances were paid in full, leaving a final outstanding balance of **$0.00**.

Should you require any additional information or verification, please do not hesitate to contact us.

Sincerely,

**Orlando Superlano**
GROU Coffee & Cowork
4100 Salzedo Street, Suite 5
Coral Gables, FL 33146
(305) 639-8218
osuperlano@groucommunity.com

# Exhibit 4 to the Ellis Declaration

# RETURN OF SERVICE

UNITED STATES DISTRICT COURT
Southern District of Florida

Case Number: 1:26-MC-23885-JEM

**In re Application of The Bank of New York Mellon, solely in its capacity as Trustee for the TV Azteca, S.A.B. de C.V. 8.25% Senior Notes due 2024, for an order pursuant to 28 U.S.C. 1782**

SOP2026000901

For:
Daniel S. Fridman
FRIDMAN FELS & SOTO, PLLC
2525 Ponce de Leon Boulevard
Suite 750
Coral Gables, FL 33134

Received by SERVICE OF PROCESS, INC. on the 8th day of June, 2026 at 3:14 pm to be served on **Timothy Richards, 2000 Salzedo Street, Apartment 806, Coral Gables, FL 33134**.

I, HENRY PINTO, do hereby affirm that on the **23rd day of June, 2026** at **12:11 pm, I:**

served an **AUTHORIZED** entity by delivering a true copy of the **SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION SCHEDULED FOR JUNE 29, 2026 WITH AN ADVANCED WITNESS FEE CHECK OF $45.00** with the date and hour of service endorsed thereon by me, to: **Elena Diaz** as **Accountant** at the address of: **Richards & Partners, P.A., Attorneys At Law, 2665 South Bayshore Drive, Suite 703, Miami, FL 33133**, who stated they are authorized to accept service for **Timothy Richards**, and informed said person of the contents therein, in compliance with Federal statutes.

**Additional Information pertaining to this Service:**
6/19/2026 6:37 pm Attempted service at 2000 Salzedo Street, Apartment 806, Coral Gables, FL 33134 knocked several times no answer no noise no contact at residence
6/17/2026 8:34 pm Attempted service at 2000 Salzedo Street, Apartment 806, Coral Gables, FL 33134 knocked several times, no answer, no noise, no contact at residence.
6/15/2026 8:32 am Attempted service at 2000 Salzedo Street, Apartment 806, Coral Gables, FL 33134 knocked several times, no answer, no noise, no contact at residence.
6/9/2026 7:58 pm Attempted service at 2000 Salzedo Street, Apartment 806, Coral Gables, FL 33134 no answer no noise no contact at residence
6/9/2026 9:54 am Attempted service at 2000 Salzedo Street, Apartment 806, Coral Gables, FL 33134 knocked several times, no answer, no noise, no contact at residence. Confirmed with Security, that subject lives here.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server in good standing in the Judicial Circuit in which the process was served. Under penalty of Perjury, I declare the facts contained herein are true and correct to the best of my knowledge.

**HENRY PINTO**
#2351

**SERVICE OF PROCESS, INC.**
**3741 S.W. 132 Avenue**
**MIAMI, FL 33175**
**(305) 226-6809**

Our Job Serial Number: SOP-2026000901

Copyright © 1992-2026 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a

DELIVERED 06/23/2026 12:11 PM
SERVER HP
LICENSE #2351

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

**In re Application of The Bank of New York Mellon, solely in its capacity as Trustee for the TV Azteca, S.A.B. de C.V. 8.25% Senior Notes due 2024, for an order pursuant to 28 U.S.C. § 1782**

*Plaintiff*

v.

*Defendant*

Civil Action No. 1:26-mc-23885-JEM

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Timothy Richards
2000 Salzedo Street, Apartment 806, Coral Gables, Florida 33134

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: | Date and Time: |
|---|---|
| Fridman Fels & Soto, PLLC, 150 Alhambra Circle, Suite 715, Coral Gables, FL 33134 (305) 569-7701 | Deposition: June 29, 2026<br>Document Production Deadline: June 22, 2026 |

The deposition will be recorded by this method: Court Reporter and Videographer

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Exhibit A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: June 8, 2026

*CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

OR

Daniel S. Fridman

*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* **The Bank of New York Mellon solely in its capacity as Trustee for the TV Azteca, S.A.B. de C.V. 8.25% Senior Notes due 2024**, who issues or requests this subpoena, are:

Daniel S. Fridman, Fridman Fels & Soto, PLLC, 150 Alhambra Circle, Suite 715, Coral Gables, FL 33134 (305) 569-7720 daniel.fridman@ffslawfirm.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ____________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named individual as follows: ____________

______________________________________________________________________

____________________________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ____________________

______________________________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day’s attendance, and the mileage allowed by law, in the amount of

$ ______________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server’s signature*

______________________________
*Printed name and title*

______________________________
*Server’s address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Case 1:26-mc-23885-JEM Document 132-1 Entered on FLSD Docket 06/02/2026 Page 54 of 71

**EXHIBIT A**

**DEFINITIONS**

1. "You" or "your" means you, Timothy Richards, and all Persons acting on your behalf.

2. "Person" means any natural person, corporation, association, business entity, or other legal entity, as well as its officers, directors, members, partners, employees, agents, or representatives.

3. "Control," "Controlled," or "Controlling" means the ability, directly or indirectly to direct or cause the direction of any Person, whether through majority ownership of such Person or otherwise.

4. "Communication" or "Communications" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise). It includes transmission via email, mail, messages, correspondence, forms, reports, or any other Documents.

5. "Document" includes without limitation any letters, e-mails, electronic files, electronic data, reports, publications, presentations, contracts, analyses, valuations, records, summaries, transcripts, accounts, business records, data compilations, or other hard copy or electronic documents, communications, or other information in whatever form.

6. "Concerning" means referring to, constituting, evidencing, recording, reflecting, substantiating, describing, summarizing, identifying, or relating to in any way, directly or indirectly, in whole or in part.

7. "Relating to" means directly or indirectly, in whole or in part, concerning, constituting, evidencing, recording, reflecting, substantiating, describing, summarizing, identifying, referring to in any way, or in any way relevant.

8. “Affiliate” means, with respect to any Person, any other Person who, directly or indirectly, is owned or Controlled by a common Person. TV Azteca affiliates include any Grupo Salinas entity, as well as any other Person that, directly or indirectly, is owned or Controlled by Ricardo Salinas Pliego.

9. “Subsidiary” of any company means any other company of which a majority of the voting stock is owned, directly or indirectly, by such company.

10. “AlterBank” means AlterBank, Limited, as well as each Person acting under its Control or in which it has an interest, including each of its members, officers, directors, employees, partners, corporate parents, Subsidiaries, Affiliates, attorneys, and agents.

11. “TV Azteca” means TV Azteca, S.A.B. de C.V., as well as each Person acting under its Control or in which it has an interest, including each of its members, officers, directors, employees, partners, corporate parents, Subsidiaries, Affiliates, attorneys, and agents.

12. “Grupo Salinas” means any Person that is a member of Grupo Salinas, as well as any of such Person’s directors, members, officers, directors, employees, partners, corporate parents, Subsidiaries, Affiliates, attorneys, and agents. Grupo Salinas includes TV Azteca, Banco Azteca, and Grupo Elektra.

## **INSTRUCTIONS**

1. If any portion of any document is responsive to any request, produce the entire document. If any requested document cannot be produced in full, produce the document to the extent possible, specifying each reason for your inability to produce the remainder.

2. In responding to any request, you must produce all documents in your possession, custody, or control, regardless of whether you possess the documents directly and regardless of whether it is in this District. A document is in your possession, custody, or control if it is in your

custody or if it is in the custody of any other Person and you (1) own such document in whole or in part; (2) have a right by contract, statute, order, or otherwise to use, inspect, examine, or copy the document; (3) have an understanding, whether express or implied, that you may use, inspect, examine, or copy the document; or (4) have the practical ability to use, inspect, examine, or copy the document.

3. For any responsive Document that is redacted or withheld in whole or part on the basis of any assertion of privilege or other exemption from disclosure, provide a log identifying (1) the nature of the privilege or exemption asserted; (2) the nature of the document; (3) the title of the document; (4) the date of the document; (5) all Persons who prepared, sent, or received the document; (6) the number of pages; and (7) the contents or subject matter of the document or redacted or withheld portion thereof with sufficient detail to explain the basis for the privilege or exemption asserted.

4. Any electronically stored information ("ESI") should be produced in its native electronic form—i.e., the format in which it was originally created with all metadata intact. When producing ESI for electronic mail systems such as Microsoft Outlook or Gmail, provide all responsive emails and, if applicable, e-mail attachments and any related documents, in their respective mail container format (i.e., .PST for Outlook). To the extent any ESI requires redaction prior to production, said ESI should be produced in .pdf format.

5. If you encounter any ambiguity in any Request or any Definition or Instruction, explain in your response the matter deemed ambiguous and the construction you used in responding to the Request.

6. The documents produced in response to the Requests shall be produced as they are kept in the ordinary course of business and shall be organized so that Plaintiff can ascertain the

files in which they were located, their relative order in such files, and how such files were maintained.

7. Words importing the singular shall include the plural and vice versa. The words "any" and "all" shall mean "any and all." The words "and" and "or" shall be construed conjunctively or disjunctively to include anything that would otherwise be excluded. The use of a verb in any tense shall be construed to include the use of the verb in all other tenses. The use of capital letters, lowercase letters, or quotation marks shall not limit the scope of any term.

8. Unless otherwise specified, the time period for the requests herein is January 1, 2023, to the present.

**DOCUMENTS TO BE PRODUCED**

1. Any agreements entered into between AlterBank and TV Azteca, including any credit agreements, as well any other Documents executed in connection with such agreements or in connection with any amendments to such agreements.

2. Documents or Communications relating to any credit agreement between AlterBank and TV Azteca, including those relating to TV Azteca's ability to repay any obligations, AlterBank's expected profit or loss on such credit agreement, funds transfers between AlterBank and TV Azteca, any amendments to such credit agreement, AlterBank's role in connection with such credit agreement (including as arranger, administrative agent, and collateral agent), TV Azteca's use of borrowed proceeds, assets securing any borrowing, AlterBank's funding for any loan or other credit agreement, and any diligence into TV Azteca's ability to repay any borrowing.

3. Communications with TV Azteca, its Affiliates, Subsidiaries, owners, officers, employees, agents, or anyone else acting on behalf of or in concert with TV Azteca, including

Case 1:26-mc-23885-JEM Document 1-2 Entered on FLSD Docket 06/08/2026 Page 5 of 71

Grupo Salinas and its owners, managers, companies, Affiliates, Subsidiaries, officers, directors, and agents.

4. Documents and Communications relating to TV Azteca's financial condition or solvency, including TV Azteca's initiation of *concurso mercantil* or other insolvency proceedings.

5. Documents and Communications concerning TV Azteca's other creditors, including TV Azteca's default on any other indebtedness and any AlterBank loan or other credit agreement's impact on TV Azteca's ability to repay other creditors.

6. Documents sufficient to show any Persons with direct or indirect ownership or Control of AlterBank, including through any intermediaries.

7. Documents relating to AlterBank's monthly, quarterly, and annual financial position since January 1, 2023, including:

a. Audited and unaudited monthly, quarterly or annual financial statements;

b. Other monthly, quarterly, or annual reports;

c. Documents concerning AlterBank's financial position filed with any regulatory authority;

d. Documents listing any loan or other credit agreement in which AlterBank acted as arranger, initial lender, administrative agent, or collateral agent;

e. Budgets or projections of AlterBank's financial position, including its balance sheet, income, or cash flows;

f. Presentations or reports discussing AlterBank's financial position, including those prepared for AlterBank's, owners, directors, or potential investors;

g. Documents concerning AlterBank's funding sources, capital and use of capital, including any outstanding loans or other credit agreements.

Case 1:25-mc-23885-JEM Document 1-5 Entered on FLSD Docket 08/07/2025 Page 59 of 71

**DEPOSITION**

This Subpoena also requires You to appear for a deposition at the time and place specified. You must be prepared to provide deposition testimony regarding the following topics:

1. Your role as a director of AlterBank, including your role relating to any agreement entered into between AlterBank and TV Azteca.

2. Any agreements between AlterBank and TV Azteca, including:

   a. The terms, negotiation, funding sources, proposed uses, and execution of any agreement with TV Azteca, as well as the timing and manner of such agreement's negotiation and execution;

   b. AlterBank's due diligence relating to any loan or other agreement;

   c. Your awareness of TV Azteca's financial position, including its capital structure, prior defaults, solvency, filing for a *concurso*, and pre-existing creditors;

   d. AlterBank's approval process for entering any credit agreement with TV Azteca, including the Persons who took part in the decision to enter or approve such loan; and

   e. Persons who took part in negotiation or execution of any credit agreement with TV Azteca, including any Persons other than AlterBank or TV Azteca.

3. Your relationship to TV Azteca and Grupo Salinas.

4. AlterBank's relationship to TV Azteca and Grupo Salinas, including:

   a. Alterbank's financial relationship with TV Azteca, Grupo Salinas, their companies, owners, Affiliates, and Subsidiaries, as well as any Person affiliated with Grupo Salinas or TV Azteca, including Ricardo Salinas Pliego;

b. Grupo Salinas's role concerning any agreement between AlterBank and TV Azteca;

c. AlterBank's communications with TV Azteca and Grupo Salinas between January 1, 2024 and the present;

d. The relationship between AlterBank's owner and directors and any Grupo Salinas entity; and

e. AlterBank's involvement, if any, in TV Azteca's payment of tax obligations.

5. AlterBank's operations between January 1, 2023 and the present, including:

a. AlterBank's management practices;

b. The regions in which AlterBank operates;

c. AlterBank's financial recording and reporting practices;

d. The types of financial services AlterBank offers;

e. The sources of AlterBank's capital;

f. AlterBank's lending history, including the number of loans outstanding, the average size of each loan, its history of extending any loans above $1 million, $10 million, or $100 million; and

g. The role of AlterBank's current or former owners and directors, including Augusto César Castillo Chávez, Juan Francisco Ramirez, and Blas Santander.

6. Your relationship to AlterBank's current or former owners and directors, including Augusto César Castillo Chávez and Juan Francisco Ramirez.

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

**In re Application of The Bank of New York Mellon, solely in its capacity as Trustee for the TV Azteca, S.A.B. de C.V. 8.25% Senior Notes due 2024, for an order pursuant to 28 U.S.C. § 1782**

*Plaintiff*

v.

*Defendant*

Civil Action No. 1:26-mc-23885-JEM

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: AlterBank, Limited
2501 Southwest 24th Avenue, Miami, Florida

*(Name of person to whom this subpoena is directed)*

☑ **Testimony:** YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Fridman Fels & Soto, PLLC, 150 Alhambra Circle, Suite 715, Coral Gables, FL 33134 (305) 569-7701 | Date and Time: Deposition: July 9, 2026<br>Document Production Deadline: July 2, 2026 |
|---|---|

The deposition will be recorded by this method: Court Reporter and Videographer

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Exhibit A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: June 8, 2026

*CLERK OF COURT*

OR Daniel S. Fridman

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* **The Bank of New York Mellon solely in its capacity as Trustee for the TV Azteca, S.A.B. de C.V. 8.25% Senior Notes due 2024**, who issues or requests this subpoena, are:

Daniel S. Fridman, Fridman Fels & Soto, PLLC, 150 Alhambra Circle, Suite 715, Coral Gables, FL 33134 (305) 569-7720 daniel.fridman@ffslawfirm.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named individual as follows: ______________________

______________________________________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ______________________

______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

Case 1:26-mc-23885-JEM Document 13-1 Entered on FLSD Docket 06/02/2026 Page 34 of 71



## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A**

**DEFINITIONS**

1. “You,” “your” or “AlterBank” means AlterBank Limited, as well as each Person acting under its control or in which it has an interest, including each of its members, officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, attorneys, and agents.

2. “Person” means any natural person, corporation, association, business entity, or other legal entity, as well as its officers, directors, members, partners, employees, agents, or representatives.

3. “Control,” “Controlled,” or “Controlling” means the ability, directly or indirectly to direct or cause the direction of any Person, whether through majority ownership of such Person or otherwise.

4. “Communication” or “Communications” means the transmittal of information (in the form of facts, ideas, inquiries or otherwise). It includes transmission via email, mail, messages, correspondence, forms, reports, or any other Documents.

5. “Document” includes without limitation any letters, e-mails, electronic files, electronic data, reports, publications, presentations, contracts, analyses, valuations, records, summaries, transcripts, accounts, business records, data compilations, or other hard copy or electronic documents, communications, or other information in whatever form.

6. “Concerning” means referring to, constituting, evidencing, recording, reflecting, substantiating, describing, summarizing, identifying, or relating to in any way, directly or indirectly, in whole or in part.

7. “Relating to” means directly or indirectly, in whole or in part, concerning, constituting, evidencing, recording, reflecting, substantiating, describing, summarizing, identifying, referring to in any way, or in any way relevant.

8. “Affiliate” means, with respect to any Person, any other Person who, directly or indirectly, is owned or Controlled by a common Person. TV Azteca affiliates include any Grupo Salinas entity, as well as any other entity Controlled, directly or indirectly, owned or controlled by Ricardo Salinas Pliego.

9. “Subsidiary” of any company means any other company of which a majority of the voting stock is owned, directly or indirectly, by such company.

10. “TV Azteca” means TV Azteca, S.A.B. de C.V., as well as each Person acting under its control or in which it has an interest, including each of its members, officers, directors, employees, partners, corporate parents, Subsidiaries, Affiliates, attorneys, and agents.

11. “Grupo Salinas” means any Person that is a member of Grupo Salinas, as well as any of such Person’s directors, members, officers, directors, employees, partners, corporate parents, Subsidiaries, Affiliates, attorneys, and agents. Grupo Salinas includes TV Azteca, Banco Azteca, and Grupo Elektra.

## INSTRUCTIONS

1. If any portion of any document is responsive to any request, produce the entire document. If any requested document cannot be produced in full, produce the document to the extent possible, specifying each reason for your inability to produce the remainder.

2. In responding to any request, you must produce all documents in your possession, custody, or control, regardless of whether you possess the documents directly and regardless of whether it is in this District. A document is in your possession, custody, or control if it is in your

custody or if it is in the custody of any other Person and you (1) own such document in whole or in part; (2) have a right by contract, statute, order, or otherwise to use, inspect, examine, or copy the document; (3) have an understanding, whether express or implied, that you may use, inspect, examine, or copy the document; or (4) have the practical ability to use, inspect, examine, or copy the document.

3. For any responsive Document that is redacted or withheld in whole or part on the basis of any assertion of privilege or other exemption from disclosure, provide a log identifying (1) the nature of the privilege or exemption asserted; (2) the nature of the document; (3) the title of the document; (4) the date of the document; (5) all Persons who prepared, sent, or received the document; (6) the number of pages; and (7) the contents or subject matter of the document or redacted or withheld portion thereof with sufficient detail to explain the basis for the privilege or exemption asserted.

4. Any electronically stored information ("ESI") should be produced in its native electronic form—i.e., the format in which it was originally created with all metadata intact. When producing ESI for electronic mail systems such as Microsoft Outlook or Gmail, provide all responsive emails and, if applicable, e-mail attachments and any related documents, in their respective mail container format (i.e., .PST for Outlook). To the extent any ESI requires redaction prior to production, said ESI should be produced in .pdf format.

5. If you encounter any ambiguity in any Request or any Definition or Instruction, explain in your response the matter deemed ambiguous and the construction you used in responding to the Request.

6. The documents produced in response to the Requests shall be produced as they are kept in the ordinary course of business and shall be organized so that Plaintiff can ascertain the

files in which they were located, their relative order in such files, and how such files were maintained.

7. Words importing the singular shall include the plural and vice versa. The words “any” and “all” shall mean “any and all.” The words “and” and “or” shall be construed conjunctively or disjunctively to include anything that would otherwise be excluded. The use of a verb in any tense shall be construed to include the use of the verb in all other tenses. The use of capital letters, lowercase letters, or quotation marks shall not limit the scope of any term.

8. Unless otherwise specified, the time period for the requests herein is January 1, 2023, to the present.

**DOCUMENTS TO BE PRODUCED**

1. Any agreements entered into between AlterBank and TV Azteca, including any credit agreements, as well any other Documents executed in connection with such agreements or in connection with any amendments to such agreements.

2. Documents or Communications relating to any credit agreement between AlterBank and TV Azteca, including those relating to TV Azteca’s ability to repay any obligations, AlterBank’s expected profit or loss on such credit agreement, funds transfers between AlterBank and TV Azteca, any amendments to such credit agreement, AlterBank’s role in connection with such credit agreement (including as arranger, administrative agent, and collateral agent), TV Azteca’s use of borrowed proceeds, assets securing any borrowing, AlterBank’s funding for any loan or other credit agreement, and any diligence into TV Azteca’s ability to repay any borrowing.

3. Communications with TV Azteca, its Affiliates, Subsidiaries, owners, officers, employees, agents, or anyone else acting on behalf of or in concert with TV Azteca, including

Grupo Salinas and its owners, managers, companies, Affiliates, Subsidiaries, officers, directors, and agents.

4. Documents and Communications relating to TV Azteca's financial condition or solvency, including the initiation by TV Azteca of any *concurso mercantil* or other insolvency proceeding.

5. Documents and Communications concerning TV Azteca's other creditors, including TV Azteca's default on any other indebtedness and any AlterBank loan or other credit agreement's impact on TV Azteca's ability to repay other creditors.

6. Documents sufficient to show any Persons with direct or indirect ownership or Control of AlterBank, including through any intermediaries.

7. Documents relating to AlterBank's monthly, quarterly, and annual financial position since January 1, 2023, including:

a. Audited and unaudited monthly, quarterly or annual financial statements;

b. Other monthly, quarterly, or annual reports;

c. Documents concerning AlterBank's financial position filed with any regulatory authority;

d. Documents listing any loan or other credit agreement in which AlterBank acted as arranger, initial lender, administrative agent, or collateral agent;

e. Budgets or projections of AlterBank's financial position, including its balance sheet, income, or cash flows;

f. Presentations or reports discussing AlterBank's financial position, including those prepared for AlterBank's, owners, directors, or potential investors;

g. Documents concerning AlterBank's funding sources, capital and use of capital, including any outstanding loans or other credit agreements.

**30(B)(6) DEPOSITION TOPICS**

1. Any agreements between AlterBank and TV Azteca, including:

    a. The terms, negotiation, funding sources, proposed uses, and execution of any agreement with TV Azteca, as well as the timing and manner of such agreement's negotiation and execution;

    b. AlterBank's due diligence relating to any loan or other agreement;

    c. AlterBank's awareness of TV Azteca's financial position, including its capital structure, prior defaults, solvency, filing for a *concurso*, and pre-existing creditors;

    d. AlterBank's approval process for entering into any credit agreement with TV Azteca, including the Persons who took part in the decision to enter or approve such credit agreement; and

    e. Persons who took part in negotiation or execution of any credit agreement with TV Azteca, including any Persons other than AlterBank or TV Azteca.

2. AlterBank's relationship to TV Azteca or Grupo Salinas, including:

    a. Alterbank's financial relationship with TV Azteca, Grupo Salinas, their companies, owners, Affiliates, and Subsidiaries, as well as any Person affiliated with Grupo Salinas or TV Azteca, including Ricardo Salinas Pliego;

    b. Grupo Salinas's role concerning any agreement between AlterBank and TV Azteca;

    c. AlterBank's communications with TV Azteca and Grupo Salinas between January 1, 2024 and the present;

d. The relationship between AlterBank's owner and directors and any Grupo Salinas entity; and

e. AlterBank's involvement, if any, in TV Azteca's payment of tax obligations.

3. AlterBank's financial position between 2023 and the present, including:

a. AlterBank's financial recording and reporting practices; and

b. The sources of AlterBank's capital.

4. AlterBank's operations between January 1, 2023 and the present, including:

a. AlterBank's management practices;

b. The regions in which AlterBank operates;

c. The types of financial services AlterBank offers;

d. The sources of AlterBank's capital;

e. AlterBank's lending history, including the number of loans outstanding, the average size of each loan, the history of extending any loans above $1 million, $10 million, or $100 million; and

f. The role of AlterBank's current or former owners and directors, including Augusto César Castillo Chávez, Juan Francisco Ramirez, and Blas Santander.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 1:26-mc-23885-JEM**

In re Application of

THE BANK OF NEW YORK MELLON,
SOLELY IN ITS CAPACITY AS TRUSTEE
FOR THE TV AZTECA, S.A.B. DE C.V. 8.25%
SENIOR NOTES DUE 2024,

For an Order Pursuant to 28 U.S.C. § 1782
To Conduct Discovery for Use in a Foreign
Proceeding
/

# THE BANK OF NEW YORK MELLON'S *EX PARTE* APPLICATION FOR AN ORDER AUTHORIZING DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Daniel S. Fridman, Esq.
Fla. Bar No. 176478
FRIDMAN FELS & SOTO, PLLC
150 Alhambra Circle
Suite 715
Coral Gables, Florida 33134
Tel.: (305) 569-7720
daniel.fridman@ffslawfirm.com

Justin M. Ellis (*pro hac vice* forthcoming)
Zachary R. Ingber (*pro hac vice* forthcoming)
Eric J. Rolston (*pro hac vice* forthcoming)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Tel.: (212) 607-8159
jellis@mololamken.com

*Counsel for The Bank of New York Mellon, as Trustee*

June 2, 2026

# TABLE OF CONTENTS

Page


INTRODUCTION .................................................. 1

BACKGROUND .................................................. 2

I. The Notes and TV Azteca's Default .................................................. 2

II. TV Azteca's Mexican *Concurso* Proceedings .................................................. 3

III. AlterBank's Loan to TV Azteca .................................................. 5

IV. AlterBank's Connections to This District .................................................. 9

ARGUMENT .................................................. 10

I. The Court Has Authority To Grant the Application Because § 1782's Requirements Are Satisfied .................................................. 11

A. The Trustee Is an "Interested Person" .................................................. 12

B. The Trustee Seeks Testimonial and Documentary Evidence .................................................. 12

C. The Information Sought Is For Use in a Foreign Proceeding .................................................. 13

D. The Proposed Respondents Are "Found" in This District .................................................. 14

II. The Court Should Exercise Its Discretion To Grant The Application .................................................. 16

A. The Respondents Are Not Parties to the Foreign Proceeding .................................................. 16

B. The *Concurso* Court Is Receptive to Evidence Obtained Under § 1782 .................................................. 18

C. The Application Does Not Circumvent Discovery Limitations .................................................. 19

D. The Requested Discovery Is Not Unduly Burdensome .................................................. 21

III. The Court Should Grant the Application *Ex Parte* .................................................. 23

CONCLUSION .................................................. 24

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Devine*,
No. 21-13587, 2025 WL 764608 (11th Cir. Mar. 11, 2025)....................14, 16

*Angarita v. Hypertoyz, Inc.*,
No. 23-CV-20695, 2023 WL 8593312 (S.D. Fla. Dec. 6, 2023)....................15

*In re Application of Grupo Qumma*,
No. 8-MC-85, 2005 WL 937486 (S.D.N.Y. Apr. 22, 2005)....................19

*In re Application of Mesa Power Grp., LLC*,
878 F. Supp. 2d 1296 (S.D. Fla. July 13, 2012)....................18

*In re Application of Salem*,
No. 24-mc-5, 2024 WL 3026670 (S.D.N.Y. June 17, 2024)....................23

*In re Application of Victoria, LLC.*,
No. 18-MC-21202, 2019 WL 8810208 (S.D. Fla. Jan. 11, 2019)....................14, 17

*In re Bank Otkritie Fin. Corp.*,
No. 22-MC-50, 2022 WL 2384169 (S.D.N.Y. July 1, 2022)....................14

*In re Bernal*,
No. 18-MC-21951, 2018 WL 6620085 (S.D. Fla. Dec. 18, 2018)....................19

*In re Braga*,
272 F.R.D. 621 (S.D. Fla. 2011)....................23

*In re Browne*,
No. 25-CV-21129, 2025 WL 1984291 (S.D. Fla. July 17, 2025)....................12

*Bush v. Cardtronics, Inc.*,
No. 20-H-2642, 2020 WL 6261694 (S.D. Tex. Oct. 23, 2020)....................19

*In re Clerici*,
481 F.3d 1324 (11th Cir. 2007)....................10, 11, 22

*Matter of Colombo Agroindustria S.A.*,
No. 22-MC-21670, 2022 WL 2167719 (S.D. Fla. June 16, 2022)....................17, 23

*Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262 (11th Cir. 2014)....................13, 21

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................14, 15

*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019)....................14, 16

*In re Edelman*,
295 F.3d 171 (2d Cir. 2002)....................14

*In re Ernesto Andrade Grp.*,
712 F. Supp. 3d 438 (S.D.N.Y. 2024)....................23

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995)....................18

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021)....................16

*In re Furstenberg Fin. SAS v. Litai Assets LLC*,
877 F.3d 1031 (11th Cir. 2017) ....................12

*Glock v. Glock, Inc.*,
797 F.3d 1002 (11th Cir. 2015) ....................11, 21

*In re Glozman*,
No. 25-MC-24525, 2026 WL 291008 (S.D. Fla. Feb. 4, 2026)....................13

*Golant v. German Shepherd Dog Club of Am., Inc.*,
26 So. 3d 60 (Fla. Dist. Ct. App. 2010) ....................15

*In re Gonzalez*,
No. 20-MC-24628, 2021 WL 3835180 (S.D. Fla. Apr. 14, 2021) ....................14

*Gonzalez v. Verfruco Foods, Inc.*,
No. 21-12922, 2023 WL 1794391 (11th Cir. Feb. 7, 2023) ....................14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004).................... *passim*

*In re Kurbatova*,
No. 18-MC-81554, 2019 WL 2180704 (S.D. Fla. May 20, 2019) ....................14

*In re Letter of Request from Gov't of France*,
139 F.R.D. 588 (S.D.N.Y. 1991) ....................23

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015)....................13

*In re MTS Bank*,
No. 17-MC-21545, 2017 WL 3155362 (S.D. Fla. July 25, 2017) ..........17

*In re MTS Bank*,
No. 17-MC-21545, 2017 WL 3276879 (S.D. Fla. Aug. 1, 2017) ..........12, 22

*In re MTS Bank*,
No. 17-MC-21545, 2018 WL 3145806 (S.D. Fla. June 27, 2018) ..........12, 18, 19, 20

*Sergeeva v. Tripleton Int'l Ltd.*,
834 F.3d 1194 (11th Cir. 2016) ..........12

*In re Sociedad Militar Seguro de Vida*,
985 F. Supp. 2d 1375 (N.D. Ga. 2013) ..........23

*Storms v. Haugland Energy Grp., LLC*,
No. 18-CV-80334, 2018 WL 4347603 (S.D. Fla. Aug. 17, 2018) ..........15

*In re Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. de C.V.*, No. 25-MC-435, 2026 WL 768850 (S.D.N.Y. Mar. 18, 2026) ..........13, 18

*In re Travessia Securitizadora de Creditos Financeiros VIII S.A.*,
707 F. Supp. 3d 1366 (S.D. Fla. 2023) ..........23

*In re Travessia Securitizadora de Creditos Financeiros VIII S.A.*,
No. 23-CV-24235, 2024 WL 4201982 (S.D. Fla. Aug. 14, 2024) ..........14

*Victorian, LLC v. Likhtenfeld*,
791 F. App'x 810 (11th Cir. 2019) ..........13

*In re Vitro S.A.B. de CV*,
701 F.3d 1031 (5th Cir. 2012) ..........13

*Weber v. Finker*,
554 F.3d 1379 (11th Cir.2009) ..........22

**Statutes**

11 U.S.C. § 1515 ..........21

28 U.S.C. § 1782 .......... *passim*

Fed. R. Civ. P. 26(b)(1) ..........21

St. Lucia International Business Companies Act, Ch. 12.14 § 12(1)(a) ..........10

## INTRODUCTION

This *ex parte* application under 28 U.S.C. § 1782 seeks U.S. discovery into a potential $290 million fraudulent transfer at issue in a Mexican bankruptcy proceeding. The Bank of New York Mellon acts here as Trustee for Senior Notes issued by the Mexican media company TV Azteca. TV Azteca has been in default on the Notes since 2022 and owes the Trustee more than $630 million. In March 2026, TV Azteca filed a petition to begin "*concurso mercantil*" insolvency proceedings in Mexico. But just five weeks before that filing, TV Azteca entered into a $290 million secured loan agreement with AlterBank Limited – a St. Lucian "international bank" connected to prior fraudulent transfers and criminal activity. TV Azteca and AlterBank then amended the loan agreement *four days* before TV Azteca filed its insolvency petition. The Trustee's investigation suggests that AlterBank lacked the funds to make such a large loan by itself, and TV Azteca has repeatedly sought to conceal information concerning the loan from the Trustee. The available evidence thus suggests that the AlterBank loan may be a fraudulent transfer.

Accordingly, the Trustee seeks U.S. discovery so it can pursue fraudulent-transfer claims in the *concurso* proceedings. Six former and current AlterBank directors and officers reside and conduct AlterBank's business in this District, and the Trustee seeks leave to serve subpoenas relating to the TV Azteca loan on those individuals and AlterBank itself.[1] The Trustee's proposed subpoenas satisfy all requirements for discovery under § 1782. And courts have repeatedly allowed § 1782 discovery in similar circumstances. The Court should grant the application.

[1] In addition to AlterBank, the proposed respondents are: (1) Blas Santander; (2) Alexander Soroka; (3) Timothy Richards; (4) Alejandro Cespedes; (5) Julio Luis Santander; and (6) Juan Ramirez (collectively, the "Individual Respondents"). *See* pp. 9-10, *infra*. The proposed subpoenas are attached as an appendix to the application.

Case 1:26-mc-23885-JEM Document 5-1 Entered on FLSD Docket 06/08/2026 Page 7 of 30

## BACKGROUND

### I. The Notes and TV Azteca's Default

TV Azteca is a Mexican multimedia conglomerate. Ellis Decl. ¶4; Ex. 4 ("Offering Circular") at 58-59.[2] It issued $400 million of Notes under a 2017 Indenture and Global Note, with various TV Azteca subsidiaries as guarantors; The Bank of New York Mellon, as Trustee; and The Bank of New York Mellon, London Branch, as Principal Paying Agent. Ellis Decl. ¶3; Ex. 2 (Indenture). In the Indenture and Global Note, TV Azteca agreed to pay semi-annual interest and repay the $400 million in principal when the Notes matured in August 2024. Ellis Decl. ¶¶3-4; Ex. 2 §3.1; Ex. 3 ("Global Note") at PDF 4.[3]

The Indenture has multiple terms designed to ensure that TV Azteca repays the Notes. TV Azteca cannot defer or amend its payment obligations without the majority of the Notes' Holders' written consent. Ex. 2 §9.2. The Indenture also restricts TV Azteca's ability to incur additional debt, transact with affiliates, transfer assets, or incur new liens. *Id.* §§3.9, 3.10, 3.12, 3.15, 3.16. And the Indenture also requires TV Azteca to provide detailed financial reports every quarter and to give notice of any breach of its obligations. *Id.* §§3.5, 3.18, 6.1(b).

TV Azteca announced on February 9, 2021, that it would not make the interest payment due that day. Ellis Decl. ¶7; Ex. 1 ("Stipulated Facts of TV Azteca") ¶23. Since then, TV Azteca has failed to make *any* payments on the Notes, including either interest or the principal that came due when the Notes matured in 2024. Ellis Decl. ¶8; Chang Decl. ¶¶9-12. TV Azteca's subsidiaries also failed to honor their guarantee of the Notes. Ellis Decl. ¶8; Chang Decl. ¶¶11-12. At the same time, TV Azteca continued to make timely payments on its other debts. For instance,

---

[2] Unless otherwise noted, Exhibits refer to those attached to the Ellis Declaration filed with the Trustee's application.

[3] References to Exhibits' PDF pages are inclusive of the cover sheet identifying each Exhibit.

TV Azteca remained current on a loan with a related party that shares the same owner as TV Azteca, as well as a Mexican entity known as Capiprom. *See Fitch Affirms TV Azteca's IDRs at 'RD,'* Fitch Ratings (Jan. 30, 2023), available at https://bit.ly/48Joc2W.

The Trustee sent notices of events of default under the Indenture in March 2021 and March 2022, as well as notices of acceleration in August 2022. Ellis Decl. ¶¶ 9-10; Chang. Decl. ¶ 10; Exs. 6-9 (Notices of Default and Acceleration). The Trustee then brought a breach of contract action in New York state court, which TV Azteca removed to the Southern District of New York. Ellis Decl. ¶ 11; *see also* Ex. 2 § 6.8 (the Trustee has authority to recover judgment for the Notes in its own name). In March 2026, the district court stayed discovery in that action and granted the Trustee leave to move for summary judgment against both TV Azteca and the Guarantor Defendants. Ellis Decl. ¶ 11. The parties are currently briefing the Trustee's summary judgment motion. *Id*.

## II. TV Azteca's Mexican *Concurso* Proceedings

On February 26, 2026, TV Azteca's management group announced that TV Azteca's shareholders had approved filing a commercial bankruptcy proceeding in Mexico known as a *concurso mercantil*. Castillo Decl. ¶ 24; Ex. 12 (Press Release with Translation). On March 10, 2026, TV Azteca filed the *concurso* petition in the First Bankruptcy Court in Mexico City. Castillo Decl. ¶ 25.

Under Mexican law, a *concurso* begins with a preliminary "examination" phase followed by two stages if a *concurso* is declared. Castillo Decl. ¶¶ 4-5. *First*, during the preliminary examination (or "*visita*") phase, a court-appointed examiner inspects the debtor's records to assess whether the debtor is insolvent and meets the requirements for *concurso* relief. *Id*. ¶¶ 5-6. If so, the court declares the debtor insolvent and accepts the *concurso* petition. *Id.* ¶¶ 5-6. *Second*, during the "conciliation" phase, a court-appointed conciliator (or "*conciliador*") and the court

recognize and give priority to creditors' claims, and the conciliator seeks to facilitate a plan of reorganization for the company. *Id*. ¶¶ 8-9. The conciliation stage lasts a maximum of one year. *Id.* ¶ 21. *Third*, if the debtor and a majority of creditors cannot approve a plan, a liquidation (or "*quiebra*") phase begins where the debtor's assets are liquidated, similar to a Chapter 7 bankruptcy in the United States. *Id.* ¶ 23. As of June 2, 2026, TV Azteca's *concurso* remains in the initial examination stage. The conciliation stage is likely to begin in June 2026. *Id.* ¶ 29.

The examination phase of the *concurso* is *ex parte*. Castillo Decl. ¶ 7. If the Mexican court accepts and declares the *concurso*, the Trustee will submit written proof of claims to TV Azteca's conciliator to obtain recognition of the Notes and participate as a party in the *concurso*. *Id.* ¶¶ 10-12, 30-31. As a party, the Trustee will have a short window of just three to five days to dispute other creditors' claims as fraudulent transfers and challenge the classification and ranking of creditor claims. *Id.* ¶¶ 10-12. The Trustee may request additional time to submit foreign discovery in support of its claims, but whether to grant or deny this request is in the Mexican court's discretion. *Id.* ¶ 10.

To successfully challenge a claim as a fraudulent transfer under Mexican law, the Trustee needs evidence concerning: the transfer's economic terms; the relationship between the debtor and transferee; and the debtor's and transferee's knowledge and intent. Castillo Decl. ¶¶ 13-14, 36. Mexican law permits parties to submit any lawfully obtained evidence that helps the tribunal ascertain the truth. *Id*. ¶ 16. However, while *concurso* rules allow creditors to submit relevant evidence and request limited categories of information from the debtor, creditors generally do not have an opportunity to obtain discovery from other creditors in Mexico. *Id.* ¶¶ 17-20, 40.

In connection with its *concurso* petition, TV Azteca submitted financial statements from between 2022 and 2024, a preliminary list of creditors and outstanding claims, a list of ongoing

litigation, and a restructuring plan. Castillo Decl. ¶ 34. In the Southern District of New York action, the Trustee repeatedly requested that TV Azteca produce its *concurso* filing, but TV Azteca refused. Ellis Decl. ¶¶ 14-15. The Trustee also repeatedly requested certain information, including financial statements, pursuant to the Trustee's rights under the Indenture. Chang Decl. ¶ 13. But TV Azteca also refused those requests. Ellis Decl. ¶ 15.

### III. AlterBank's Loan to TV Azteca

The Trustee obtained the *concurso* petition on May 14, 2026 through a constitutional challenge in the Mexican courts to certain aspects of the *concurso* proceedings. Castillo Decl. ¶ 14. The *concurso* petition reveals that, weeks before filing the *concurso* petition, TV Azteca entered into a $290 million secured credit agreement with AlterBank, an "alternative financial institution" incorporated in St. Lucia. "AlterBank," https://www.alterbank.com; Ellis Decl. ¶¶ 17-18; Castillo Decl. ¶¶ 32-33. TV Azteca and AlterBank then amended the loan agreement on March 6, 2026, only four days before TV Azteca filed the petition. Castillo Decl. ¶ 33. Based on the Trustee's ongoing investigation, there are at least five reasons to believe that the AlterBank loan is a fraudulent transfer under Mexican law.

*First*, the AlterBank loan's timing and circumstances are indicative of a fraudulent transfer. TV Azteca executed a secured loan subordinating the Notes to the AlterBank loan around the same time that its shareholders voted to approve the *concurso* filing, and it amended the loan after the company voted to seek *concurso* protection. TV Azteca also publicly announced the results of the shareholder vote approximately one week before amending the AlterBank loan and approximately two weeks before the *concurso* petition was filed. Ellis Decl. ¶ 14; Castillo Decl. ¶¶ 24-25; Ex. 12. TV Azteca had also claimed as early as December 2025 that it was financially "impossib[le]" to

pay the Notes due to TV Azteca's tax liabilities.[4] TV Azteca thus negotiated, executed, and then amended the AlterBank loan—TV Azteca's largest loan except for the Notes and its first new third-party debt in at least four years—at a time when TV Azteca was, by its own public statements, insolvent. In addition, TV Azteca took out this loan while defending litigation over the more than $630 million in Notes it failed to pay. *See* pp. 2-3, *supra*.

*Second*, AlterBank has recently been connected to other fraudulent transfers and criminal activity. AlterBank was founded in 2023 by Juan Franciso Ramirez, the former owner and chairman of Nodus International Bank. Ellis Decl. ¶¶ 18-21. In October 2023, Puerto Rico's bank regulator, the Office of the Commissioner of Financial Institutions ("OCIF"), placed Nodus in receivership and found that Nodus had defrauded its depositors and creditors. *Id*. ¶¶ 20-21. OCIF also found that Mr. Ramirez and another individual had made fraudulent transfers to deplete Nodus's assets after it was ordered to liquidate. *Id*. ¶¶ 20-21; Ex. 16 (OCIF Order). Mr. Ramirez later pled guilty to conspiracy to commit wire fraud for siphoning depositors' funds for his personal benefit. *See* Factual Proffer in Support of Guilty Plea, *United States v. Ramirez*, No. 25-cr-20384, Dkt. 71 (S.D. Fla. Nov. 22, 2025).

In December 2024, Ramirez purported to resign from AlterBank's board and transferred ownership of AlterBank to Augusto César Castillo Chávez, a Venezuelan citizen with an address in Mexico City. Ellis Decl. ¶ 22; Ex. 14 (AlterBank Register) at 7. However, Mr. Castillo Chávez has no apparent experience owning or managing a financial institution. Ellis Decl. ¶ 22; Ex. 14 (AlterBank Register) at 2, 9. Meanwhile, AlterBank remains tied to Mr. Ramirez. AlterBank's current director and "chief business officer" responsible for AlterBank's "day-to-day business

[4] Answer at 12, *The Bank of New York Mellon v. TV Azteca, S.A.B. de C.V., et al.*, No. 22-cv-8164, Dkt. 148 (S.D.N.Y. Nov. 26, 2025); *see also* Letter dated Dec. 7, 2025 at 2, *The Bank of New York Mellon v. TV Azteca, S.A.B. de C.V., et al.*, No. 22-cv-8164, Dkt. 157 (S.D.N.Y. Dec. 7, 2025).

operations," Blas Santander, worked with Mr. Ramirez at AlterBank before Mr. Ramirez's resignation. Ellis Decl. ¶23; Ex. 14 at 7-9 (noting dates of Mr. Ramirez's resignation and Mr. Santander's appointment); Ex. 18 (Santander LinkedIn).

*Third*, it is doubtful that AlterBank had the capacity to extend a $290 million loan to TV Azteca by itself. AlterBank is not a traditional bank. It describes itself as an "alternative financial institution" founded in March 2023. Ellis Decl. ¶18. There is no public record of what assets AlterBank has under management and no indication that it would have the funds necessary to make such a large loan. Ellis Decl. ¶¶21, 27. In its own words, AlterBank offers "international trade products to small and medium-sized enterprises," not nine-figure loans to distressed companies. "AlterBank," https://www.alterbank.com.

In fact, in April 2024, Puerto Rican regulators found that AlterBank lacked the capacity to take on *any* new clients. During Nodus's OCIF liquidation, Mr. Ramirez proposed to transfer Nodus's assets to AlterBank. Ellis Decl. ¶21; Ex. 16 (OCIF Order) ¶¶130-131; *id.* at p. 31 (describing AlterBank as "not qualified to accept depositors"). OCIF rejected that proposal because AlterBank was "not ready to receive new customers, as it did not possess the licenses required to operate in Saint Lucia nor the infrastructure necessary to fulfill its obligations to the Receiver." Ellis Decl. ¶21; Ex. 16 (OCIF Order) ¶¶130-131. There is no public information showing that AlterBank has improved its compliance or infrastructure since the 2024 order.

*Fourth*, the AlterBank loan's terms seem designed to frustrate repayment of the Notes. TV Azteca and AlterBank structured the loan as secured and therefore senior to the Notes, giving AlterBank priority over the Notes in the *concurso*, in violation of Indenture provisions restricting TV Azteca from issuing senior or secured debt. *See* p. 2, *supra* (noting Indenture restrictions). The loan, if valid, directly reduces the amount the Trustee could recover in the *concurso*. Castillo

Decl. ¶37. TV Azteca and AlterBank also structured the loan to mature in less than six months, requiring TV Azteca to repay the loan or lose its collateral at a point when it claims it is illiquid and insolvent. Ex. 2 to Castillo Decl. (noting AlterBank loan's July 2026 maturity).

*Fifth*, TV Azteca has repeatedly hidden the AlterBank loan from the Trustee. TV Azteca never sought or received approval for the AlterBank loan from a majority of the Note Holders, as the Indenture requires. Ex. 2 §§ 3.9(a) (restriction on additional debt), 9.2(a) (requirements to waive restrictions under the Indenture); Ellis Decl. ¶5; Chang Decl. ¶14. TV Azteca has also breached its duty to provide financial statements to the Trustee since at least 2022, despite the Trustee's repeated requests. Ellis Decl. ¶6; Chang Decl. ¶13; *see also* Ex. 2 § 3.18. And TV Azteca repeatedly refused to provide the Trustee a copy of its *concurso* petition that revealed the AlterBank loan. Ellis Decl. ¶¶14-15.[5]

Given these badges of fraud, the Trustee intends to challenge the AlterBank loan in the Mexican *concurso* proceedings. Castillo Decl. ¶35. Potential challenges under Mexican law include, but are not limited to: fraudulent transfer claims; claims based on conducting transactions outside of fair market conditions; clawing back funds resulting from fraudulent transfers; and challenges to the classification or ranking of the Notes and the AlterBank loan. Castillo Decl. ¶¶10-12, 35-36. In preparation for bringing these claims, the Trustee and its counsel are investigating the AlterBank loan. Ellis Decl. ¶¶18-27. Accordingly, the Trustee seeks discovery from AlterBank, and its directors and officers, regarding the loan. Castillo Decl. ¶¶36-40.

---

[5] *See also, e.g.*, Letter at 3, *Bank of N.Y. Mellon v. TV Azteca, S.A.B. de C.V.*, No. 22-cv-8164, Dkt. 242 (S.D.N.Y. Mar. 18, 2026).

## IV. AlterBank's Connections to This District

AlterBank has strong connections to this District. According to AlterBank's corporate filings and other public records, five current AlterBank directors and officers are located in this District.

- Blas Santander, AlterBank's director and "Chief Business Officer" who is "responsible for the day-to-day business operations for the [b]ank," is an American citizen whose address is 2501 Southwest 24th Avenue, Miami, Florida 33133. Ex. 18 (LinkedIn); Ellis Decl. ¶24(a); Ex. 14 (AlterBank Register) at PDF 9.
- Alexander Soroka, a director, resides at 952 Mockingbird Lane, Apartment 603, Plantation, Florida 33324. Ellis Decl. ¶24(b); Ex. 14 (AlterBank Register) at PDF 10; Ex. 19 (LinkedIn).
- Timothy Richards, a director, is an American citizen and director whose address is 2000 Salzedo Street, Apartment 806, Coral Gables, Florida 33134. Ellis Decl. ¶24(c); Ex. 14 (AlterBank Register) at PDF 11; Ex. 20 (LinkedIn).
- Alejandro Cespedes, Board Secretary and Economist, is an American citizen whose address is 2967 Bridgeport Avenue, Miami, Florida 33133. Ellis Decl. ¶24(d); Ex. 14 (AlterBank Register) at PDF 13; Ex. 21 (LinkedIn).
- Julio Luis Santander is AlterBank's senior manager of regional operations based in Miami. Ellis Decl. ¶24(e); Ex. 22 (LinkedIn).

In addition, Juan Ramirez, AlterBank's former owner and director, resides at 2821 S Bayshore Drive 33133, Unit 11C, Miami, Florida. Ellis Decl. ¶24(f); Ex. 14 (AlterBank Register) at PDF 8. AlterBank's LinkedIn page also shows that the Miami-Fort Lauderdale area has the highest number of individuals associated with AlterBank. Ellis Decl. ¶26; Ex. 23 (LinkedIn).

By contrast, AlterBank's publicly available St. Lucia address is a mostly unoccupied office with just three staff members: a receptionist, a marketing employee, and a manager. Ellis Decl.

¶27.[6] Upon information and belief, AlterBank's directors and officers instead carry on AlterBank's business largely from their residences in Florida. AlterBank also does not have a customer base in St. Lucia. Under St. Lucian law, International Business Companies such as AlterBank are prohibited from "carry[ing] on business with persons resident in Saint Lucia."[7]

## ARGUMENT

Under § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). The Supreme Court and Eleventh Circuit have laid out a two-step process for § 1782 applications. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255-66 (2004); *In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007). A district court must first decide whether it has authority to grant discovery under the statute. *Clerici*, 481 F.3d at 1331-32. Authority to grant a § 1782 application exists if:

> (1) the request is made by an "interested person";
>
> (2) the request seeks evidence, which may be a person's "testimony or statement" or the production of a document or other thing;
>
> (3) the evidence is "for use in a proceeding in a foreign or international tribunal"; and
>
> (4) the person from whom discovery is sought resides or is "found in the district of the district court ruling on the application for assistance."

*Id.* (quoting 28 U.S.C. § 1782).

---

[6] This address was listed by the Financial Services Regulatory Authority for Saint Lucia. Ellis Decl. ¶27. AlterBank's corporate filings list only a PO Box as its "Registered Office." Ex. 14 (AlterBank Register) at PDF 2. AlterBank's website does not list an address. "AlterBank," https://www.alterbank.com.

[7] St. Lucia International Business Companies Act, Ch. 12.14 §12(1)(a); *see also* Ex. 14 at PDF 2 (AlterBank Register) (noting filing pursuant to International Business Companies Act, Ch. 12.14).

If those conditions are met, the court must then decide whether to exercise its discretion and grant the application. *Intel*, 542 U.S. at 264-66; *Clerici*, 481 F.3d at 1334. In *Intel*, the Supreme Court set out four factors for courts to consider:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding";
>
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
>
> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
>
> (4) whether the discovery request is "unduly intrusive or burdensome."

*Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264-65). Courts also consider the twin aims of the statute: "to provide efficient means of assistance in our federal courts for litigants involved in international litigation and to prompt foreign courts to follow our generous example and provide similar assistance to our court systems." *Glock v. Glock, Inc.*, 797 F.3d 1002, 1006-07 (11th Cir. 2015) (cleaned up).

The Trustee's application satisfies both steps. The Court has authority to grant the application because the statutory requirements are satisfied. And *Intel*'s discretionary factors strongly favor granting the application.

## I. THE COURT HAS AUTHORITY TO GRANT THE APPLICATION BECAUSE § 1782'S REQUIREMENTS ARE SATISFIED

Each of the four statutory requirements under § 1782 are met. *Clerici*, 481 F.3d at 1331-32. The Trustee is an "interested person" in the *concurso* and seeks to serve the proposed subpoenas on Respondents in this District for documents and deposition testimony for use in the *concurso*.

### A. The Trustee Is an "Interested Person"

The Trustee is an "interested person" in the *concurso* because it will appear and litigate in that proceeding to recover what it is owed on the Notes. Castillo Decl. ¶¶ 30-31, 34-35; *see also* Ex. 3 to Castillo Decl. (*concurso* petition listing the Notes as TV Azteca's most significant overdue liabilities). "No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256; *see also In re Browne*, No. 25-cv-21129, 2025 WL 1984291, at *4 (S.D. Fla. July 17, 2025) (applicant that "is or will be a litigant" is an "interested person[ ]"). And while the Trustee cannot participate until the *concurso* is accepted, a person that merely plans to participate in a proceeding, or is seeking to do so, is still "interested" under § 1782. *In re Furstenberg Fin. SAS v. Litai Assets LLC,* 877 F.3d 1031, 1035 (11th Cir. 2017) (applicant that "plan[ned]" to file criminal complaint was "interested person"); *In re MTS Bank*, No. 17-MC-21545, 2018 WL 3145806, at *4 (S.D. Fla. June 27, 2018) (creditor that applied to participate in foreign bankruptcy was "interested person"); *In re MTS Bank*, No. 17-MC-21545, 2017 WL 3276879, at *13 (S.D. Fla. Aug. 1, 2017) ("Section 1782 is designed to support such contemplated claims" (internal quotations omitted)) (collecting cases).

### B. The Trustee Seeks Testimonial and Documentary Evidence

The Trustee's proposed subpoenas seek documents about: (1) AlterBank's ownership and finances; (2) the loan extended to TV Azteca; and (3) the relationship between AlterBank, TV Azteca, and TV Azteca's owners and affiliates. The Trustee further requests leave to depose the six current and former AlterBank directors and officers who are likely to have information on those topics, as well as AlterBank. This "testimony and documentary evidence as listed in the subpoenas" meets the second § 1782 requirement. *MTS Bank*, 2017 WL 3276879, at *4.

This information is also in Respondents' "possession, custody, or control." *See Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016). In addition to AlterBank itself,

Respondents are AlterBank's directors, senior officers, and a former owner. It is highly likely that Respondents have information about AlterBank's ownership and finances and the TV Azteca loan. This information is proper testimony and documentary evidence. *Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.,* 747 F.3d 1262, 1272 (11th Cir. 2014) (under § 1782, courts "should grant discovery under the Federal Rules of Civil Procedure").

**C. The Information Sought Is For Use in a Foreign Proceeding**

The discovery the Trustee seeks is "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). Courts have held that foreign bankruptcies, including Mexican *concurso* bankruptcies, are foreign proceedings. *See, e.g.*, *Victorian, LLC v. Likhtenfeld*, 791 F. App'x 810, 816 (11th Cir. 2019) (Russian bankruptcy); *In re Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. de C.V.*, No. 25-MC-0435, 2026 WL 770360, at *5 (S.D.N.Y. Feb. 9, 2026), *report and recommendation adopted sub nom.*, No. 25-MC-435, 2026 WL 768850 (S.D.N.Y. Mar. 18, 2026) (Mexican bankruptcy); *see also In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1038 n.1 (5th Cir. 2012) ("A *concurso* proceeding is the Mexican equivalent of a voluntary judicial reorganization proceeding under United States law."). Although the *concurso* petition has not yet been accepted, to satisfy § 1782 a foreign proceeding need only be "within reasonable contemplation," *Intel*, 542 U.S. at 259, and "more than speculative," *Consorcio Ecuatoriano*, 747 F.3d at 1270. The *concurso* is not speculative. TV Azteca voluntarily petitioned to be declared insolvent, the proceedings are in the preliminary *visita* (examination) stage, and TV Azteca listed both the AlterBank loan and the Notes among its debts. Castillo Decl. ¶¶ 27, 33-34.

In addition, the Trustee's discovery is "for use" in the *concurso*. Discovery is "for use" in a foreign proceeding so long as the information will "be employed with some advantage or serve some use in the proceeding." *In re Glozman,* No. 25-MC-24525, 2026 WL 291008, at *2 (S.D. Fla. Feb. 4, 2026) (collecting cases); *see also Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)

(similar). Here, the Trustee seeks to use the AlterBank discovery to investigate and prosecute claims challenging the loan – including potential fraudulent transfer claims – in the *concurso*. Castillo Decl. ¶¶ 35-40; *see* pp 5-8, *supra*. Courts in this District and elsewhere have consistently found similar discovery permissible under § 1782. *In re Travessia Securitizadora de Creditos Financeiros VIII S.A.*, No. 23-CV-24235, 2024 WL 4201982, at *2 (S.D. Fla. Aug. 14, 2024) (documentary evidence and depositions to investigate and prove fraudulent transfer claims); *In re Gonzalez*, No. 20-MC-24628, 2021 WL 3835180, at *1 (S.D. Fla. Apr. 14, 2021) (similar), *aff'd sub nom.*, 2023 WL 1794391 (11th Cir. Feb. 7, 2023); *In re Bank Otkritie Fin. Corp.*, No. 22-MC-50, 2022 WL 2384169, at *1 (S.D.N.Y. July 1, 2022) (similar); *In re Application of Victoria, LLC.*, No. 18-MC-21202, 2019 WL 8810208, at *2 (S.D. Fla. Jan. 11, 2019), *aff'd sub nom.*, 791 F. App'x 810 (11th Cir. 2019) (discovery for use by creditor in foreign bankruptcy).

### D. The Proposed Respondents Are "Found" in This District

Each proposed Respondent is also "found" in this District. Section 1782's "resides or is found" requirement is coterminous with "the limits of personal jurisdiction consistent with due process." *Absolute Activist Value Master Fund Ltd. v. Devine*, No. 21-13587, 2025 WL 764608, at *8 (11th Cir. Mar. 11, 2025) (citing *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019)). Accordingly, a respondent is "found" in this District if the Court could constitutionally exercise general jurisdiction, specific jurisdiction, or "tag jurisdiction" based on service of process. *Id.* (citing *In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002)); *see also In re Kurbatova*, No. 18-MC-81554, 2019 WL 2180704, at *2 (S.D. Fla. May 20, 2019) (§ 1782 respondent was "found" in the district where it could be served under "tag" jurisdiction).

There is general jurisdiction over each respondent. General jurisdiction is appropriate where the respondent's "affiliations . . . are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (cleaned up).

Florida courts have general jurisdiction over Florida residents. *Angarita v. Hypertoyz, Inc.*, No. 23-CV-20695, 2023 WL 8593312, at *9 (S.D. Fla. Dec. 6, 2023). And Florida courts may exercise general jurisdiction over corporations that are incorporated or have a principal place of business in Florida. *Storms v. Haugland Energy Grp., LLC*, No. 18-CV-80334, 2018 WL 4347603, at *5 (S.D. Fla. Aug. 17, 2018) (citing *Daimler*, 571 U.S. at 137). Here, the Court has general jurisdiction over the six Individual Respondents because each maintains a home address in this District. Ellis Decl. ¶24. Indeed, five of the Individual Respondents list *only* Florida addresses on AlterBank's register. *Id.*

AlterBank is also subject to general jurisdiction in this District because its effective principal place of business is Florida. According to the Trustee's investigation, most of AlterBank's directors live in this District, this District has the highest number of AlterBank employees, and AlterBank does business in this District through its officers, employees, and directors. *See* pp. 8-9, *supra*; Ellis Decl. ¶¶24-27. AlterBank's St. Lucia address, on the other hand, is largely unoccupied and houses only a receptionist, a marketing professional, and a manager. Ellis Decl. ¶27. There is no reason to think that AlterBank negotiates, executes, or conducts diligence on $290 million secured loans from that office. *Id.* ¶¶24-27. AlterBank also cannot, under St. Lucian law, have customers who are residents of St. Lucia. *See* p. 10, *supra*. Those facts warrant exercising general jurisdiction over AlterBank because they strongly support that AlterBank's principal place of business is in this District. *Golant v. German Shepherd Dog Club of Am., Inc.*, 26 So. 3d 60, 63 (Fla. Dist. Ct. App. 2010) (company was subject to jurisdiction in Florida where it "maintains no physical office and [company] business is conducted largely, if not exclusively, from the homes of its Board members" in Florida).

In addition, all of the proposed Respondents are "found" in the District because they are subject to specific jurisdiction here. Specific jurisdiction exists when the claims "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). The Trustee's potential claims concerning the AlterBank loan—and Respondents' possession of relevant evidence in this District—arise out of Respondents conducting AlterBank's business in this District. *See Absolute Activist*, 2025 WL 764608, at *8 (citing *Valle Ruiz* 939 F.3d at 530). Each Individual Respondent conducts AlterBank's affairs within this District, listing only Florida addresses within this District in AlterBank's register and on LinkedIn. *See* pp. 9-10, *supra*.

## II. The Court Should Exercise Its Discretion To Grant The Application

The *Intel* factors also support granting the application. 542 U.S. at 264-65. Without the Court's assistance, the Trustee will not have a meaningful way to seek discovery from AlterBank or its directors and officers. Mexican courts are routinely receptive to § 1782 discovery. The proposed subpoenas in no way circumvent proof-gathering restrictions in either the Mexican or United States courts. And the subpoenas are relevant and proportional to the Trustee's claims in the *concurso*.

### A. The Respondents Are Not Parties to the Foreign Proceeding

The first *Intel* factor is whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. Because "[a] foreign tribunal . . . can itself order [parties] to produce evidence," "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.* at 264. When the material is in the hands of a non-party, "their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*

None of the proposed subpoena respondents have appeared in the *concurso* proceeding, which is still in the examination phase. Castillo Decl. ¶¶ 27, 40. Even if AlterBank appears as a creditor in the *concurso* once it is declared, the Individual Respondents are not creditors of TV Azteca and will therefore not appear.

Discovery sought from AlterBank and its directors and officers is also beyond the Mexican courts' jurisdictional reach. Castillo Decl. ¶ 20. The Individual Respondents reside in Florida and are generally U.S. citizens, with no apparent connections to Mexico. Ellis Decl. ¶¶ 24-26.[8] AlterBank operates through its directors and employees in Florida without any apparent offices or employees in Mexico. *See* pp. 9-10, *supra*.[9] The *Intel* factors favor the applicant where respondents are based outside the jurisdiction of the foreign tribunal. *Matter of Colombo Agroindustria S.A.*, No. 22-MC-21670, 2022 WL 2167719, at *2 (S.D. Fla. June 16, 2022); *Victoria*, 2019 WL 8810208, at *9.

Even if AlterBank appears as a creditor, the *concurso* does not provide the Trustee a meaningful opportunity to obtain third-party discovery from AlterBank, or its directors or employees. Castillo Decl. ¶¶ 17-20, 40.[10] This discovery is critical to the Trustee's claims in the

---

[8] The citizenship of two Respondents is unknown.

[9] As of December 30, 2024, Augusto César Castillo Chávez, a Venezuelan citizen with an address in Mexico, is the listed owner of AlterBank and a director. Ex. 14 at PDF 3, 10. There is no information indicating that Mr. Castillo Chávez is engaged in AlterBank's day-to-day operations, and he has no apparent experience owning or managing a financial institution. *See* pp. 6-7, *supra*.

[10] As the Castillo Declaration explains, creditors in a *concurso* may request narrowly tailored discovery from the *debtor* but are generally unable to obtain or compel discovery from other creditors. Castillo Decl. ¶¶ 17-20. Courts in this District routinely grant § 1782 applications for non-debtor discovery absent specific restrictions by the foreign court, even when the foreign proceedings provide limited opportunities to request information. *See Victoria*, 2019 WL 8810208, at *8-9 (limited discovery could be requested through receiver); *MTS Bank*, No. 17-MC-21545, 2017 WL 3155362, at *7-8 (S.D. Fla. July 25, 2017) (same); *see also* Castillo Decl. ¶ 15 (information obtained through § 1782 is admissible in *concurso*).

*concurso*, especially given TV Azteca's repeated defiance of its obligations to provide relevant information. TV Azteca refused the Trustee's requests for information required by the Indenture as well as any information relating to the *concurso*. Ellis Decl. ¶¶ 14-15. Those refusals effectively concealed the AlterBank loan until the Trustee independently obtained the *concurso* filings. *See* pp. 4-5, *supra*. Moreover, TV Azteca will not have materials solely in the possession of AlterBank, its directors and officers, or its affiliates. Essential information regarding the Trustee's potential fraudulent transfer claims thus "may be unobtainable" without third-party discovery. *Intel*, 542 U.S. at 264.

Courts regularly find that the first *Intel* factor favors U.S. discovery to support claims in foreign bankruptcy proceedings, including Mexico.[11] This Court should reach the same result.

**B. The *Concurso* Court Is Receptive to Evidence Obtained Under § 1782**

Under the next *Intel* factor, courts weigh "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the [tribunal] to U.S. federal-court judicial assistance." 542 U.S. at 264. This inquiry is limited: A court "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). A "suspicion that the evidence gathered would ultimately be rejected is not enough to overcome the presumption that district courts allow for discovery to proceed under section 1782 to promote the statute's goals of efficiency and comity." *MTS Bank*, 2018 WL 3145806, at *7; *see also In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1304 n.3 (S.D. Fla. July 13, 2012).

---

[11] *See, e.g.*, *Victoria, LLC v. Likhtenfeld*, 791 F. App'x 810, 817 (11th Cir. 2019); *In re Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. De C.V.*, No. 25-MC-0435, 2026 WL 770360, at *5 (S.D.N.Y. Feb. 9, 2026), *report and recommendation adopted sub nom. In re Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. de C.V.*, No. 25-MC-435 (JPO), 2026 WL 768850 (S.D.N.Y. Mar. 18, 2026).

This factor weighs heavily towards granting the application. The *concurso* court will accept evidence lawfully obtained under the § 1782 process. Castillo Decl. ¶¶ 15-16. The First Bankruptcy Court in Mexico City has issued no specific directions or "authoritative proof" that it would reject § 1782 evidence. *See MTS Bank*, 2018 WL 3145806, at *7. On the contrary, Mexican courts must consider relevant evidence obtained through foreign discovery proceedings and have repeatedly considered evidence obtained under § 1782. *See* Castillo Decl. ¶¶ 15-16; *see also Bush v. Cardtronics, Inc.,* No. 20-H-2642, 2020 WL 6261694, at *4 (S.D. Tex. Oct. 23, 2020); *In re Application of Grupo Qumma,* No. 8-MC-85, 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005).

In fact, the *concurso* court will expect that the Trustee gathers this information promptly for use in that proceeding. Castillo Decl. ¶¶ 38-40. The timing of *concurso* proceedings makes early third-party discovery essential. Castillo Decl. ¶¶ 12, 38. The Trustee is unable to appear in the *concurso* until the conciliation stage, which may begin at any moment. Castillo Decl. ¶¶ 10, 29. Once that stage begins, it is generally limited by statute to just 185 days, with a short period of only three to five days to bring the Trustee's contemplated claims once the Trustee appears. Castillo Decl. ¶¶ 12, 21.[12]

### C. The Application Does Not Circumvent Discovery Limitations

The third *Intel* factor is whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. "Proof-gathering restrictions" are "'rules akin to privileges that ***prohibit*** the acquisition or use of certain materials.'" *In re Bernal*, No. 18-MC-21951, 2018 WL 6620085, at *7 (S.D. Fla. Dec. 18, 2018) (quoting *Mees*, 793 F.3d at 303 n.20). By contrast, legal rules that

---

[12] The Trustee expects to request an extension of time to provide foreign discovery it may obtain through this proceeding. Whether to grant this request is in the discretion of the bankruptcy court. Castillo Decl. ¶ 12.

merely "***fail to facilitate*** investigation of claims" are not considered "proof-gathering restrictions" that raise circumvention concerns under this factor. *Id.*; *see also MTS Bank*, 2018 WL 3145806, at *7 ("This is not the same as a foreign discoverability requirement; the fact that a § 1782 application requests documents that would not be discoverable by the foreign court if those documents were located in the foreign jurisdiction is not enough to render the application a 'circumvention' of foreign rules." (quotation marks omitted)).

The Trustee's application does not circumvent proof-gathering restrictions in the *concurso*. Mexican law does not prohibit gathering discovery from third parties in the United States. Castillo Decl. ¶ 16. Rather, Mexico's Code of Commerce establishes the general rule that all lawfully obtained evidence that may help establish the truth is admissible, and Mexican legal precedent establishes that evidence lawfully obtained abroad has evidentiary value in Mexico. *Id*. The discovery the Trustee seeks would help establish the truth of whether AlterBank's purported secured loan to TV Azteca is a fraudulent transfer or otherwise unlawful. And Mexican courts would consider U.S. evidence lawfully obtained if, as here, the Trustee's § 1782 application complies with U.S. discovery rules. *Id.*; pp. 18-19, *supra*.

Nor is there any conflict with United States proof-gathering restrictions. Whether similar discovery is or could become available in domestic litigation is irrelevant. *Intel* rejected the requirement "that a § 1782(a) applicant must show that United States law would allow discovery in domestic litigation analogous to the foreign proceeding." 542 U.S. at 263. And while the Trustee has pending litigation against TV Azteca in the Southern District of New York, that litigation does not affect whether the Trustee can also seek § 1782 discovery for use in Mexico. That case, which involves breaches of the Indenture by TV Azteca and its subsidiaries, raises different claims than those the Trustee seeks to raise in the *concurso*, and the Respondents here

are not parties to that litigation. Ellis Decl. ¶ 12; Ex. 10 (Complaint). And the protective order in the New York action does not currently permit the Trustee to use material it may obtain in that case for use in the *concurso*. Ellis Decl. ¶ 12; *see also* Ex. 11 ¶ 15 (Protective Order) (restricting use of discovery materials, including materials produced by third parties, in any other proceedings).

In addition, the fact that § 1782 discovery ***could*** be later relevant to U.S. proceedings does not weigh against granting that discovery unless the § 1782 application is a "sham" to circumvent the normal discovery procedures in the Federal Rules. *Glock*, 797 F.3d at 1009.[13] That is hardly the case here. TV Azteca has already filed for *concurso* protection, and the Trustee seeks to use this discovery to protect creditors' rights once the *concurso* is declared. Potential future litigation in the United States is not a reason to prevent the Trustee from obtaining discovery for use in the Mexican proceedings.

**D. The Requested Discovery Is Not Unduly Burdensome**

The fourth *Intel* factor is whether the requested discovery is "unduly intrusive or burdensome." 542 U.S. at 265. Courts analyze this factor by applying the federal discovery rules. *Consorcio Ecuatoriano*, 747 F.3d at 1272. Rule 26 permits discovery that is relevant and proportional to the needs of the case, considering the importance of the issues, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the discovery's importance, and its relative burdens and benefits. Fed. R. Civ. P. 26(b)(1).

---

[13] The Trustee continues to investigate the misconduct revealed in TV Azteca's *concurso* petition and reserves its right to seek any appropriate relief. TV Azteca has also stated that it may file Chapter 15 bankruptcy proceedings in the United States in connection with the *concurso*, which may implicate the AlterBank loan. *See* 11 U.S.C. § 1515; Letter at 2 n.2, *The Bank of New York Mellon v. TV Azteca, S.A.B. de C.V.*, 22-cv-8164, Dkt. 242 (S.D.N.Y. Mar. 18, 2026). *Glock* makes clear that the potential use of the discovery in related litigation is not a basis to deny an otherwise lawful § 1782 application . *See Glock*, 797 F.3d at 1006-07; *see also Intel*, 542 U.S. at 263.

This factor, too, supports granting the application. The proposed subpoenas seek targeted information about AlterBank's $290 million loan to TV Azteca executed just weeks before TV Azteca filed for insolvency protection. The discovery is also proportional to the needs of the *concurso*. The amount in controversy is substantial: TV Azteca owes more than $630 million on the Notes, and AlterBank's loan agreement is for up to $290 million. *See* pp. 5-6, *supra*. The issues are also important: Whether AlterBank's loan is a fraudulent transfer or otherwise subject to subordination will directly affect the Trustee's recoveries in the *concurso*. Castillo Decl. ¶ 37. And the requested discovery into the AlterBank loan is essential to the Trustee's claims. *Id.* ¶¶ 24-25, 33, 38-40.

By comparison, any burdens are modest. The Respondents were carefully selected after an initial investigation into AlterBank. Ellis Decl. ¶¶ 18, 23-27; *see also* pp. 5-10, *supra*. Those Respondents are likely to have information concerning AlterBank's lending practices, its ability to make a loan of this size, its need for third-party funding, and documents relating to AlterBank's due diligence.

The Trustee's request is also appropriately tailored to the needs of the case. The Trustee seeks a discrete set of materials relating to AlterBank's financial position, its relationship to TV Azteca and its affiliates, and a recent substantial loan. Discovery requests like these are squarely within the discovery the Federal Rules permit and are standard fare for § 1782 proceedings. *See Travessia*, 2024 WL 4201982, at *5 (authorizing documentary evidence and depositions relating to financial position, funding, and transfers); *MTS Bank*, 2017 WL 3276879, at *4 (authorizing documentary and testimony evidence to support foreign bankruptcy proceedings); *Clerici*, 481 F.3d at 1336 (§ 1782 and the Federal Rules authorize depositions and document requests); *Weber v. Finker*, 554 F.3d 1379, 1384-85 (11th Cir.2009) (similar).

### III. The Court Should Grant the Application *Ex Parte*

It is the "practice in this District" to grant § 1782 applications *ex parte*. *In re Travessia Securitizadora de Creditos Financeiros VIII S.A.*, 707 F. Supp. 3d 1366, 1370 (S.D. Fla. 2023); *see also In re Braga*, 272 F.R.D. 621, 625 (S.D. Fla. 2011); *Colombo Agroindústria*, 2022 WL 2167719, at *1 ("It is both common and proper for section 1782 applicants to apply for discovery assistance on an *ex parte* basis."). Indeed, "most § 1782 applications (at least in this district) are filed and decided *ex parte*." *Braga*, 272 F.R.D. at 625. *Ex parte* consideration is proper because "the respondent . . . may later move under Federal Rule of Civil Procedure 45(c)(3) to quash any such discovery request." *In re Application of Salem*, No. 24-mc-5, 2024 WL 3026670, at *9 (S.D.N.Y. June 17, 2024); *see also In re Sociedad Militar Seguro de Vida*, 985 F. Supp. 2d 1375, 1381 (N.D. Ga. 2013).

*Ex parte* treatment is particularly appropriate here because TV Azteca may take further action to frustrate collection on the Notes or conceal its conduct. TV Azteca has refused to pay for over five years while prioritizing other creditors and refusing to provide information it is required to provide under the Indenture. *See* pp. 1-2, *supra*. TV Azteca also incurred senior, secured debt, subordinating the Notes on the eve of filing its *concurso* petition despite Indenture provisions restricting those exact actions. *See* pp. 5-6, *supra*. TV Azteca "has the financial sophistication" to further frustrate or delay judgment on the Notes. *See, e.g.*, *In re Ernesto Andrade Grp.*, 712 F. Supp. 3d 438, 440 (S.D.N.Y. 2024) (permitting *ex parte* application where defendant had taken "significant steps in order to organize their insolvency and evade his obligation to pay debts owed to [the applicant]"); *In re Letter of Request from Gov't of France*, 139 F.R.D. 588, 592 (S.D.N.Y. 1991) (denying access request because disclosure "would create grave risk that evidence would be concealed or destroyed"). The Court should grant the application *ex parte.*

## CONCLUSION

The Court should grant the Trustee's application and authorize the Trustee to serve its proposed subpoenas in substantially the form attached. A proposed order is attached.

Dated: June 2, 2026

Respectfully submitted,

*s/ Daniel S. Fridman*

Daniel S. Fridman, Esq.
Fla. Bar No. 176478
FRIDMAN FELS & SOTO, PLLC
150 Alhambra Circle
Suite 715
Coral Gables, Florida 33134
Tel.: (305) 569-7720
daniel.fridman@ffslawfirm.com

Justin M. Ellis (*pro hac vice* forthcoming)
Zachary R. Ingber (*pro hac vice* forthcoming)
Eric J. Rolston (*pro hac vice* forthcoming)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Tel.: (212) 607-8159
jellis@mololamken.com

*Counsel for The Bank of New York Mellon, as Trustee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-23885-MC-MARTINEZ**

IN RE: THE BANK OF NEW YORK MELLON, SOLELY IN ITS CAPACITY AS TRUSTEE FOR THE TV AZTECA, S.A.B. DE C.V. 8.25% SENIOR NOTES DUE 2024.
_______________________________________/

## ORDER

**THIS CAUSE** came before the Court on the Bank of New York Mellon's *ex parte* Application for Order Pursuant to 28 U.S.C. § 1782(a) (the "Application"), [ECF No. 1]. In the Application, the Bank of New York Mellon, as trustee for senior notes issued by the Mexican media company TV Azteca, currently in "Concurso Mercantile" insolvency proceedings in Mexico, seeks discovery for use in connection with the judicial proceeding in the Mexican Court. Specifically, Bank of New York Mellon seeks to serve subpoenas on Respondents AlterBank and six of its Officers and Directors so the Bank of New York Mellon can pursue fraudulent transfer claims in the Concurso Mercantile proceedings. (*See* App. 6). As the Bank of New York Mellon represents, AlterBank and six of its current Officers and Directors may be found within the jurisdiction of this Court. (*See id.* 14). The Court has reviewed the Application, pertinent portions of the record, and applicable law and is otherwise fully advised.

Accordingly, it is **ORDERED AND ADJUDGED** that pursuant to 28 U.S.C. § 1782(a), the Bank of New York Mellon, as Trustee for the TV Azteca, S.A.B. DE C.V. 8.25% Senior Notes Due 2024, shall serve a copy of this Order, the Application [ECF No. 1], and the subpoenas attached thereto [ECF No. 1-2], on the Respondents at their last known addresses, or any location where the Respondents may be found, within the Southern District of Florida.

**DONE AND ORDERED** in Miami, Florida, this 3 day of June 2026.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record

# Exhibit 5 to the Ellis Declaration

ALTERBANK

# Management accounts
# For the year to date to
# March 31, 2024

April 12, 2024

# Table of contents


| | Page |
|---|---|
| 1. Overview | 3 |
| 2. Balance sheet | 4 |
| 3. Statement of Comprehensive Income | 5 |
| 4. Statement of Changes in Equity | 5 |
| 5. Statement of Cash Flows | 6 |
| 6. Notes to the Balance Sheet | 7 |
| 7. Variance explanations | |
| a. Balance Sheet budget variances | 11 |
| b. Balance Sheet note variances | 12 |
| c. Statement of Income budget variances | 13 |
| d. Operational expense budget variances | 14 |

**Overview**

The Board, Management and staff remain optimistic about the Bank´s prospects in 2024, undaunted by the challenges of the prior year. Since the handover date, the Bank has been involved in preparing for trading and consequently, the statement of comprehensive income will report losses for the medium term. The Bank recorded a loss for the year to date to March 31 of $0.24 million. This result is better than the budget by 4% or $9k, mainly due to expenses not yet incurred because trading has not started.

Worthy of note is that the Balance Sheet value increased from $0.87 million at the end of **December 2022** to **$2.3 million** as of March 31, 2024, representing an increase of 167% or $1.45 million, made possible by capital injections by the shareholder, totaling $2.2 million at the reporting date. That notwithstanding, the total equity of the Bank stood **at $2.06 million** as of March 31, 2024. Although the contributed capital is $11.8 million, the accumulated losses has eroded capital to below the FSRA requirement for new capital and this will need to be monitored closely to improve total equity.

The Statement of Cash Flows indicates that the Bank has sufficient funds to operate for the short term but we will remain mindful of the need to maintain cash levels to meet customer obligations should they require. These KPI´s will be monitored regularly and reported to management and the Board.

The Bank´s capital adequacy ratio required is 8.5% and the Bank is well above this threshold as its total qualifying capital outweighs its risk weighted assets. Management pledges to monitor this KPI closely.

The Balance Sheet budget compares unfavourably with the actual performance for the year to date, due to the fact that the Bank has not commenced trading for the period covered in this report. Client bookings were expected from February 1, 2024 but is set to grow at a phenomenal rate for 2024. Management is reviewing the budget to ensure that the values are attainable and realistic. However, based on the enthusiasm of the Sales Team, we have every confidence that the budget will be achieved in large measure.

We are excited about the opportunities for the business and it is well on the way to making an indelible mark on the financial landscape.

**Balance Sheet**

| **Balance Sheet as of March 31, 2024** | **Note** | **Actual** $ | **Budget** $ | **2023** $ |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash and statutory deposits | 1 | 1,398,756 | 2,766,734 | 817,434 |
| Treasury bills | 2 | 99,956 | 2,600,000 | 98,655 |
| Investments | 3 | - | 3,700,000 | 406,579 |
| Loans and advances to customers | 4 | 26,040 | 5,200,000 | 26,040 |
| Other assets | 5 | 306,657 | 302,676 | 280,746 |
| Property and equipment | 6 | 4,472 | - | 4,166 |
| Right-of-use assets | 7 | 53,131 | - | 61,520 |
| Work in progress | 8 | 437,780 | 553,457 | 308,290 |
| **Total assets** | | **2,326,792** | **15,122,867** | **2,003,430** |
| **Liabilities** | | | | |
| DDA accounts | | - | 11,000,000 | - |
| Certificate of deposits | | - | 2,000,000 | - |
| Trade and other payables | 9 | 218,279 | 96,932 | 100,259 |
| Lease liabilities | 10 | 53,618 | - | 61,745 |
| **Total liabilities** | | **271,897** | **13,096,932** | **162,004** |
| **Equity** | | | | |
| Share capital | 11 | 133,077 | 133,077 | 133,077 |
| Contributed capital | 12 | 11,788,857 | 11,788,857 | 11,338,857 |
| Accumulated deficit | 13 | (9,867,039) | (9,895,999) | (9,630,508) |
| **Total equity** | | **2,054,895** | **2,025,935** | **1,841,426** |
| **Total liabilities and equity** | | **2,326,792** | **15,122,867** | **2,003,430** |

**Statement of Comprehensive Income**

| Alter Bank Ltd. Income Statement for the year to date ending March 31, 2024 | | Actual | Budget 2024 | Actual |
|---|---|---|---|---|
| | | Mar´24 | | 2023 |
| | | $ | | $ |
| Interest income | | 5,204 | 116,193 | 6,266 |
| Non interest income | | 1,579 | 56,300 | 560 |
| | | 6,783 | 172,493 | 6,826 |
| Expenses | | | | |
| Interest expense | | - | 10,000 | - |
| Net interest income | | 6,783 | 162,493 | 6,826 |
| Operating expenses | | (243,314) | (407,344) | (708,208) |
| Net income /(loss) before tax | | (236,531) | (244,851) | (701,382) |
| Income tax expense | | - | - | - |
| Total comprehensive loss for the year to date | | (236,531) | (244,851) | (701,382) |

**Statement of Changes in Equity**

| Statement of changes in equity for the year to date ended March 31, 2024 | Share Capital $ | Contributed Capital $ | Accumulated Deficit $ | Total $ |
|---|---|---|---|---|
| **Balance of January 1, 2023** | 133,077 | 9,588,857 | (8,929,126) | 792,808 |
| Capital contributed during the year | - | 1,750,000 | - | 1,750,000 |
| Revaluation reserve | - | - | - | - |
| Comprehensive loss for the year | - | - | (701,382) | (701,382) |
| **Balance as of December 31, 2023** | 133,077 | 11,338,857 | (9,630,508) | 1,841,426 |
| Balance as of January 1, 2024 | 133,077 | 11,338,857 | (9,630,508) | 1,841,426 |
| Capital contributed during the year | - | 450,000 | - | 450,000 |
| Comprehensive loss for the year | - | - | (236,531) | (236,531) |
| **Balance of March 31, 2024** | **133,077** | **11,788,857** | **(9,867,039)** | **2,054,895** |

## Statement of Cash Flows

| **Statement of Cash Flows** | **YTD to March 31, 2024** | **Year ended December 31, 2023** |
|---|---|---|
| **Cash flows from operating activities** | | |
| Loss before taxation | (236,531) | (697,398) |
| Adjustments for: | | |
| Gain on disposal of investments | (85) | |
| Depreciation- right of use | 8,389 | 24,618 |
| Depreciation | 241 | 393 |
| Finance cost | 624 | 784 |
| **Operating loss before working capital chang** | **(227,362)** | **(671,602)** |
| Decrease in loans and advances to customers | - | 4,988 |
| (Increase)/decrease in other assets | (32,689) | (7,411) |
| Decrease in due from related parties | - | 224,000 |
| Decrease/increase due to related parties | - | (5,000) |
| Increase in other liabilities | 118,019 | 25,910 |
| **Net cash generated from operating activities** | **(142,032)** | **(429,115)** |
| Finance costs | | -784 |
| **Net cash (used in)/generated from operating activities** | **(142,032)** | **(429,899)** |
| **Cash flows from investing activities** | | |
| Purchase of investments | - | (505,234) |
| Sale of investments | 412,142 | |
| Purchase of property and equipment | (547) | (4,559) |
| Purchase of intangible assets | (129,490) | (308,290) |
| Net cash generated from investing activities | **282,105** | **(818,083)** |
| **Cash flows from financing activities** | | |
| **Principal portion of lease liabilities** | (8,751) | (24,394) |
| Proceeds from capital contributions | 450,000 | 1,750,000 |
| **Net cash generated from financing activities** | **441,249** | 1,725,606 |
| **Net increase in cash** | **581,322** | **477,624** |
| **Cash - beginning of the year** | **817,434** | 339,810 |
| **Cash - end of the year to date** | **1,398,756** | **817,434** |

**Notes to the Balance Sheet**

1. Cash and statutory deposits comprise the following:

| Description | Mar'24 | Budget (March 2024) | Variance | |
|---|---|---|---|---|
| **Cash and statutory deposits** | $ | $ | $ | % |
| | - | - | - | -100% |
| Cash and cash equivalents | 1,284,906 | 2,651,479 | (1,366,573) | -52% |
| Restricted cash - certificate of deposit | 113,850 | 115,255 | (1,405) | -1% |
| **Total** | **1,398,756** | **2,766,734** | **(1,367,978)** | **-49%** |

Cash and cash equivalents increased over the prior year due mainly to the increase in contributed capital of $0.45 million.

The amount for restricted cash is a certificate of deposit (CD) held with Bank of St. Lucia Ltd to meet the statutory requirement of the International Banks Act. The deposit is restricted and not available for the Bank's operations. The CD bears an interest rate of 1.25% (December 2023 – 1.25%).

2. The treasury bill has a tenor of six months and matures on April 4, 2024. It was purchased for $97,510.00.

3. Investment grade securities purchased via Stonex with a fair value of $406,579 were sold at the end on February 29, 2024 due to the fact that Stonex was conducting further due diligence on the Bank.

| Description | Mar'24 | Budget (March 2024) | Variance | |
|---|---|---|---|---|
| **Investment securities** | $ | $ | $ | % |
| US Treasury bill | 99,956 | 2,600,000 | (2,500,044) | -96% |
| Investments at fair value | - | 3,700,000 | (3,700,000) | -100% |
| **Total** | **99,956** | **6,300,000** | **(6,200,044)** | **-98%** |

4. The value for loans and advances to customers represents a back-to-back loan for one individual. It is expected that this loan will be settled by year end. The interest rate on this loan is 6%. No provision was made on this loan as we await confirmation of the value of security held so that an expected credit loss can be calculated. Note that payments have not been made towards this loan as the Bank has not established an account to which the payments can be processed.

| Description | Mar'24 | Budget (March 2024) | Variance | |
|---|---|---|---|---|
| **Loans and advances to customers** | $ | $ | $ | % |
| Consumer loans | 25,927 | 5,200,000 | (5,174,073) | -100% |
| Interest receivable on consumer loans | 113 | 690 | (577) | -84% |
| **Total** | **26,040** | **5,200,690** | **(5,174,650)** | **-99%** |

5. The composition of other assets is listed below. Prepaid expenses increased mainly because of the payment of the bank license $19k and insurance $10k. The security deposit consists of collateral held by VISA in the amount of $266,753 (2023: $266,753) at JP Morgan Chase Bank for the benefit of Alter Bank Ltd. The VAT recoverable is under review with the Inland Revenue Department in St. Lucia.

| Description | Mar'24 | Budget (March 2024) | Variance | |
|---|---|---|---|---|
| **Other assets** | $ | $ | $ | % |
| Prepaid expenses | 33,842 | 16,845 | 16,997 | 101% |
| Security deposits | 267,125 | 270,431 | (3,306) | -1% |
| Interest receivable on treasury bill | 2,450 | | 2,450 | -100% |
| Interest receivable on debt | - | | - | -100% |
| Accrued interest receivable | 352 | | 352 | -100% |
| Other receivables | 126 | | 126 | -100% |
| VAT recoverable | 2,762 | 5,627 | (2,865) | -51% |
| **Total** | **306,657** | **292,903** | **13,754** | **5%** |

6. As of March 31, 2024, additions to property and equipment included four waiting chairs and a printer amounting to a total of $547.00.

| **Property and equipment** | **Furniture $** | **Computer $** | **Total $** |
|---|---|---|---|
| **Year ended December 31, 2023** | | | |
| Opening net book amount | - | - | - |
| Additions | 1,364 | 3,195 | 4,559 |
| Depreciation charge | (45) | (348) | (393) |
| Closing net book amount | 1,319 | 2,847 | 4,166 |
| **At December 31, 2023** | | | |
| Cost | 1,364 | 3,195 | 4,559 |
| Accumulated depreciation | (45) | (348) | (393) |
| Net book amount | 1,319 | 2,847 | 4,166 |
| **Year to date ended March 31, 2024** | **Furniture $** | **Computer $** | **Total $** |
| Opening net book amount | 1,319 | 2,847 | 4,166 |
| Additions | 329 | 218 | 547 |
| Depreciation charge | (80) | (161) | (241) |
| Closing net book amount | 1,568 | 2,904 | 4,472 |
| **At January 31, 2024** | | | |
| Cost | 1,693 | 3,413 | 5,106 |
| Accumulated depreciation | (125) | (509) | (634) |
| Net book amount at March 31, 2024 | 1,568 | 2,904 | 4,472 |

7. Instead of lease payments for rent, IFRS 16 requires that the Bank recognize a right-of-use-asset at the present value of future lease payments. The value is depreciated on a straight line basis.

8. Work in progress relates to work done on the core software information system and comprises the following:

| **Service Provider** | **$** |
|---|---|
| Cobis for information system | 217,000 |
| Accusys for implementation | 108,340 |
| i2c Inc | 81,500 |
| Telefonica Global Solutions USA, Inc. For | 30,940 |
| **Total** | **437,780** |

9. Trade and other payables consist of amounts due to service providers chief of which includes COBIS for $109k, i2c for $13.5k, Mc Namara ($9k), Tech Innovations ($9k), BDO AML ($3k), CEO interim payments payable ($20k).

| Trade and other payables | Mar'24 | Budget (March 2024) | Variance | |
|---|---|---|---|---|
| | $ | $ | $ | % |
| Accrued expenses | 218,279 | 96,932 | 121,347 | -56% |
| **Total** | **218,279** | **96,932** | **121,347** | **125%** |

10. Lease liabilities relate to space leasing and are recognized at the present value of future lease payments and recognizes interest on lease liabilities.

11. The share capital balance remained the same compared to December 31, 2023.

12. Contributed capital increased due to a capital injection of $0.45 million over the prior year.

13. The Bank has an accumulated deficit of $9.9 million inclusive of current year to date losses of $0.23 million because it is incurring expenses during the implementation stage in preparation to commence operations in April 2024.

## Balance Sheet variances to budget

| Balance Sheet as of March 31, 2024 | Actual | Budget | Variance | | Explanation for variances more than 10% and more than $1,000.00 |
|---|---|---|---|---|---|
| | Mar'24 | | | | |
| | $ | $ | $ | % | |
| **Assets** | | | | | |
| Cash and statutory deposits | 1,398,756 | 2,766,734 | (1,367,978) | -49% | The main reason for the variance is that clients have not been onboarded as budgeted. |
| Treasury bills | 99,956 | 2,600,000 | (2,500,044) | -96% | |
| Investments | - | 3,700,000 | (3,700,000) | -100% | |
| Loans and advances to customers | 26,040 | 5,200,000 | (5,173,960) | -99% | |
| Other assets | 306,657 | 302,676 | 3,981 | 1% | |
| Property and equipment | 4,472 | - | 4,472 | -100% | |
| Right-of-use assets | 53,131 | - | 53,131 | -100% | The amount for right of use assets was not budgeted as the assumption was that it would be treated in the same manner as the 2022 financials. IFRS 16 requires separate reporting of leases that are greater than %5k and not short term. |
| Work in progress | 437,780 | 553,457 | (115,677) | -21% | It was anticipated that the software implementations would have been completed and amortization would commence in January 2024. |
| **Total assets** | **2,326,792** | **15,122,867** | **(12,796,075)** | **-85%** | |
| **Liabilities** | | | | | |
| DDA accounts | - | 11,000,000 | (11,000,000) | -100% | The main reason for the variance is that clients have not been onboarded as budgeted. |
| Certificate of deposits | - | 2,000,000 | (2,000,000) | -100% | |
| Trade and other payables | 218,279 | 96,932 | 121,347 | 125% | The variance is largely due to an amount due to COBIS for $109k to be settled shortly. |
| Lease liabilities | 53,618 | - | 53,618 | -100% | Please see comment under right-of-use assets above. |
| **Total liabilities** | **271,897** | **13,096,932** | **(12,825,035)** | **-98%** | |
| **Equity** | | | | | |
| **Share capital** | 133,077 | 133,077 | - | 0% | |
| **Contributed capital** | 11,788,857 | 11,788,857 | - | 0% | |
| **Accumulated deficit** | (9,867,039) | (9,895,999) | 28,960 | 0% | |
| **Total equity** | **2,054,895** | **2,025,935** | **28,960** | **1%** | |
| **Total liabilities and equity** | **2,326,792** | **15,122,867** | **(12,796,075)** | **-85%** | |

## Balance Sheet note budget variances

| Description | Mar'24 | Budget (March 2024) | Variance | | Explanation for variances more than 10% and more than $1,000.00 |
|---|---|---|---|---|---|
| **Cash and statutory deposits** | $ | $ | $ | % | |
| Cash and cash equivalents | 1,284,906 | 2,651,479 | (1,366,573) | -52% | Clients have not been onboarded as budgeted. |
| Restricted cash - certificate of deposit | 113,850 | 115,255 | (1,405) | -1% | |
| Total | **1,398,756** | **2,766,734** | **(1,367,978)** | **-49%** | |
| **Investment securities** | $ | $ | $ | % | |
| US Treasury bill | 99,956 | 2,600,000 | (2,500,044) | -96% | Clients have not been onboarded as budgeted. |
| Investments at fair value | - | 3,700,000 | (3,700,000) | -100% | |
| **Total** | **99,956** | **6,300,000** | **(6,200,044)** | -98% | |
| **Loans and advances to customers** | $ | $ | $ | % | |
| Consumer loans | 25,927 | 5,200,000 | (5,174,073) | -100% | Clients have not been onboarded as budgeted. |
| Interest receivable on consumer loans | 113 | 690 | (577) | -84% | |
| Total | **26,040** | **5,200,690** | **(5,174,650)** | -99% | |
| **Other assets** | $ | $ | $ | % | |
| Prepaid expenses | 33,842 | 16,845 | 16,997 | 101% | The amount for March includes a prepayment for the Bank´s licence $19k, insurance $10k and rent, the portion for rent and insurance being lower than the pre-paid budget. |
| Security deposits | 267,125 | 270,431 | (3,306) | -1% | |
| Interest receivable on treasury bill | 2,450 | | 2,450 | -100% | An amount was not budgeted. |
| Interest receivable on debt | - | | - | -100% | |
| Accrued interest receivable | 352 | | 352 | -100% | |
| Other receivables | 126 | | 126 | -100% | |
| VAT recoverable | 2,762 | 5,627 | (2,865) | -51% | The bugeted amount includes $3,491 now written off at the 2023 year end. |
| Total | **306,657** | **292,903** | **13,754** | **5%** | |

**Statement of comprehensive income budget variances**

| Income Statement for the year to date ending March 31, 2024 | Actual | Budget | Variance | | Explanation for variances more than 10% and more than $1,000.00 |
|---|---|---|---|---|---|
| | Mar'24 | | | | |
| | $ | $ | $ | % | |
| Interest income | 5,204 | 116,193 | (110,989) | -96% | This variance is attributed to the fact that business operations have not commenced and clients have not been booked. |
| | - | - | | | |
| Non interest income | 1,579 | 56,300 | (54,721) | -97% | |
| | 6,783 | 172,493 | (165,710) | -96% | |
| Expenses | | | | | |
| Interest expense | - | 10,000 | (10,000) | -100% | This is due to not starting business operations. |
| Net interest income | 6,783 | 162,493 | (155,710) | -96% | |
| Operating expenses | (243,314) | (407,344) | 164,030 | 67% | The variance is generally due to non commencement of operations. |
| Net income /(loss) before tax | (236,531) | (244,851) | 8,320 | 4% | |
| Income tax expense | - | - | - | -100% | |
| Total comprehensive loss for the year | (236,531) | (244,851) | 8,320 | 4% | |

## Operational expense budget variances

| Balance Sheet as of March 31, 2024 | Actual | Budget | Variance | | Explanation for variances more than 10% and more than $1,000.00 |
|---|---|---|---|---|---|
| | Mar'24 | | | | |
| | $ | $ | $ | % | |
| **Assets** | | | | | |
| Cash and statutory deposits | 1,398,756 | 2,766,734 | (1,367,978) | -49% | The main reason for the variance is that clients have not been onboarded as budgeted. |
| Treasury bills | 99,956 | 2,600,000 | (2,500,044) | -96% | |
| Investments | - | 3,700,000 | (3,700,000) | -100% | |
| Loans and advances to customers | 26,040 | 5,200,000 | (5,173,960) | -99% | |
| Other assets | 306,657 | 302,676 | 3,981 | 1% | |
| Property and equipment | 4,472 | - | 4,472 | -100% | |
| Right-of-use assets | 53,131 | - | 53,131 | -100% | The amount for right of use assets was no budgeted as the assumption was that i would be treated in the same manner a the 2022 financials. IFRS 16 requires separate reporting of leases that are greater than $5k and not short term. |
| Work in progress | 437,780 | 553,457 | (115,677) | -21% | It was anticipated that the software implementations would have been completed and amortization would commence in January 2024. |
| **Total assets** | **2,326,792** | **15,122,867** | **(12,796,075)** | **-85%** | |
| **Liabilities** | | | | | |
| DDA accounts | - | 11,000,000 | (11,000,000) | -100% | The main reason for the variance is that clients have not been onboarded as budgeted. |
| Certificate of deposits | - | 2,000,000 | (2,000,000) | -100% | |
| Trade and other payables | 218,279 | 96,932 | 121,347 | 125% | The variance is largely due to an amount due to COBIS for $109k to be settled shortly. |
| Lease liabilities | 53,618 | - | 53,618 | -100% | Please see comment under right-of-use assets above. |
| **Total liabilities** | **271,897** | **13,096,932** | **(12,825,035)** | **-98%** | |
| **Equity** | | | | | |
| **Share capital** | 133,077 | 133,077 | - | 0% | |
| **Contributed capital** | 11,788,857 | 11,788,857 | - | 0% | |
| **Accumulated deficit** | (9,867,039) | (9,895,999) | 28,960 | 0% | |
| **Total equity** | **2,054,895** | **2,025,935** | **28,960** | **1%** | |
| **Total liabilities and equity** | **2,326,792** | **15,122,867** | **(12,796,075)** | **-85%** | |

## Conclusion

The foregoing financial statements represent the activities of the Bank fairly for the year to date. Ongoing strategic planning with a customer focus will remain critical for the Bank´s to achieve its financial objectives at the end of 2024.

Prepared by

Aurea Lafeuillee

# Exhibit 6 to the Ellis Declaration


ALTERBANK

ALTERBANK



# Executive Summary

AlterBank Limited is a financial services company incorporated in St. Lucia and is licensed under the International Banks Act, Cap. 12.17, as a Class A Bank. It is regulated by the Financial Services Regulatory Authority. After years of operation, the bank was acquired in June 2023 to be relaunched with the aim of serving the financial needs of individuals, businesses, and service professionals in Latin America and the Caribbean. With a strong focus on medium and high net worth clients, our renewed mission centers around providing exceptional financialsolutions tailored to the unique challengesfaced by the region.

Our main differentiator lies in offering accounts specifically designed to help clients shield themselves from the relentless volatility and political instability that characterize many currencies and countries in Latin America and the Caribbean. With our relaunch, we are committed to redefining banking experiences, promoting financial security, and enabling the growth of our clients. Through innovative services and a customer-centric approach, we aspire to become the first choice for discerning individuals, businesses, and service professionals seeking stability, growth, and peace of mind.


Company Overview
To address the financial needs of our clients through a range of banking products and services that add value to their operations.



ALTERBANK

# Business Model

At ALTER BANK, we are focused on seizing opportunities with excellence. We constantly identify opportunities that allow us to develop and offer tailored solutions and products for our clients.

Our constant prospective analysis enable us to implement traditional banking solutions, generating a consistent return on investments while respecting prudent and secure banking practices.

We offer products to small and medium-sized enterprises that require exceptional and personalized service with fast and cost-effective payment solutions, including loans, receipt of deposits through interest-bearing checking accounts and certificates of deposits for individual and corporate clients.

ALTERBANK



ALTER BANK's competitive advantage and differentiation from its competitors is supported by the consolidation of a banking structure strongly underpinned by rules and regulations with constant surveillance over transactions, operations, and clients, as well as a technologically supported banking control system. The main objective, in addition to building a profitable business, is to develop a risk-controlled bank; capable of quickly identifying and minimizing any potential adverse impact on operations. It is sometimes assumed that differentiation from competitors is based on commercial and service considerations. However, we understand that these competitive advantages are defined by risk-based control and rigorous compliance policies.

# Products:

**Individuals:**

- VISA Debit Card
- VISA Credit Card
- Checking account with remuneration plan
- Certificates of deposit
- Personal loans with guarantees

**Businesses:**

- Checking account with remuneration plan
- Certificates of deposit
- Commercial loans with guarantees

# Compliance

ALTERBANK

At ALTER BANK, we have a robust compliance infrastructure designed to ensure conformity with applicable laws, regulations, and international standards. We also apply all necessary measures in the fight against money laundering and economic sanctions, conflicts of interest, anti-bribery and corruption, privacy and data security, supplier management, and transactions with affiliates.

The Financial Services Regulatory Authority oversees the Bank's activities and operations.

Alter Bank is constantly engaged in the fight against money-laundering, financial crimes and financing of terrorism, it also ensures its operations don't contravene economic sanctions. The bank possesses anti-money laundering systems in compliance with regulatory requirements and international standards.



ALTERBANK



# Financial Information of Interest

**Market Analysis:**

At ALTER BANK, we offer a distinctive blend of experience and transparency that combines access to a global universe of quality services and products to drive customer-centric innovation. Our target customers are international clients seeking international financial solutions. We will offer three key advantages that address the needs of the end-user: security, ease of use, and protection.

**A. Individuals:**

- Individuals with assets utilized in several of ALTER BANK's products.
- Business owners, executives.
- Middle-level professionals and executives.
- General clientele: transactional banking for individuals

**B. Businesses:**

- Companies active in the international market and multinational corporations
- Medium-sized companies with international commercial transactions
- Small companies engaging in international commercial transactions

The main countries we are developing in are:

- Florida, United States
- Colombia
- Mexico
- Dominican Republic
- Argentina
- And Europe

ALTERBANK

# Financial Information of Interest

| 5y projection | FYE 2024 | FYE 2025 | FYE 2026 | FYE 2027 | FYE 2028 |
|---|---|---|---|---|---|
| Total Assets | $40,631,535.22 | $45,140,691.98 | $49,076,134.23 | $53,138,111.51 | $57,345,801.17 |
| Loans | $10,906,051.00 | $12,586,051.00 | $14,356,051.00 | $16,480,051.00 | $18,958,051.00 |
| Investments | $23,147,058.00 | $24,827,058.00 | $26,066,058.00 | $26,951,058.00 | $28,013,058.00 |
| Total Liabilities | $38,281,040.00 | $42,481,040.00 | $46,021,040.00 | $49,561,040.00 | $53,101,040.00 |
| Total Deposits | $38,200,000.00 | $42,400,000.00 | $45,940,000.00 | $49,480,000.00 | $53,020,000.00 |
| Net Initerest Income | $1,744,905.75 | $2,203,690.75 | $2,385,636.19 | $2,583,528.92 | $2,806,549.01 |
| Net Income | $(1,984.24) | $309,156.76 | $395,422.25 | $521,977.28 | $667,689.66 |
| ROE | N/A | 11.60% | 12.90% | 14.60% | 15.70% |
| ROA | N/A | 0.68% | 0,81% | 0.98% | 1.16% |
| # Clients | 764 | 848 | 919 | 990 | 1060 |

ALTERBANK

# Demographics

| Country | Argentina | Colombia | Mexico | Dom. Rep | Europe |
|---|---|---|---|---|---|
| Total Population (MM) | 44.3 | 44.9 | 192.2 | 10.77 | 738 |
| Adult Population (MM) | 26.6 | 29.0 | 67.7 | 6.9 | 583 |
| Median Household Income p.c. | $5,915 | $3,444 | $10,116 | | |



ALTERBANK

# Market Sizing

| Country | Argentina | Colombia | Mexico | Dom. Rep | Europe |
|---|---|---|---|---|---|
| **GPD** | **637 Billion** | **382 Billion** | **2.2 Trillion** | **75.9 Billion** | **20 Trillion** |
| Economic Drivers | Food Processing Agriculture Automobile Chemical financial services Energy generation | Food Processing Agriculture Textiles Mining Oil & Gas Cement Coal Tourism financial services | Manufacturin g Agriculture Tourism Oil & Gas Tourism International Trade | Agriculture Construction Tourism Telecom Service Sectorr | Manufacturing Agriculture Tourism Construction |
| Unenployment Rate | **9.6%** | **8.8%** | **3.6%** | **5.3%** | **8.4%** |

ALTERBANK

| 5y - Projection | FYE 2024 | FYE 2025 | FYE 2026 | FYE 2027 | FYE 2028 |
|---|---|---|---|---|---|
| # Annual Transactions | 6,360 | 7,095 | 7,674 | 8,251 | 8,873 |
| Annual Transaction Volumen | 144,000,000.00 | 160,000,000.00 | 173,000,000.00 | 186,000,000.00 | 200,000,000.00 |
| Outgoing | | | | | |
| $ | 48,000,000.00 | 77,500,000.00 | 84,500,000.00 | 91,000,000.00 | 98,000,000.00 |
| # | 2,160 | 3,488 | 3,803 | 4,095 | 4,410 |
| Incoming | | | | | |
| $ | 96,000,000.00 | 82,500,000.00 | 88,500,000.00 | 95,000,000.00 | 102,000,000.00 |
| # | 4,200.00 | 3609 | 3872 | 4,156.00 | 4463 |
| US Transactions | 80% | 80% | 80% | 80% | 80% |
| International Transactions | 20% | 20% | 20% | 20% | 20% |



ALTERBANK



# Transactional Volume

**Ownership Structure:**

- Juan Francisco Ramírez - 100% Shareholder
- Directors:
  Kendell Gill
  Wilbert Bascom
  Juan Ramírez
- CEO: Alejandro Cespedes
- GM: Aurea Lafeuillee
- Compliance Officer: Myreen Cenac
- Compliance Advisor: Juan Medrano

ALTERBANK

# Highlighted information about directors, compliance, and CEO.

- **Myreen Cenac:**

Myreen Cenac is a highly skilled banking professional with a Master's in Global Planning with a focus on Anti-Money Laundering, and she is results-oriented, with almost 16 years of experience. She is also a Certified Anti-Money Laundering Specialist (ACAMS) and has extensive abilities in the development and implementation of BSA/AML compliance programs.

- **Juan Carlos Medrano:**

Juan Carlos Medrano is a highly experienced professional in banking, finance, BSA/AML, with over 15 years of expertise. He possesses strong critical thinking skills and excels in problem resolution. With a Bachelor's in Business Administration and a Master's in Global Planning with a focus on Anti-Money Laundering, he provides regulatory guidance to clients in the United States and Latin America. He is adept at developing and implementing BSA/AML compliance programs and holds various certifications in Anti-Money Laundering and Compliance. He is a member of prestigious associations like ACAMS and ACFCS.

- **Juan Ramirez:**

Juan Francisco Ramírez is a highly qualified professional with an impressive and solid career in economics spanning decades. His exceptional expertise and unwavering commitment to success have been crucial in forging lasting institutional relationships and securing top positions in deposits and loans. He oversees and guides the institution's strategic vision, setting and achieving ambitious short and long-term goals. Additionally, his notable international presence and contributions as President, Vice President, and General Business Director in financial services institutions he has been associated with over the years have further solidified his position as a driver of innovative financial solutions. With unparalleled dedication to excellence, he consistently proves to be a reliable and influential leader, always exceeding expectations and making a profound impact in the financial world.

- **Alejandro Cespedes:**

Alejandro Cespedes is a results-oriented and strategic financial executive with over 10 years of experience in domestic and international banking. He has a proven track record of driving financial success through effective leadership, operational excellence, and strategic decision-making. Alejandro has successfully overseen operations, managed day-to-day operations, led treasury management, and aligned organizations with growth targets. His expertise includes developing and executing product strategies to drive revenue growth and enhance customer offerings. Additionally, he has experience in successful business acquisitions and investment structures for business transformation and expansion.

- **Aurea Lafeuillee:**

Aurea Lafeuillee is an experienced financial professional with a proven track record in the financial services industry. With extensive expertise in financial management and development of organizations, she has successfully held positions of great leadership, such as Finance Manager in financial services companies. She possesses special qualities and studies in treasury management and has a strong focus on performance management, ensuring financial stability, and compliance with regulatory requirements.

- **Kendell Gill:**

Kendell M Gill is a versatile and accomplished professional with extensive experience in law and accounting. As an attorney, he has provided legal solutions to corporations and individuals, specializing in corporate and commercial law, international financial services laws, and anti-money laundering legislation. Kendell holds a Master's in Information Systems with a focus on Cybersecurity and Information Assurance, and various postgraduate diplomas in law and banking.

- **Wilbert Bascom:**

Wilbert O. Bascom, Ph.D. CPAML, is a distinguished professional with extensive experience in economics, finance, and compliance. With a Ph.D. in Economics, he has specialized in currency unification strategies and financial markets. He holds extensive licenses and certifications in the financial industry, including FINRA Series 7 and 66, and has excelled in compliance and risk management roles. As President of Bascom Consulting, Inc., he provides valuable AML risk assessment reports and advisory services to financial institutions. Additionally, Wilbert has been honored by the Florida International Bankers Association (FIBA) for his significant contributions to international bank supervision.


ALTERBANK
Contact Information: info@alterbank.com / +1 (758) 451 1040

# Exhibit 7 to the Ellis Declaration

Filed for registration pursuant to Section 119 (1) International Business Companies Act, Cap. 12.14
Filed by Corporate Services St. Lucia (1996) Ltd. - Registered Agent

INTERNATIONAL BUSINESS COMPANIES
REGISTRY - ST. LUCIA
Document No 5201956
Company No 2007 - 00022

# Registers of Alter Bank Ltd.

# Company Registration # 2007 - 00022

At January 28, 2026

## 1. *Registered Office Details and Changes of Registered Office*

The Registered Office of Alter Bank Ltd. is:

Pointe Seraphine
P. O. Box 195
Castries
Saint Lucia

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
FEB 17 2026
FILED

**Alter Bank Ltd.**
*formerly StateTrust Bank & Trust Ltd.*
**IBC # 2007-00022 incorporated on January 23rd, 2007.**

## 2. Share Register

*Class of Shares: Common* *Authorized Share Capital: US$3,000,000.00*

| No. | Date of Application | Name, address and description of applicant | No of Shares Applied For | Amount of Deposits | Distinctive nos. of shares allotted From | To | Total Amount in respect of shares allocated | Certificate Number | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 1 | January 23, 2007 | StateTrust International Holding Company Inc.<br>Pointe Seraphine<br>Castries<br>St. Lucia | 500,000 | $500,000 | 1 | 500,000 | 500,000 | 1 | CANCELLED 366,923 shares redeemed further to Master Agreement and Plan of Reorganization. |
| 2 | October 1, 2016 | StateTrust International Holding Company Inc.<br>Pointe Seraphine<br>Castries<br>St. Lucia | 133,077 | - | 1 | 133,077 | 133,077 | 2 | CANCELLED Shares transferred to Juan Francisco Ramirez. |
| 3 | March 22, 2023 | Juan Francisco Ramirez<br>2821 S Bayshore Dr<br>Unit 11C<br>Miami, Florida<br>33133 | 133,077 | - | 1 | 133,077 | 133,077 | 3 | CANCELLED Shares transferred to Augusto Cesar Castillo. |
| 4 | December 30, 2024 | Augusto Cesar Castillo Chavez<br>Galileo 339, PH 401<br>Colonia Polanco<br>Mexico City<br>Mexico | 133,077 | - | 1 | 133,077 | 133,077 | 4 | |

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
FEB 17 2026
FILED

**Alter Bank Ltd.**

*formerly StateTrust Bank & Trust Ltd.*

***IBC # 2007-00022 incorporated on January 23rd, 2007.***

## *2.1 Register of Beneficial Owners*

| Name | *Address* | *Nationality* | Number of Shares Held | Percentage (%) Ownership |
|---|---|---|---|---|
| | | | | |
| Augusto Cesar Castillo Chavez | Galileo 339, PH 401<br>Colonia Polanco<br>Mexico City<br>Mexico | Venezuelan | 133,077 | 100% |

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
FEB 17 2026
FILED

**Alter Bank Ltd.**
*formerly StateTrust Bank & Trust Ltd.*
**IBC # 2007-00022 incorporated on January 23rd, 2007.**

## 3. *Register of Directors*

| | |
|---|---|
| Name: | Jose Luis Turnes |
| Address: | 800 Brickell Avenue, Suite 100<br>Miami<br>Florida, 33131 |
| Business Occupation: | Director |
| Nationality | American |
| Date of Appointment | January 23, 2007 |
| Date of Resignation | April 11, 2023 |
| | |
| | |

| | |
|---|---|
| Name: | David Vurgait |
| Address: | 800 Brickell Avenue, Suite 100<br>Miami<br>Florida, 33131 |
| Business Occupation: | Director |
| Nationality | American |
| Date of Appointment | January 23, 2007 |
| Date of Resignation | September 30, 2019 |
| | |
| | |

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
FEB 17 2026
FILED

**Alter Bank Ltd.**
*formerly StateTrust Bank & Trust Ltd.*
**IBC # 2007-00022 incorporated on January 23rd, 2007.**

| | |
|---|---|
| Name: | Lourdes Ponte |
| Address: | 800 Brickell Avenue, Suite 100<br>Miami<br>Florida, 33131 |
| Business Occupation: | Director |
| Nationality | American |
| Date of Appointment | January 23, 2007 |
| Date of Resignation | April 11, 2023 |
| | |
| | |

| | |
|---|---|
| Name: | Uri Benhamron |
| Address: | 800 Brickell Avenue, Suite 100<br>Miami<br>Florida, 33131 |
| Business Occupation: | Director |
| Nationality | American |
| Date of Appointment | January 23, 2007 |
| Date of Resignation | June 30, 2008 |
| | |
| | |

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
FEB 17 2026
FILED

**Alter Bank Ltd.**
*formerly StateTrust Bank & Trust Ltd.*
**IBC # 2007-00022 incorporated on January 23rd, 2007.**

| | |
|---|---|
| Name: | Kendall Gill |
| Address: | Castries<br>St. Lucia |
| Business Occupation: | Director |
| Nationality | St. Lucian |
| Date of Appointment | April 1, 2009 |
| Date of Resignation | - |
| | |
| | |

| | |
|---|---|
| Name: | Rene Emilio Faria Gonzalez |
| Address: | 110 Beverly Street, at. 604<br>Boston, Masachusetts<br>02114, USA |
| Business Occupation: | Director |
| Nationality | Venezuelan |
| Date of Appointment | November 20, 2019 |
| Date of Resignation | April 11, 2023 |
| | |
| | |

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
FEB 17 2026
FILED

**Alter Bank Ltd.**
*formerly StateTrust Bank & Trust Ltd.*
**IBC # 2007-00022 incorporated on January 23rd, 2007.**

## 3. *Register of Directors*

| | |
|---|---|
| Name: | Juan Francisco Ramirez |
| Address: | 2821 S Bayshore Drive<br>Unit 11C<br>Miami, Florida<br>USA 33133 |
| Business Occupation: | Director |
| Nationality | American |
| Date of Appointment | April 11, 2023 |
| Date of Resignation | December 30, 2024 |
| | |
| | |

| | |
|---|---|
| Name: | Wilbert Owen Bascom |
| Address: | 15681 SW 147th CT<br>Miami, Florida<br>USA, 33187 |
| Business Occupation: | Director |
| Nationality | American |
| Date of Appointment | April 11, 2023 |
| Date of Resignation | Deceased |
| | |
| | |

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
FEB 17 2026
FILED

**Alter Bank Ltd.**
*formerly StateTrust Bank & Trust Ltd.*
**IBC # 2007-00022 incorporated on January 23rd, 2007.**

| | |
|---|---|
| Name: | Blas Santander |
| Address: | 2501 SW 24th Avenue<br>Miami<br>Florida, USA |
| Business Occupation: | Director |
| Nationality | American |
| Date of Appointment | September 20, 2023 |
| Date of Resignation | - |
| | |
| | |

| | |
|---|---|
| Name: | Tomas Hernandez |
| Address: | Cond la Castellana<br>Etapa 2<br>Calle Cibeles<br>Polg B, Casa No. 17<br>San Salvador, El Salvador |
| Business Occupation: | Director |
| Nationality | Spanish |
| Date of Appointment | September 20, 2023 |
| Date of Resignation | April 14, 2025 |
| | |
| | |

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
FEB 17 2026
FILED

**Alter Bank Ltd.**
*formerly StateTrust Bank & Trust Ltd.*
**IBC # 2007-00022 incorporated on January 23rd, 2007.**

| | |
|---|---|
| Name: | Augusto Cesar Castillo Chavez |
| Address: | Galileo 339, PH 401<br>Colonia Polanco<br>Mexico City<br>Mexico |
| Business Occupation: | Businessman |
| Nationality | Venezuelan |
| Date of Appointment | December 30, 2024 |
| Date of Resignation | - |
| | |
| | |

| | |
|---|---|
| Name: | Alexander Soroka |
| Address: | 952 Mockingbird<br>Apt 603 Plantation<br>FL 33324<br>USA |
| Business Occupation: | Director |
| Nationality | - |
| Date of Appointment | April 16, 2025 |
| Date of Resignation | - |
| | |
| | |

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
FEB 17 2026
FILED

**Alter Bank Ltd.**
*formerly StateTrust Bank & Trust Ltd.*
***IBC # 2007-00022 incorporated on January 23rd, 2007.***

| | |
|---|---|
| Name: | Timothy Richards |
| Address: | 2000 Salzedo Street<br>Apartment 806<br>Coral Gables<br>Florida, USA |
| Business Occupation: | Attorney |
| Nationality | American |
| Date of Appointment | July 17, 2025 |
| Date of Resignation | - |
| | |
| | |

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
FEB 17 2026
FILED

**Alter Bank Ltd.**
*formerly StateTrust Bank & Trust Ltd.*
**IBC # 2007-00022 incorporated on January 23rd, 2007.**

## 6. *Register of Secretaries*

| | |
|---|---|
| Name: | Uri Benhamron |
| Address: | 800 Brickell Avenue, Suite 100<br>Miami<br>Florida, 33131 |
| Business Occupation: | Director |
| Nationality | |
| Date of Birth | |
| Date of Appointment | January 23, 2007 |
| Date of Resignation | June 30, 2008 |
| | |
| | |

| | |
|---|---|
| Name: | Lourdes Ponte |
| Address: | 800 Brickell Avenue, Suite 100<br>Miami<br>Florida, 33131 |
| Business Occupation: | Director |
| Nationality | |
| Date of Birth | - |
| Date of Appointment | June 30, 2008 |
| Date of Resignation | April 11, 2023 |
| | |
| | |

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
FEB 17 2026
FILED

**Alter Bank Ltd.**
*formerly StateTrust Bank & Trust Ltd.*
**IBC # 2007-00022 incorporated on January 23rd, 2007.**

| | |
|---|---|
| Name: | Alejandro Cespedes |
| Address: | 2967 Bridgeport Ave<br>Miami<br>Florida, USA |
| Business Occupation: | Economist |
| Nationality | American |
| Date of Birth | - |
| Date of Appointment | April 11, 2023 |
| Date of Resignation | NA |
| | |
| | |

| | |
|---|---|
| Name: | Aurea Lafeuillee |
| Address: | South Hills<br>Cap Estate<br>Gros Islet<br>S. Lucia |
| Business Occupation: | Accountant |
| Nationality | St. Lucian |
| Date of Birth | - |
| Date of Appointment | April 25, 2025 |
| Date of Resignation | - |
| | |
| | |

SAINT LUCIA
REGISTRY OF INTERNATIONAL BUSINESS
FEB 17 2026
FILED

# Exhibit 8 to the Ellis Declaration







Activate your credit card via phone:
**Call +1(305)4477292 anytime to get started.**

**Activate your card online:**

1. Visit www.alterbank.com.
2. Select the "Online Banking" option.
3. Log in with your username and password.
4. Select "Card" from the menu.
5. Follow the instructions to complete your card activation.

**ACCESS YOUR MONEY**
**Using your contactless credit card is like carrying cash-except faster and easier.**

CONTACTLESS CARD
Your new debit card is contactless, which makes checking out speedy when you see this symbol on the card reader. Just tap your card on it. Be sure to remove your card from your wallet so the reader scans only one contactless card. If the

**PROTECT YOUR ACCOUNT**
**We have your back, so you can use your debit card with confidence.**

ALERTS & NOTIFICATIONS
We'll contact you if we notice any unusual activity on your account. Plus, you'll receive notifications with each purchase and alerts to help you manage your account.

**STAY SAFE AT ATMs**
**ATMs are monitored by security cameras, but don't forget these tips.**

- Look around before walking up to the ATM, especially at night.
- If someone is waiting behind you, shield your PIN with your hand as you enter it. Have your phone handy in case of emergency.

store doesn't have contactless readers, you can still swipe or insert your card.

CASH WITHDRAWALS
You can grab cash at over 100,000 ATMs that display the Visa logo worldwide.

INTERNATIONAL USE
Enjoy traveling with your card and use it for foreign transactions without any additional steps.

CHIP TECHNOLOGY
Your contactless debit card is embedded with chip protection. Each time you use it at a chip-enabled register, a unique code is created to help keep your debit card information safe.

INSTANT CARD LOCK
You can block your lost or stolen card with help from AlterBank. Just contact us immediately for assistance.

FRAUD MONITORING
We block potential fraud if abnormal patterns are detected and let you know if we suspect fraudulent activity

- If there's a door to the ATM, close it.
- Put your cash away immediately-don't count it if others can see you.
- Don't let anyone you don't know in the ATM after the branch is closed.
- If you see something suspicious, cancel your transaction.
- Keep your 4-digit PIN to yourself, and don't share it with anyone.
- If someone approaches you and demands your money, just give it to them and call the police as soon as you can.




ALTERBANK

SERVICES FEE SCHEDULE CALENDAR PRODUCTS KNOWLEDGE CONTACT CUSTOMER COMPLAINT

AlterBank Limited is a financial services company incorporated in St. Lucia and is licensed under the International Banks Act, Cap. 12.17, as a Class A Bank. It is regulated by the Financial Services Regulatory Authority. This license allows the bank to conduct international banking operations in the international markets. It provides services to companies and non-residents, offering Multi-Currency Accounts & Foreign Exchange, Transactional Banking, Fixed Term Deposits, Loans, Credit Cards, and eBanking. At AlterBank we place a high priority on the security of our clients. We would like to take this opportunity to remind you that we will never request any sensitive personal information, such as access codes, online banking credentials, bank account details, debit card numbers, or credit card information, via email or any other link. If you encounter any suspicious activity, we kindly ask that you contact our customer service team immediately by email at customerservice@alterbank.com. Rest assured that we are committed to safeguarding your privacy and security, and we appreciate your assistance in helping us maintain a safe and secure banking environment.

Copyright © 2025 AlterBank. All Rights Reserved | Designed by **RDLB**

# Exhibit 9 to the Ellis Declaration

# RETURN OF SERVICE

UNITED STATES DISTRICT COURT
Southern District of Florida

Case Number: 1:26-MC-23885-JEM

**In re Application of The Bank of New York Mellon, solely in its capacity as Trustee for the TV Azteca, S.A.B. de C.V. 8.25% Senior Notes due 2024, for an order pursuant to 28 U.S.C. 1782**

SOP2026000897

For:
Daniel S. Fridman
FRIDMAN FELS & SOTO, PLLC
2525 Ponce de Leon Boulevard
Suite 750
Coral Gables, FL 33134

Received by SERVICE OF PROCESS, INC. on the 8th day of June, 2026 at 3:14 pm to be served on **AlterBank, Limited, 2501 Southwest 24th Avenue, Miami, FL 33133.**

I, HENRY PINTO, do hereby affirm that on the **9th day of June, 2026** at **10:23 am, I:**

served a **CORPORATION** by delivering a true copy of the **SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION SCHEDULED FOR JULY 9, 2026 WITH AN ADVANCED WITNESS FEE CHECK OF $45.00** with the date and hour of service endorsed thereon by me, to: **Blas Santander** as **Director** for **AlterBank, Limited**, at the address of: **2501 Southwest 24th Avenue, Miami, FL 33133**, and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server in good standing in the Judicial Circuit in which the process was served. Under penalty of Perjury, I declare the facts contained herein are true and correct to the best of my knowledge.

**HENRY PINTO**
#2351

**SERVICE OF PROCESS, INC.**
**3741 S.W. 132 Avenue**
**MIAMI, FL 33175**
**(305) 226-6809**

Our Job Serial Number: SOP-2026000897

Copyright © 1992-2026 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | | |
|---|---|---|
| **In re Application of The Bank of New York Mellon, solely in its capacity as Trustee for the TV Azteca, S.A.B. de C.V. 8.25% Senior Notes due 2024, for an order pursuant to 28 U.S.C. § 1782**<br>*Plaintiff*<br>v.<br><br>*Defendant* | ) | Civil Action No. 1:26-mc-23885-JEM |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: AlterBank, Limited
2501 Southwest 24th Avenue, Miami, Florida

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: | Date and Time: |
|---|---|
| Fridman Fels & Soto, PLLC, 150 Alhambra Circle, Suite 715, Coral Gables, FL 33134 (305) 569-7701 | Deposition: July 9, 2026<br>Document Production Deadline: July 2, 2026 |

The deposition will be recorded by this method: Court Reporter and Videographer

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Exhibit A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: June 8, 2026

*CLERK OF COURT* OR Daniel S. Fridman

*Signature of Clerk or Deputy Clerk* *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* **The Bank of New York Mellon solely in its capacity as Trustee for the TV Azteca, S.A.B. de C.V. 8.25% Senior Notes due 2024**, who issues or requests this subpoena, are:

Daniel S. Fridman, Fridman Fels & Soto, PLLC, 150 Alhambra Circle, Suite 715, Coral Gables, FL 33134 (305) 569-7720 daniel.fridman@ffslawfirm.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Case 1:26-mc-23885-JEM Document 32-1 Entered on FLSD Docket 06/02/2026 Page 61 of 71

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named individual as follows: ____________
______________________________________________________________
______________________________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ______________________
______________________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ______________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Exhibit 10 to the Ellis Declaration

**From:** **Blas Santander** bsantander@alterbank.com
**Subject:** RE: Follow-up - Alterbank.
**Date:** March 20, 2024 at 10:03 AM
**To:** James Sadoh jsadoh@jn-fx.com, Ayskell Fernandez afernandez@alterbank.com
**Cc:** Juan Ramirez jramirez@alterbank.com

BS

Mr Sadoh good morning,

Can you please clarify what are the instructions that our clients would need to use to receive funds in the account.
I'm I understanding correctly that if the bank or one of our clients receives a transfer for $2,000,000 it would be charged a $9,000 fee?

Thank you.

Best regards.

Blas Santander

ALTERBANK

AlterBank Limited is a financial services company incorporated in St. Lucia and is licensed under the International Banks Act, Cap. 12.17, as a Class A Bank. It is regulated by the Financial Services Regulatory Authority. This license allows the bank to conduct international banking operations in the internationalmarkets. It provides services to companies and non-residents; offering Multi Currency Accounts & Foreign Exchange, Transactional Banking, Fixed Term Deposits, Loans, Credit Cards, and eBanking.

At AlterBank we place a high priority on the security of our clients. We would like to take this opportunity to remind you that we will never request any sensitive personal information, such as access codes, online banking credentials, bank account details, debit card numbers, or credit card information, via email or any other link. If you encounter any suspicious activity, we kindly ask that you contact our customer service team immediately by email at customerservice@alterbank.com. Rest assured that we are committed to safeguarding your privacy and security, and we appreciate your assistance in helping us maintain a safe and secure banking environment.

www.AlterBank.com

**From:** James Sadoh <jsadoh@jn-fx.com>
**Sent:** Tuesday, March 19, 2024 1:11 PM
**To:** Ayskell Fernandez <afernandez@alterbank.com>
**Cc:** Juan Ramirez <jramirez@alterbank.com>; Blas Santander <bsantander@alterbank.com>
**Subject:** Re: Follow-up - Alterbank.

Good Afternoon Ayskell;

Thank you for the email.

In order to fund the account, please send funds to the following bank account:

Bank Account Name: JNFX LIMITED
Multicurrency: USD / SGD / GBP / AUD / HKD / JPY / CNH / EUR / CAD (All available funding currencies)
Country: Singapore
Bank Account no.: [redacted]803
SWIFT Address/ Code: DBSSSGSG
Name of Bank: DBS Bank Ltd Singapore
Bank Address: 12 Marina Boulevard, DBS Asia Central, Marina Bay, Financial Centre Tower 3, Singapore 018982

# Exhibit 11 to the Ellis Declaration

**From:** **Blas Santander** bsantander@alterbank.com
**Subject:** Re: Account Contract/Agreement
**Date:** September 5, 2024 at 7:35 PM
**To:** Ayskell Fernandez afernandez@alterbank.com, Tomas Hernandez thernandez@alterbank.com, Juan Ramirez jramirez@alterbank.com, Kendell Gill kendell@kmgclaw.com, Wilmert Bascom wbascom@alterbank.com
**Cc:** Antonio Romero aromero@alterbank.com

BS

Good afternoon,

Please let's move forward to a "clean" version of the document and lets uploaded to the website ASAP.

Best regards.

Blas Santander

ALTERBANK

AlterBank Limited is a financial services company incorporated in St. Lucia and is licensed under the International Banks Act, Cap. 12.17, as a Class A Bank. It is regulated by the Financial Services Regulatory Authority. This license allows the bank to conduct international banking operations in the international markets. It provides services to companies and non-residents; offering Multi Currency Accounts & Foreign Exchange, Transactional Banking, Fixed Term Deposits, Loans, Credit Cards, and eBanking.

At AlterBank we place a high priority on the security of our clients. We would like to take this opportunity to remind you that we will never request any sensitive personal information, such as access codes, online banking credentials, bank account details, debit card numbers, or credit card information, via email or any other link. If you encounter any suspicious activity, we kindly ask that you contact our customer service team immediately by email at customerservice@alterbank.com. Rest assured that we are committed to safeguarding your privacy and security, and we appreciate your assistance in helping us maintain a safe and secure banking environment.

www.AlterBank.com

Get Outlook for iOS

---

**From:** Ayskell Fernandez <afernandez@alterbank.com>
**Sent:** Thursday, September 5, 2024 1:30:14 PM
**To:** Tomas Hernandez <thernandez@alterbank.com>; Juan Ramirez <jramirez@alterbank.com>; Kendell Gill <kendell@kmgclaw.com>; Wilmert Bascom <wbascom@alterbank.com>
**Cc:** Antonio Romero <aromero@alterbank.com>; Blas Santander <bsantander@alterbank.com>
**Subject:** Fw: Account Contract/Agreement

Good afternoon.

A pleasure to greet you once again.

Following the instructions of Antonio and Blas, both copied in this email, I am forwarding the draft of the client account contract for your review, comments, and approval as appropriate.

Best regards.

.............................

Buenas tardes.

Un gusto saludarles nuevamente.

Siguiendo instrucciones de Antonio y Blas ambos en copia de este email, les re- envío el borrador de contrato de cuenta de clientes para su revision, comentarios y aprobación según corresponda.

Siempre a la orden.

Saludos.

---

**From:** Aurea Lafeuillee <alafeuillee@alterbank.com>
**Sent:** Wednesday, September 4, 2024 10:14 AM
**To:** Ayskell Fernandez <afernandez@alterbank.com>
**Cc:** Blas Santander <bsantander@alterbank.com>; Antonio Romero <aromero@alterbank.com>, Myreen Cenac <mcenac@alterbank.com>; Juan Schutte <jschutte@alterbank.com>
**Subject:** FW: Account Contract/Agreement

Good morning Ayskell

Further to instructions from Blas and Antonio, please see the attached customer agreement for review and approval by the Board of Directors.

Best regards,

Aurea Lafeuillee

ALTERBANK

AlterBank Limited is a financial services company incorporated in St Lucia and is licensed under the International Banks Act, Cap 12.17 as a Class A Bank. It is [illegible]

[illegible] services to companies and non residents; offering Multi Currency Accounts & Foreign Exchange, Transactional Banking, Fixed Term Deposits, Loans, Credit Cards, and eBanking.

At AlterBank we place a high priority on the security of our clients. We would like to take this opportunity to remind you that we will never request any sensitive personal information, such as access codes, online banking credentials, bank account details, debit card numbers, or credit card information, via email or any other link. If you encounter any suspicious activity, we kindly ask that you contact our customer service team immediately by email at customerservice@alterbank.com. Rest assured that we are committed to safeguarding your privacy and security, and we appreciate your assistance in helping us maintain a safe and secure banking environment.

www.AlterBank.com

# Exhibit 12 to the Ellis Declaration

AB-RS-BODI-24-032-V01

**ALTER BANK LTD.**
**IBC NUMBER – 2007-00022**
**RESOLUTIONS OF THE DIRECTORS IN LIEU OF MEETING**

**WHEREAS** The need to continue with the formation of the work team and the operation of the Business, Customer Services, Cards and Payments, IT and Security, Development and Strategic Planning area of Alter Bank.

**BE IT RESOLVED THAT**

1. The board of directors approves the hiring of the professional services of Mary Elorza as IT & Security Manager, under the conditions described in the attached contract.
2. The board of directors approves the hiring of the professional services of Jesus Briceno as Credit/Debit Cards Manager, under the conditions described in the attached contract.
3. The board of directors approves the hiring of the professional services of Ayskell Fernandez as Development and Planning Manager, under the conditions described in the attached contract.
4. The board of directors approves the hiring of the professional services of Julio Santander as Customer Service Leader, under the conditions described in the attached contract.

Director Blas Santander is authorized to sign the contract conditions. (1-4)

5. The board of directors approves the hiring of the professional services of Blas Santander as Chief Business Officer (CBO), under the conditions described in the attached contract.

CEO Antonio Romero is authorized to sign the contract conditions. (5)

**FURTHER RESOLVED THAT:**

The undersigned, as Directors of Alter Bank Ltd., a company incorporated under the International Business Companies Act of St. Lucia, hereby sign the foregoing resolutions, and direct the same to be duly filed in the minute book of the company.

Dated this 28th day of March 2024.

Director -Juan Ramirez

Director – Kendell Gill

Director –Owen Bascom

Director-Blas Santander

Director – Tomas Hernandez

# Exhibit 13 to the Ellis Declaration

[TRANSLATION FROM SPANISH]

**From:** **Tomas Hernandez** thernandez@alterbank.com
**Subject:** Minutes of Shareholders' Meeting May 31, 2023
**Date:** June 1, 2023 at 3:43 PM
**To:** Juan Ramirez jramirez@alterbank.com, Blas Santander bsantander@alterbank.com
**Cc:** Augusto Castillo acastillo@alterbank.com

Hello sirs,

Good afternoon. Further to our meeting yesterday and what we have been discussing these last two weeks, I wanted to set out here the resolutions and next steps, both in terms of legal/formal requirements and operationally.

**Meeting Resolution**

1. New Shareholder base
2. Process and Conditions for the new capitalization

**Alter Bank Shareholding Structure (May 31, 2023)**

| | Investment | Shareholding Percentage | Shareholders |
|---|---|---|---|
| | $1,600,000.00 | 30.95% | JR |
| | $ 800,000.00 | 15.47% | BS |
| | $2,770,000.00 | 53.58% | AC-TH |
| **TOTAL** | $5,170,000.00 | 100.00% | |

**Resolutions**

1. The new Shareholder Base enters into effect today
2. No financing has been provided by any of the parties
3. All capital contributions or payment obligations are proportional to the shareholding percentage
4. If any of the parties is unable to make the payment on time, their percentage will be diluted
5. The deadline for the new $2M capitalization is July 1, 2023

**Next Legal Steps**

1. Formalize this first shareholder resolution. It must be formalized at a meeting of the Board of Directors by executing the minutes. There are currently three directors, a document is attached. If you're happy, I can work on a draft and then circulate it to be signed.
2. Check the status of the new directors, on the understanding that both mine and Blas' documents have already been sent to the authorities. It is vital for us to finalize this document as soon as possible.
3. The New Board of Directors must pass an operational resolution defining the decision making process.
4. Weekly or fortnightly status, both with Deale and with Fleur.
Especially Augusto and Juan.
5. Plan the trip to Santa Lucía to meet with Deale and the authorities, and to see the office.
6. Juan and Augusto to update the legal document, with the respective deadline extensions.
7. Draft Juan's share transfer document (100% today) for the definitive structure following the new capitalization .

JR-Alter 0078



2Enysx+Qa7rOQX744GHpKMITx/bjm3En+RgzG9hARmM=

[TRANSLATION FROM SPANISH]

**(Immediate) Next Operational Steps**

1. Revise the projected Budget + Capitalization
2. Chose the Core Banking System

We agreed we would have another meeting before Monday.
Let's please set a date and time in the WhatsApp group. We can define the points on the agenda there.

I hope I'm not forgetting anything. If so, please do add it.

To reiterate, the spirit I want to bring to the table is that we should be as formal and professional as possible, so we can get off on the right foot and with momentum.

Kind regards

Directors.pdf
421 KB

2Enysx+Qa7rOQX744GHpKMlTx/bjm3En+RgzG9hARmM=

I, DIANA DEYANIRA LÓPEZ OLMOS, CERTIFIED TRANSLATOR WITH REGISTRATION NUMBER P.077-2024, DULY AUTHORIZED BY THE FEDERAL JUDICIARY COUNCIL FOR THE YEAR TWO THOUSAND TWENTY-SIX FOR CIRCUIT ONE (MEXICO CITY) IN ACCORDANCE WITH ARTICLE 86, SECTION XXIX, OF THE ORGANIC LAW OF THE FEDERAL JUDICIARY, AND ARTICLE 7 OF THE GENERAL AGREEMENT OF THE PLENARY SESSION OF THE FEDERAL JUDICIARY COUNCIL, WHICH REGULATES THE INTEGRATION OF THE LIST OF PERSONS WHO MAY ACT AS EXPERTS BEFORE THE BODIES OF THE FEDERAL JUDICIARY, AS PUBLISHED IN THE OFFICIAL GAZETTE OF THE FEDERATION (DOF) ON THE ELEVENTH OF DECEMBER, TWO THOUSAND AND TWENTY-FIVE [https://www.dof.gob.mx/2025/OAJ/listado_peritos_PJF_2026.pdf, P.191], HEREBY CERTIFY THAT THE ATTACHED TRANSLATION IS, TO THE BEST OF MY KNOWLEDGE, A TRUE AND CORRECT TRANSLATION INTO ENGLISH OF 2 **(TWO)** PAGE(S) OF THE ORIGINAL DOCUMENTS IN SPANISH.

CERTIFIED ON **AUGUST 6, 2026**

2Enysx+Qa7rOQX744GHpKMlTx/bjm3En+RgzG9hARmM=

**From:** **Tomas Hernandez** thernandez@alterbank.com
**Subject:** Minuta Reunión Accionistas 31 Mayo 2023
**Date:** June 1, 2023 at 3:43 PM
**To:** Juan Ramirez jramirez@alterbank.com, Blas Santander bsantander@alterbank.com
**Cc:** Augusto Castillo acastillo@alterbank.com

TH

Hola estimados,

Buenas tardes. En seguimiento de nuestra reunión ayer y en lo que hemos conversado las últimas 2 semanas, quiero dejar por acá los acuerdos y los próximos pasos, tanto los formales/legales cómo los operativos.

### Acuerdo de la Reunión

1. Nueva base Accionaria
2. Proceso y Condiciones para la nueva capitalización

**Distribución Accionario Alter Bank (31 Mayo 2023)**

| | Inversión | Porcentaje Accionario | Accionistas |
|---|---|---|---|
| | $ 1,600,000.00 | 30.95% | JR |
| | $ 800,000.00 | 15.47% | BS |
| | $ 2,770,000.00 | 53.58% | AC-TH |
| TOTAL | $ 5,170,000.00 | 100.00% | |

**Acuerdos**

1. Nueva Base Accionaria es la de hoy
2. No hay financiamiento de ninguna de las partes
3. Todo aporte a capital u obligación de pago es proporcional % de acciones
4. Si uno de los socios no puede cumplir con el pago a la fecha, su % se diluye
5.La fecha límite para la nueva capitalización de $2M es 1ero de Julio 2023

### Próximos pasos legales

1. Formalizar este primer acuerdo accionario. Se formaliza en la Junta Directiva con un acta. Al día de hoy hay 3 directores, adjunto documento. Si están de acuerdo yo trabajo en un borrador para luego circularlo para firma.
2. Verificar status de los nuevos directores, entendiendo que tanto mis documentos cómo los de Blas ya se enviaron a la autoridad. Es vital que esta composición quede de manera definitiva a la brevedad.
3. La Nueva Junta Directiva debe hacer un acuerdo operativo de para definir proceso de toma de decisiones.
4. Status semanal o máximo cada 15 días tanto con Deale cómo con Fleur. Especialmente Augusto y Juan.
5. Planificar el viaje a Santa Lucía, para reunirse con Deale, las autoridades y ver la oficina.
6. Actualizar el documento legal entre Juan y Augusto, con las respectivas extensiones en fecha.
7. Borrador de documento de traspaso de acciones de Juan (100% hoy) a la composición definitiva post nueva capitalización.

**Próximos Pasos (inmediatos) Operativos**

1. Revisar el Presupuesto proyectado + Capitalización
2. Escoger el Core Bancario

Quedamos en tener otra reunión antes del Lunes. Coordinemos fecha y hora en el grupo de Whatsapp por favor. Ahí mismo definamos los puntos de agenda.

Espero que no se me escape nada, de haberlo hecho, por favor agréguenlo con gusto.

Nuevamente, el espíritu que quiero traer a la mesa es que seamos lo más formal y profesional posible, para que este proyecto arranque con el pie derecho y con inercia.

Saludos

**Directors.pdf**
421 KB

# Exhibit 14 to the Ellis Declaration

## Contactar

www.linkedin.com/in/blas-s-99196ab5 (LinkedIn)

## Aptitudes principales

Customer Experience
Account Management
Customer Service

## Languages

Español (Native or Bilingual)
Inglés (Native or Bilingual)

## Publications

Graduate Thesis

PROPOSAL OF A BANCARIZATION PLAN FOR PEOPLE OF THE INFORMAL SECTOR OF THE ECONOMY IN THE PETARE PARISH FOR 2014

PROPUESTA DE UN PLAN DE BANCARIZACION PARA LAS PERSONAS DEL SECTOR INFORMAL DE LA ECONOMIA DE LA PARROQUIA DE PETARE

# Blas S.

Finance / Banking
Miami, Florida, Estados Unidos

## Extracto

Dynamic and results-driven with decades of experience in driving strategic initiatives and fostering organizational growth. My career has been defined by a commitment to innovation, operational excellence, and building high-performing teams. I possess a strong ability to translate complex business challenges into actionable strategies that enhance profitability and market share.

With a proven track record in Banking, Finance and Business Advising, I excel in developing and implementing business development strategies, forging strategic partnerships, and optimizing operational processes. My leadership style emphasizes collaboration and empowering teams to achieve their full potential, ensuring alignment with the company's vision and goals.

I am passionate about leveraging data-driven insights to inform decision-making and drive sustainable growth. I thrive in fast-paced environments and am adept at navigating change while maintaining a focus on customer satisfaction and stakeholder engagement.

Let's connect to explore opportunities for collaboration and growth in the ever-evolving business landscape.

## Experiencia

AlterBank
Co-Founder / Managing Director / Chief Business Officer
mayo de 2023 - Present (3 años 1 mes)

I am responsible for the day-to-day business operations for the Bank and lead the team of Customer Success Managers. I work closely with the CEO and other senior managers to develop and implement strategic plans to grow and develop bank operations. I also work with the finance and accounting departments to ensure that the company's financial goals are met.

### Business Advising

Business Development

diciembre de 2016 - Present (9 años 6 meses)

Miami, Florida, United States

As BDO I am required to help shape the overall business vision and customer base. Im in charge of developing plans and strategies to control more segments of the marketplace and determine the direction a company will take in its attempt to do this. I have a firm understanding of market and industry dynamics, and Im responsible for maintaining relationships with other powerful industry and business professionals who are directly related to the particular market The Company is in. I with chief financial professionals on budgets and costs, and work with the president, board members, and operating officers to determine company goals and practices.

I also work closely with the sales department to help develop plans and strategies for acquiring new customers and business opportunities. I am responsible for coordinating sales forecasts and keeping a close eye on customer accounts. My position is directly responsible for the supervision of the sales team.

### Photography

Freelance Photographer

febrero de 2010 - Present (16 años 4 meses)

Capturing light to immortalize an instant for eternity. Graphic reporter covering news in Venezuela, for the necessity of sincere news about what is happening in the country. Photography correspondent for  El Nuevo Pais news paper, Zeta magazine and freelance photographer for PanAm Post agency from 2010 to 2017........ since 2017 I am now based out of Miami Florida

### Financial Technology, Ltd.

Customer Success Manager

febrero de 2011 - mayo de 2023 (12 años 4 meses)

Miami, Florida

Qualify leads from campaigns as sales opportunities, contact potential clients through calls and emails, arrange personal meeting, present the company to potential clients, identify client needs and suggest appropriate solutions, customize product solutions to increase customer satisfaction, build longterm trusting relationships with clients, proactively seek new business opportunities, stay up-to-date with new products and services.
High experience with CRM (Salesforce) as user and manager.

High understanding of sales performance metrics.
High level of understanding and use of spreadsheets and charts (MS Excel)

### International Banking
Senior Relationship Manager
febrero de 2011 - abril de 2023 (12 años 3 meses)
Miami, Florida

I provide banking and lending solutions to clients from around the world, for both personal and business accounts.

As senior relationship manager i attracted and managed financial relationships for the bank with over 250 high profile clients with great success.

Qualify leads from campaigns as sales opportunities, contact potential clients through calls and emails, arrange personal meeting, present the company to potential clients, identify client needs and suggest appropriate solutions, customize product solutions to increase customer satisfaction, build longterm trusting relationships with clients, proactively seek new business opportunities, stay up-to-date with new products and services.
High experience with CRM (Salesforce) as user and manager.
High understanding of sales performance metrics.
High level of understanding and use of spreadsheets and charts (MS Excel).

### De Solutions
Finance Officer
agosto de 2017 - diciembre de 2022 (5 años 5 meses)
Miami, Florida

overseeing the financial operations of the company and making decisions based on the company's financial stability. My duties include monitoring cash flow, meeting with the CEO to discuss the best practices for company finances and coming up with strategic plans to improve the company's overall financial health

### Distribuidora Luxtron
Commercial Operations Manager / Owner
agosto de 2007 - enero de 2020 (12 años 6 meses)
Caracas

Manage commercial operations for this all in one car shop. Mechanical, cosmetic and parts, as well as car wash.

The business has expanden from one small location to 3 all-in-one locations, and operate with great success.

## Educación

### Universidad Metropolitana (VE)

Advanced studies, Financial Engineering · (2016 - 2017)

### Universidad Metropolitana (VE)

Bachelor of Business Administration - BBA, Banking and Finance · (2009 - 2014)

### Florida Atlantic University

Biochemical Engineering · (2005 - 2007)

### American Heritage Schools - Palm Beach Campus

High School Diploma · (2000 - 2005)

# Exhibit 15 to the Ellis Declaration

**From:** Ingber, Zachary
**Sent:** Thursday, June 18, 2026 4:59 PM
**To:** Evan J. Stroman
**Cc:** Marta Colomar Garcia; Daniel Fridman; Brant C. Hadaway, B.C.S.; Julianne Bagley; Kerry Sanchez; Rolston, Eric; Ellis, Justin; Anel Viamontes; M. Victoria Pantin
**Subject:** RE: BNY Mellon, As Trustee for the Azteca Senior Notes, No. 26-MC-23885 (S.D. Fla.)
**Attachments:** DE 01-02 Subpoena - Blas Santander (Final).pdf; DE 01-02 Subpoena - AlterBank, Limited (Final).pdf

Evan,

Thanks for the call earlier. I write to confirm via email that we agree to continue Tuesday's deadline to respond to the subpoenas. We are also preparing a joint stipulation for the court with a briefing schedule reflecting the July 14 deadline you requested. We will follow up with a draft when ready.

We also attach here the two service packets for Blas Santander and AlterBank as served.

Thanks,
Zach

**Zachary R. Ingber**
MOLOLAMKEN
430 Park Avenue
New York, NY 10022
T: (212) 607-8172 | M: (917) 992-3930
zingber@mololamken.com

---

**From:** Daniel Fridman <daniel.fridman@ffslawfirm.com>
**Sent:** Tuesday, June 16, 2026 1:52 PM
**To:** Evan J. Stroman <estroman@diazreus.com>
**Cc:** Marta Colomar Garcia <mcolomar@diazreus.com>; Brant C. Hadaway, B.C.S. <bhadaway@diazreus.com>; Julianne Bagley <jbagley@diazreus.com>; Kerry Sanchez <kasanchez@diazreus.com>; Ingber, Zachary <Zingber@mololamken.com>; Rolston, Eric <erolston@mololamken.com>; Ellis, Justin <JEllis@mololamken.com>; Anel Viamontes <aviamontes@ffslawfirm.com>; M. Victoria Pantin <vpantin@ffslawfirm.com>
**Subject:** Re: BNY Mellon, As Trustee for the Azteca Senior Notes, No. 26-MC-23885 (S.D. Fla.)

Good afternoon Evan —

Let's talk Thursday at 11 am. We will send an invite.

Dan

**Daniel Fridman**
Partner
**Fridman Fels & Soto, PLLC**
150 Alhambra Cir., Suite 715 | Coral Gables, Florida 33134

**T** +1 305 569 7720 **M** +1 786 514 2541
daniel.fridman@ffslawfirm.com | www.ffslawfirm.com | bio

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please tell the sender immediately by reply e-mail and delete this e-mail and any copies of it. Thank you.

---

**From:** Evan J. Stroman <estroman@diazreus.com>
**Date:** Tuesday, June 16, 2026 at 11:23 AM
**To:** Daniel Fridman <daniel.fridman@ffslawfirm.com>; jellis@mololamken.com <JEllis@mololamken.com>
**Cc:** Marta Colomar Garcia <mcolomar@diazreus.com>; Brant C. Hadaway, B.C.S. <bhadaway@diazreus.com>; Julianne Bagley <jbagley@diazreus.com>; Kerry Sanchez <kasanchez@diazreus.com>
**Subject:** BNY Mellon, As Trustee for the Azteca Senior Notes, No. 26-MC-23885 (S.D. Fla.)

You don't often get email from estroman@diazreus.com. Learn why this is important

Counsel,

Diaz Reus International Law Firm has been retained to represent Alter Bank and Blas Santander in connection with the Bank of New York Mellon's request for discovery under 28 U.S.C. §1782 in the matter pending before the District Court for the Southern District of Florida styled *The Bank of New York Mellon, Solely in its Capacity as Trustee for the Azteca, S.A.B. de C.V. 8.25% Senior Notes Due 2024*, Case No. 26-MC-23885.

A response to your client's Petition is currently due on Tuesday, June 23, 2026. But Bank of NY Mellon's subpoenas implicate questions of law across multiple jurisdictions, and we require additional time to consult with counsel and corporate representatives in those locations. To facilitate those consultations, both parties represented by Diaz Reus are requesting a brief three-week extension, until July 14, 2026, to file their objections to the subpoenas directed to them. Please confirm whether your client intends to oppose that request.

To the extent Bank of NY Mellon does not agree to the extension sought, in compliance with S.D. Fla. Local Rule 7.1(a)(3), please confirm your availability to discuss that issue by phone this Thursday, June 18, 2026. We are currently available between 10:00 am and 1:00 pm on June 18th.

Thank you,

**Evan J. Stroman, Esq.**
Partner

Diaz Reus International Law Firm
100 SE 2nd Street
Suite 3400 | Miami Tower
Miami, Florida 33131

Office: 305.375.9220
estroman@diazreus.com | www.diazreus.com

United States . Latin America . Europe . Asia . Middle East . Africa

NOTICE: The information contained in this electronic mail transmission is intended by this law firm for the use of the named individual or entity to which it is directed and may contain information that is privileged or otherwise confidential. It is not intended for transmission to, or receipt by, anyone other than the named addressee. It should not be copied or forwarded to any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying or forwarding it, and notify the sender of the error by reply e-mail or calling the above telephone number (collect) so that our address record can be corrected. Thank you for your cooperation.

DIAZ, REUS & TARG LLP IS AN INTERNATIONAL LEGAL PRACTICE PROVIDING CLIENT SERVICES WORLDWIDE THROUGH ITS MEMBER FIRMS AND AFFILIATES. ANY REFERENCE TO A "PARTNER" MEANS A PERSON WHO IS A PARTNER, MEMBER, CONSULTANT, OR EMPLOYEE WITH EQUIVALENT STANDING AND QUALIFICATIONS IN ONE OF DIAZ REUS' MEMBER FIRMS OR AFFILIATES.

# Exhibit 16 to the Ellis Declaration

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------:

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, | : Case No.: 22-cv-8164 |
| Plaintiff, | : |
| v. | : |
| TV AZTECA, S.A.B. de C.V., | : New York, New York |
| et al., | : July 15, 2026 |
| Defendants. | : |

------------------------------:

TRANSCRIPT OF STATUS CONFERENCE HEARING

BEFORE THE HONORABLE BARBARA C. MOSES

UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Trustee: MoloLamken LLP
BY: Justin M. Ellis, Esq.
Zach Ingber, Esq.
430 Park Avenue
New York, New York 10022

For Defendant: GREENBERG TRAURIG LLP
BY: Hal Shaftel, Esq.
John C. Molluzzo, Esq.
One Vanderbilt Avenue
New York, New York 10017

Proceedings recorded by electronic sound recording; Transcript produced by transcription service.

THE DEPUTY CLERK: The Court now calls the Bank of New York Mellon v. TV Azteca, S.A.B. de C.V., et al.; Case Number: 22-cv-8164.

Counsel, please make your appearances for the record.

MR. ELLIS: Good morning, your Honor. Justin Ellis and Zach Ingber, MoloLamken, for the Trustee. With me here today is Curtis Plaza, external general counsel for the Trustees.

THE COURT: All right. Mr. Ellis. Mr. Plaza.

MR. SHAFTEL: Good morning, your Honor. Hal Shaftel, together with John Molluzzo, from the Greenberg Traurig firm, on behalf of the TV Azteca defendants.

THE COURT: Mr. Shaftel.

Mr. -- I'm sorry, Molluzza?

MR. SHAFTEL: Molluzzo.

THE COURT: Molluzzo. My apologies. All right.

Good morning, everybody. We are here today on the letter motion of the defendants, TV Azteca, and various affiliates for some kind of relief in connection with the Trustee's recent § 1782 petition filed in a federal court in Florida.

Let me begin, if I might, by asking for an update from Florida. I see that the judge there issued what's typically the first step in a § 1782 petition, which is an ex parte order. What often, although not necessarily comes after that, is that the party whose ox is being gored, not technically the respondent, but the party against whom the discovery is going to be used in the foreign proceeding -- in this case, TV Azteca -- comes into the § 1782 court, intervenes, and makes various arguments to the § 1782 court as to why this discovery should not, in fact, go forward.

Anything like that happening in Florida? Let me hear from the Trustee first.

MR. ELLIS: Of course, your Honor.

That has not happened. TV Azteca has not intervened. We served the subpoenas pursuant to the Court's order. Some but not all of the respondents have just moved to quash or, I suppose, vacate the subpoenas.

THE COURT: They've moved to quash.

MR. ELLIS: Exactly. Two of them --

THE COURT: On their own steam, asserting their own objections, not TV Azteca's objections?

MR. ELLIS: Correct.

They did raise similar arguments to what TV Azteca is raising here about the discovery stay in this court.

They are also arguing various things under the *Intel* test. Notably, they are not challenging any of the allegations the Trustee made. But that's two of the respondents --

THE COURT: But there's no -- but that's ridiculous. Let me just say this at the beginning so we don't waste time here.

I don't see any of the issues which are before me today or in the foreseeable future as depending on whether there was or was not financial skullduggery between TV Azteca and AlterBank. That's not why we're here.

MR. ELLIS: I agree with that, your Honor. It's just two of the respondents that are challenging our subpoenas, AlterBank and an employee of AlterBank named Blas -- B-L-A-S -- Santander.

THE COURT: Okay.

Mr. Shaftel, you looked like you had something you wanted to add to that.

MR. SHAFTEL: Only, your Honor, we -- we certainly have not intervened. I am not planning imminently -- well, my clients are not imminently

planning to intervene, preserving all rights.

I do believe there are some --

THE COURT: Well, if you're going to do it, don't wait.

MR. SHAFTEL: Okay. Yeah, there are some very serious --

THE COURT: There's going to be a laches argument if you do.

MR. SHAFTEL: I just read a brief that came across the transom last night. There's some very serious jurisdictional issues there. I think the Trustee is trying to base jurisdiction on former -- the presence of former directors in the Southern District of Florida. It's a St. Lucia financial institution.

So to some extent, that § 1782 application may become moot, but there are some very serious issues here, which I think do remain very much alive.

THE COURT: Okay.

So, so far in the Southern District of Florida, the respondents, the subpoena recipients, have raised various objections by motion, motion to quash or something. Is it a motion to vacate the initial --

MR. SHAFTEL: Vacate.

THE COURT: -- ex parte order? Okay.

TV Azteca, which may well be cheering them on from the sidelines, has not appeared or sought to intervene under its own name, which, of course, limits the arguments that can be made to the Southern District of Florida. But that's your strategic decision. I don't dictate that.

Which is a good segue, I guess, into what I'm going to say next, which is, generally speaking, I don't dictate what the Southern District of Florida can or can't do or what either parties or non-parties here can or can't argue in the Southern District of Florida. And I think that TV Azteca recognizes this, or at least recognized it by the time that they filed their reply letter brief on July the 2nd.

So if I understand the current state of play -- Mr. Shaftel, please tell me if I'm with you here -- TV Azteca seeks from this Court, from me, in the form of, essentially, a species of protective order, perhaps under Rule 26, an order saying to the Trustee, whatever you get in Florida, you can't use here.

Is that what you want?

MR. SHAFTEL: I think that is --

THE COURT: One of the things you want?

MR. SHAFTEL: -- a large chunk. It may be the most substantial chunk of what we want.

I also -- I think in addition to Rule 26 and the inherent authority of this Court would invoke the goose/gander rule.

THE COURT: The which rule?

MR. SHAFTEL: Goose/gander rule. The time-honored goose --

THE COURT: Oh, the "what's good for the" rule?

MR. SHAFTEL: What's good for the goose is --

THE COURT: I understand the equitable arguments here, but, look, both sides here, from a procedural standpoint, in my view, have been way too clever by half. Everybody is trying to have it both ways here, one way or the other.

MR. SHAFTEL: Your Honor, can I speak to that issue? And it's why we view this as serious.

There's three sequential items that occurred. And I think it's important for the Court to appreciate and for us to --

THE COURT: I think I appreciate what

happened, but go ahead.

MR. SHAFTEL: It does start with a March --

THE COURT: I understand about the stay motion, which -- while the stay motion was pending, the plaintiff sent you some document demands with respect to this alleged financial skullduggery. Then the plaintiff got a stay motion. Then the plaintiff went to Florida to go behind the back of the stay motion, in your view.

MR. SHAFTEL: That's the half of it, but there's another half.

As your Honor points out, we did not persuade your Honor that discovery should proceed. We vigorously objected. We didn't prevail on that issue. One day --

THE COURT: And by the way, just a procedural note here: You didn't object under Rule 72(a) to my stay order to the district judge, correct?

MR. SHAFTEL: That is correct, your Honor.

THE COURT: Which means that's not an appealable issue for you.

MR. SHAFTEL: And we're not here today to revisit that issue. That's simply the starting point, an important starting point in what in the

chronology then unfolds.

Together with the stay -- oh, and your Honor was very explicit in your stay order that there may be other claims, other issues that fall out of the summary judgment briefing, which the same order allowed to --

THE COURT: I'm glad you brought that up.

MR. SHAFTEL: Okay.

THE COURT: The order explicitly said -- and I'm paraphrasing here -- I don't think you all need any discovery with respect to the summary judgment motion that the Trustee says it's going to make. But if when they file that summary judgment motion, TV Azteca discovers an argument why my stay should be modified, you can come back to me at that point. But you didn't.

MR. SHAFTEL: That holding applied to both sides --

THE COURT: Uh-huh.

MR. SHAFTEL: -- that if either side wants to pursue discovery, once the summary judgment briefing is --

THE COURT: Once you saw the --

MR. SHAFTEL: -- delineated, not that you can then go off unilaterally and pursue discovery.

You go back to your Honor in the last --

THE COURT: If you want to do discovery in the Southern District of New York.

MR. SHAFTEL: So what happens on -- I think it was June the 1st -- we file our opposition to the summary judgment, I guess, briefs -- there was two summary judgment motions, and invoke Rule 56(d), that, among other grounds, summary judgment is unwarranted because discovery is required.

THE COURT: Sure. And --

MR. SHAFTEL: One day later --

THE COURT: And, as you know, the summary judgment motions are not before me, but I glanced at the briefs once they all came in at the end -- well, maybe it's the end. I guess there's one more surreply left to go.

So I saw your Rule 56(d) arguments, but they were addressed to the breach-of-contract claim and/or the affirmative defenses as articulated in the pleadings as they now stand.

MR. SHAFTEL: One day after that opposition, or oppositions in the plural, I think we -- the Trustee files the § 1782 application.

THE COURT: Right.

MR. SHAFTEL: Is this my -- it's a

grievance. Is it my biggest grievance? I'm not there yet. But it's a grievance, okay, because you know, a day earlier, I would have put in as part of my 56(d) or as part of my advocacy in opposition to summary judgment -- look at the discovery the Trustee is seeking, and in their § 1782 application, they explicitly open the door that it may be used in U.S. litigation.

THE COURT: They do, but they don't argue that they are going to use their § 1782 discovery in connection with the pleadings as they currently exist. And I don't see how it would be relevant to the pleadings as they currently exist.

What the Trustee argues, I think, is that the § 1782 evidence we are going to use in the Mexican concurso -- and by the way, if we manage to amend our complaint in the Southern District of New York to allege new claims arising out of the alleged financial skullduggery of TV Azteca, then this evidence that we're asking for in Florida would be relevant to our new claims.

I think that's --

MR. SHAFTEL: Your Honor --

THE COURT: I think that's the argument.

MR. SHAFTEL: I don't believe that is

perfectly fair to what their brief says. There's no articulation, oh, this will only relate to our new claims, all right. We're, sort of, reading that gloss in. But then let's get to the new claims.

So one day after --

THE COURT: Also, that motion is also not before me, as you know.

MR. SHAFTEL: No. But it's all very relevant to the relief we are seeking today. This is the context for that relief.

So one day after, all right, I put in my 56(d) argument, they then seek discovery.

Within a week of seeking discovery within this other district, they assert --

THE COURT: Make their emergency motion to amend.

MR. SHAFTEL: -- the new claims.

THE COURT: Right.

MR. SHAFTEL: Okay. They were drafting that complaint. They knew that amended, prepared, amended complaint.

THE COURT: Okay. Listen. I'm going to say this one more time -- I'm going to say two things.

I do understand the sequence of events

here, number one. Number two, both sides here, it seems to me, have some pretty good -- I'll call them grievances because I'm not sure they're legally actionable under all of the relevant statutes and rules. But both sides here have argued with some weight that the other side is being very sneaky and running around implementing legal strategies without telling the other side what it's doing.

MR. SHAFTEL: Your Honor, if I could just --

THE COURT: They claim that you sneakily went and got this financing from AlterBank, and then that you -- "you," TV Azteca, sneakily went and filed this concurso and wouldn't even show them the petition for weeks and weeks and weeks.

So these allegations are going both ways --

MR. SHAFTEL: But --

THE COURT: -- and I'm not sure how relevant any of them are to what we're here on today.

MR. SHAFTEL: Your Honor, what was just referenced are allegations which we hotly, vigorously dispute. What I'm now walking through is a chronology that can't be disputed because seeking the § 1782 discovery -- remember, there's a third

item.

They seek the § 1782 discovery. Within a week, they file to amend the pleading to capture the very issues subject to that § 1782 discovery.

THE COURT: Correct. So you --

MR. SHAFTEL: Then they do one other item, your Honor.

THE COURT: So you agree with me. You agree with me, that in your view, what the § 1782 discovery would be relevant to in the Southern District of New York is, or at least is primarily, the new claims that they don't yet have leave to plead.

MR. SHAFTEL: They're certainly relevant to the "new claims" in significant part. I'm not -- I don't think I would agree that they don't bear relevance on the pending claims. We don't have the discovery yet, so it's hard to know in advance.

But I want to point out the third and, I think, actually, the most troublesome aspect of this chronology, is not only are they seeking to amend the complaint to add these new claims, they also are seeking to have the new claims adjudicated through trial or through disposition --

THE COURT: On an expedited --

MR. SHAFTEL: -- within 45 days.

So they are jump-starting --

THE COURT: Most of those 45 days have already run.

MR. SHAFTEL: So, your Honor, in a crazy, lopsided way, they are jump-starting the discovery on the new claims while telling the district court, telling --

THE COURT: I get that.

MR. SHAFTEL: -- Judge Gardephe, oh, let's get this all done in 45 days.

Well, they are not getting it done in 45 days. They started on June the 2nd.

THE COURT: I get that.

MR. SHAFTEL: And --

THE COURT: But remember why we're here. Remember why we're here. You want me, first and foremost, to tell the Trustee that whatever it gets in Florida it can't use here, ever, under any circumstances. I'm putting a gloss on your letter now. Ever, under any circumstances, whether they succeed in amending or don't succeed in amending, whether Judge Gardephe gives them an expedited schedule or doesn't give them an expedited schedule.

Do you have any authority that says --

beyond my general authority under Rule 26 and my inherent authority to sequence and order discovery, do you have any analogous cases that you can think of where a court has decreed in advance that discovery lawfully obtained through a § 1782 process elsewhere can't be used in my court, ever?

MR. SHAFTEL: We do cite the Court to cases which preclude parties from, in the face of a discovery stay, backdooring discovery through parallel, extrinsic proceedings.

THE COURT: Well, you cited *Koch v. Greenberg*, right? And that case involved, if I recall it, two cases that were both filed in the Southern District of New York under two different docket numbers. And the question wasn't whether the subpoena results could be used -- whether the subpoena results from Case Number 2 could be used in Case Number 1. The question was whether the subpoena could be enforced. And the same court, the Southern District of New York, was ruling on enforcement of the subpoena, as would have been ruling on admissibility of the discovery later.

Here, we have two separate and co-equal United States district courts. And the Southern District of Florida is in charge of determining

whether the Trustee can get what it wants through that § 1782 petition.

MR. SHAFTEL: And we're not asking -- we tried to clarify this, I guess, in our follow-up letter. We are not asking, you know, for an anti-suit injunction. That proceeding will run its course.

We do believe Rule 26 and inherent authority and otherwise, this Court can obviously assess and evaluate what evidence comes and does not come in.

THE COURT: Or --

MR. SHAFTEL: Works all the time. It's the flip side -- I think it's the flip side of the same coin.

THE COURT: Just to --

MR. SHAFTEL: You know, you put in some document on summary judgment after the close of fact discovery that you didn't produce, you know, eight out of ten judges may say no to that. So -- and I think this is just a logical extension of that situation.

THE COURT: Just to complete my survey of the relevant case law, which is not exhaustive -- I depend on what the parties -- at least, I start with

what the parties show me.

You also cited a case from Judge Nathan when she was here in the district court where she was faced with a § 1782 petition and, in her capacity as the § 1782 judge was very skeptical that the proceeds of that discovery were going to be used in the forum proceeding. Again, that's something for a § 1782 judge to think about and make a decision about, not mine.

And I understand that you are not directly asking me to interfere in the § 1782 proceeding or to decide for the Southern District of Florida what discovery can take place against whom, et cetera, et cetera.

What you're asking me for is an advanced preclusion order when I don't know yet what the Trustee is going to get in Florida; whether it's going to go first to Mexico and use it there, which is what it says in Florida is its primary use for the § 1782 discovery; whether Judge Gardephe is going to permit the Trustee to amend to add claims that would make this Florida discovery, in my view, directly relevant to the new claims in the Southern District of New York; whether, if he permits the Trustee to amend, he's going to authorize some form

of expedited discovery or not. I don't know any of these things yet.

I agree with you that I have the power to keep discovery out if I feel that there's something inherently unfair or unequal about the way in which it was obtained or the timing with which it was obtained, and it puts the other party at an unfair disadvantage. But there are a lot of ways to skin that cat, and an advanced preclusion order doesn't strike me as the best way.

MR. SHAFTEL: If it's premature, getting back to the issue of waiver or sitting on your hands, you know, our position is clear in the record. We think it was improper. We think it was real gamesmanship. But we also did not want to, recognizing that last page of your Honor's March order, which said, you want discovery, come here first if you want the stay modified in any respect.

THE COURT: I'm not sure that's a fair reading of the last page of my March 17th order.

MR. SHAFTEL: Well, given our reading of it, we did want to -- we did want to come to the Court and, as I say, the "good for the goose, good for the gander" rule. And we do not read your order and don't want to be accused of tripping over it

inadvertently. We do not read your Honor's order precluding us, in aid of the concurso or another foreign proceeding, from seeking § 1782 discovery as well.

THE COURT: For use in the concurso.

MR. SHAFTEL: Discovery is stayed in this action for use in the concurso or some other parallel proceeding.

THE COURT: By definition --

MR. SHAFTEL: I'm not aware of any.

THE COURT: By definition under § 1782, you have to make the pitch to the § 1782 court, that the discovery is for use in a "foreign proceeding." I presume nobody seems to be arguing here that a Mexican bankruptcy proceeding would count for that purpose.

Now, if you do that under § 1782, I can see a situation in which the § 1782 judge might raise her or his eyebrows and say, TV Azteca, what do you need discovery for? It's your bankruptcy. You know everything that you need to know.

But, again, just as I said a moment ago about the current § 1782 petition filed by the Trustee, that would be the § 1782 court's job, not mine.

MR. SHAFTEL: If I'm faulted for trying to be for this side more candid and explicit, we just, you know, wanted to clarify, given the Trustee's implementation of the stay order, you know, what our reading is of it as well and what it allows us, in parallel, to do as well.

THE COURT: All right.

So I think you had a backup ask in your reply letter brief, as I read it, which is, I think, what you just said.

You say, quote, on page 2: "TV Azteca, therefore, requests that the Court clarify that its stay order does not restrict either party's ability to seek § 1782 discovery for use in the concurso."

MR. SHAFTEL: That's right, your Honor.

I would just, I think, tweak the reference to "backup" because I think these are independent --

THE COURT: All right. Second, then. Not backup. Second request in order in which you articulated them. All right.

And you may or may not have a third request in there. I'm not 100 percent certain. But you do appear to argue, towards the bottom of the second page of your reply brief, that you seek a "symmetrical restriction running the other way."

I'm not sure what you mean by that. Maybe I'm misreading your brief. Maybe that's not --

MR. SHAFTEL: Certainly, the intent in terms of the relief being requested was, one, you know, I wouldn't call it outright preclusion. We did appreciate we are not there yet, but an instruction that if discovery being obtained in these simultaneous, if not overlapping, matters cannot be used in this case absent, you know, clearance from the Court. These aren't simply, you know, typical documents that the Trustee should be able to produce -- oh, these are documents in our possession, custody and control. We obtained them through this discovery -- when it is a backdoor. It is an end run around the stay.

So I think maybe that first request really was less in outright preclusion. I appreciate we're early, way early on that, but more of an instruction, that there is a burden here, given the circumstances and the overlapping discovery simultaneous with the stay that Trustee requested.

So that's the first relief. And the second is relief -- or at least I want it to be on the record that we, too, will plan to seek § 1782 discovery in aid of the concurso or some other

foreign proceeding if it arises, and we are not seeing that as violative of the discovery stay in this case.

THE COURT: Thank you.

Let me hear from Mr. Ellis. Or whose motion is this? Mr. Ellis?

MR. ELLIS: Not my motion, your Honor, but it is my § 1782 petition.

THE COURT: No. I mean, who is arguing for the Trustee before me today?

MR. ELLIS: I am, your Honor. Yes.

THE COURT: All right. So let me begin -- I want to back up now, if you don't mind.

On March the 13th of this year, while you had a motion pending before me for leave to make an early discovery -- sorry, an early summary judgment motion without any discovery, you served in this action -- on the caption of this action, you served a third request for production of documents on TV Azteca and its affiliates, seeking, as I understand it, substantially the same discovery that you're now seeking under § 1782 in the Southern District of Florida. You're telling the Southern District of Florida that it's for use in the concurso.

What was your plan for using it when you

served document demands in this case seeking that information?

MR. ELLIS: We were seeking information which we were raising with Judge Gardephe when we told him of our concerns about the concurso. As you know, this has all been ex parte so far. We're on the outside looking in.

THE COURT: What claim or defense that you had pleaded in this action as of March of 2026 was this third set of RFPs relevant to?

MR. ELLIS: We are concerned about compliance with the anti-suit injunction, your Honor.

THE COURT: So it wasn't actually relevant substantively to either the Trustee's claim for breach of contract or TV Azteca's many affirmative defenses. It was relevant to a procedural irregularity that you were concerned about?

MR. ELLIS: Count 1. It's not relevant to Count 1, your Honor. No.

THE COURT: And you say it was relevant to whether TV Azteca had violated the anti-suit injunction?

MR. ELLIS: Yes.

THE COURT: Well, if your theory was that

filing the Mexican concurso violated the anti-suit injunction, then surely you didn't need discovery into, for example, documents sufficient to show the identities, amounts held, and votes of all shareholders who voted regarding the concurso, et cetera.

I mean, I just -- let's be honest with one another. It seems to me that your third set of RFPs was, in fact, an effort to use the discovery processes of this court, the Southern District of New York, to obtain discovery for use either in, A, the concurso itself, where you hope to bring fraudulent conveyance claims; or B, for use in a broadened version of this case after you convince the Court to allow you to amend your complaint.

MR. ELLIS: Potentially, yes, for the second, and I should be very clear about that. Our concerns were about the interference with the jurisdiction of this Court and this Court's authority under the forum selection clause to hear this case.

Perhaps we could have more narrowly tailored those requests. I recognize that. But we're not trying to use this as a backdoor to get to the concurso, and we're certainly not trying to hide

what we're doing in any one court from any other court. We've been very transparent.

THE COURT: I understand you were transparent in Florida about the existence of the stay here. Everybody here is too clever by half.

MR. ELLIS: I understand.

THE COURT: I think I may have mentioned that previously. Everybody here wants everything, everywhere, all the time. I know that movie won a lot of prizes, but it's not impressing the critics here in the Southern District of New York.

MR. ELLIS: I understand, your Honor. And it's not our intent to try to be clever here. It's not our intent to try to manipulate the rules to get some advantage in one court that we couldn't get in another court. It is that we -- and this is why I mentioned the things about AlterBank, not because I think you're going to grant relief or not grant relief today because you think the claims, as you put, as skullduggery are accurate -- you don't have the proof before you -- but because we are in a corner here that we filed these complaints.

We did proceed on Count 1 arguing that we didn't need discovery because the claims were straightforward, but we didn't know what was

happening at the same time we were preparing that summary judgment motion and trying to get this case, the collection action part of that case, move forward. We didn't know that they had taken out what appears to be this massive secured loan at a time when they're insolvent. And, again, they can dispute that if they want.

THE COURT: Well, they say that you did know because it was revealed -- I don't know -- last February or something like that.

MR. ELLIS: Right. They've made arguments about the press reports and what we knew or should have known. But the main thing is, to our view, we couldn't get the concurso --

THE COURT: Mr. Shaftel, did we chat about body language when we were here before?

MR. SHAFTEL: I don't remember that, your Honor.

THE COURT: Trial rules, please. Thank you.

Go ahead.

MR. ELLIS: Sorry.

We learned these facts from the concurso petition in a way that we could act on them. I don't think it would be well appreciated if we filed

complaints based on source news reports.

But we got the concurso petition in May and were in a bind because, yes, we moved for summary judgment. We just learned these new facts which may make any judgment we get on Count 1 worthless; that if they have been able to manipulate these rules so that they've stripped the company of its assets, they've incurred all this new debt, they've manipulated intercompany voting rules in the way we talk about in the intercompany claim part of the complaint, what we got on Count 1 could be effectively worthless in a nightmare scenario.

And, furthermore, we face, as we describe, these very tight deadlines in the concurso proceeding, as we understand them from Mexican counsel, to act.

So that's why we filed the § 1782 petition in Florida, not for use in this action, because there is no live claim that's -- to which those targets -- that evidence would be relevant, but because we genuinely need to use that in Mexico on an expedited basis if we are to show, as we believe, the AlterBank loan is a fraudulent conveyance.

We have also asserted different claims, much narrower claims, I'll note, in New York. We're

not saying that we're going to prove the AlterBank loan as a fraudulent conveyance in Counts 2 through 5 of our complaint. We're saying that it violates the indentures rules on permitted debt and the granting of liens.

There will be some overlap between the AlterBank discovery in the § 1782 proceeding and, if the amended complaint is granted, the discovery in the SDNY. But as you know, motion to amend has not been granted, and we don't know what's going to be granted, and we don't know what's going to be within scope in that case.

THE COURT: You do understand, I take it, that if the district judge grants your motion to amend and you immediately pop up with an armful of documents or other discovery that you've obtained in the Southern District of Florida and say, here's our evidence, Judge Gardephe, please give us an expedited resolution, you do understand that that's going to seem a little unfair because you got the drop on that discovery.

MR. ELLIS: I understand. Our intention is not to get the drop on TV Azteca. That's why we informed them that we were serving the § 1782 petitions. We served them notice of subpoenas under

Rule 45. We are going to give them our subpoena returns when we get them in Florida.

This is not an opportunity for us to have this discovery, digest it, get some early advantage, and then try to force TV Azteca to respond with less time. We want to be transparent. We don't think the facts are going to hurt here. We think -- we want sunshine on our side.

THE COURT: All right.

Look, my inclination here is to do nothing. And I don't -- and by that, I don't mean that there won't be something for me to do at the next step or the step after that. In the scenario that I just discussed with Mr. Ellis, should the Trustee attempt to bring those § 1782 subpoena returns into this case without having consented to a lifting of the discovery stay here, for example, or without giving TV Azteca a decent shot at reciprocal discovery, whatever reciprocal might look like under the circumstance, that's going to be obviously problematic for the Trustee.

But I can't really think of any good reason why I, sitting in the Southern District of New York, should try to anticipate each and every eventuality in which those subpoena returns could turn up as

evidence here and proactively preclude them without knowing what the circumstances are going to be at that point.

So I think my ruling here is that, to the extent the defendants are seeking an advance preclusion order, denied without prejudice to a future preclusion order when the facts are more clear.

And to the extent the defendants are seeking a clarification of my March 17th stay order, denied because no clarification is required.

I think, as Mr. Shaftel has just acknowledged, the order doesn't prevent any party from attempting to make use of the § 1782 proceeding in another United States district court.

And as to whether any particular § 1782 petition is appropriate or inappropriate will be up to the district or magistrate judge who draws that petition when it's filed, not up to me.

Any final words? Because I don't want to let you leave before we talk about the Belgian situation.

MR. SHAFTEL: Your Honor, not on the § 1782 issue. We understand the Court. Appreciate it. Thank you.

THE COURT: All right. Let's move to Belgium then.

MR. SHAFTEL: Which also means we move to Molluzzo.

THE COURT: All right.

Mr. Molluzzo, what's happening in Belgium?

MR. MOLLUZZO: So my understanding that's -- what's happening is -- in Belgium is that the letters rogatory was initially sent to the Belgian Public Prosecutor's Office, which then transferred it to the Belgian court that handles these.

Our Belgian law firm, Strelia, sought to obtain clarification as far as status and what was occurring in that court. And the court told Strelia that they viewed the letters rogatory as stating that they could only communicate with the Court -- being this Court --

THE COURT: What? I'm supposed to call them up on the phone? I don't think so.

MR. MOLLUZZO: Exactly. So that's why we sought clarification and submitted the proposed order to your --

THE COURT: So your Belgian counsel says that if I sign this order, then your Belgian counsel

can talk to the folks they need to talk to in Belgium?

MR. MOLLUZZO: Correct.

THE COURT: Okay.

Any objection?

MR. ELLIS: That's fine by us.

THE COURT: I'll sign the order.

MR. MOLLUZZO: Thank you, your Honor.

THE COURT: Anything further for today?

MR. ELLIS: Just one possibly precautionary request.

As you've seen, we've asked for very expedited treatment of the motion to amend. If that's granted, if we get our request, in theory, we're off to the races. We're off to trial in 45 days.

If Judge Gardephe grants the motion to amend -- and I recognize he may or may not -- we just ask that we could get back here together promptly so that we can make sure discovery proceeds on the track that we need it to proceed.

We're ready to go. We've got our requests for production ready. We've got our 26(a)(1)s. We're going to do everything we can to make this move, but we just ask that early cooperation happen

here so that we can make that happen on the schedule we're hoping for.

THE COURT: Well, just like I told the loyal opposition, I'm not inclined to issue orders today about what I will do two or three steps down the road, depending on what happens then.

You know where I live. I'm on vacation next week, and I have criminal duty for one week in August, but other than that, you know where to find me, and you can generally find me in a hurry if you need to.

MR. ELLIS: Just please don't be surprised if we try to find you in a hurry. I can at least say, though, my hope is it's not going to happen next week.

THE COURT: Well, remind me. Did Judge Gardephe give you a schedule for additional briefing on the request to amend and for expedition?

MR. ELLIS: He put in a briefing schedule. Everything's going to be fully served and filed on the docket today.

THE COURT: All right. So after that, it will just be in the district judge's hands?

MR. ELLIS: Correct.

THE COURT: Well, I guess I'll find out

when you find out.

MR. ELLIS: Yes, your Honor.

THE COURT: All right. So I'll go ahead, I'll sign the Belgian order.

MR. MOLLUZZO: Thank you, your Honor.

THE COURT: Do you need an original of that? Or can we just put it on the docket?

MR. MOLLUZZO: I think the docket is fine. Yes.

THE COURT: Actually, let me think about this. Proposed order authorizing counsel to communicate.

All right. We'll put it on the docket.

MR. MOLLUZZO: Thank you.

THE COURT: And if you need some fancy copy with, you know, sealing wax and stuff, I think you get that from the Clerk's Office.

MR. MOLLUZZO: We know where to find you.

THE COURT: No. I think you get that from the Clerk's Office. I don't know. You figure that out.

All right. We'll be adjourned.

MR. MOLLUZZO: Thank you, your Honor.

Thank you all very much.

0o0

C E R T I F I C A T E

I, Adrienne M. Mignano, certify that the foregoing transcript of proceedings in the case of The Bank of New York Mellon v. TV Azteca, S.A.B. de C.V., et al.; Docket #22CV8164 was prepared using digital transcription software and is a true and accurate record of the proceedings.

Adrienne M. Mignano

Signature ___________________________

ADRIENNE M. MIGNANO, RPR

Date: July 16, 2026