**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| *In re:* Application of<br><br>THE BANK OF NEW YORK MELLON, in its capacity as TRUSTEE FOR THE TV AZTECA, S.A.B. DE C.V. 8.25% SENIOR NOTES DUE 2024,<br><br>to Conduct Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782. | Case No. 1:26-mc-23885-JEM<br><br>*Expedited Consideration Requested* |

**DECLARATION OF JOSE VICTOR RODRIGUEZ BARRERA ON MEXICAN LAW IN SUPPORT OF TV AZTECA, S.A.B. DE C.V.'S RENEWED MOTION FOR A PROTECTIVE ORDER AND TO STAY DISCOVERY**

JOSE VICTOR RODRIGUEZ BARRERA declares the following under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am a partner at Carrasco, Barrera, Rodríguez Abogados, a law firm based in Mexico City, Mexico. I have been licensed to practice law in Mexico since 1995 (professional license No. 2736673). My practice focuses on complex commercial litigation, insolvency and restructuring proceedings under the Commercial Insolvency Law (*Ley de Concursos Mercantiles*, the "LCM"), amparo proceedings, and cross-border disputes. Throughout my career, I have represented business owners, creditors, and other interested parties in numerous commercial insolvency proceedings before Mexican federal courts, and I regularly advise on the interaction between Mexican insolvency proceedings and litigation and arbitration proceedings in foreign jurisdictions, including the United States of America.

2. I submit this declaration as an independent expert in Mexican law at the request of Non-Party Intervenor TV Azteca, S.A.B. de C.V. ("TV Azteca") in support of its renewed motion

for a protective order and to stay discovery (the "Motion"). Specifically, I have been asked to address certain assertions concerning Mexican insolvency law.

3. My compensation is not contingent upon the content of my opinions or the outcome of this litigation. If called to testify, I would competently testify on the matters set forth in this statement.

4. My opinions are limited to Mexican law. I do not express any opinion regarding the law of the State of New York or that of any other foreign jurisdiction; I do not express any opinion regarding disputed factual issues in this litigation; and I do not express any opinion regarding the merits of the parties' claims.

5. In forming the opinions set forth below, I have relied on my education, training, and professional experience practicing Mexican law, as well as the relevant provisions of the LCM. I also reviewed the relevant portions of TV Azteca's *concurso* petition and the parties' briefing concerning that petition.

**Summary of Conclusions**

6. First, the LCM regime for setting aside acts in fraud of creditors (LCM Articles 112 through 115) is designed to protect the bankruptcy estate and the collectivity of creditors. Every category of ineffectiveness presupposes that the challenged act harmed the estate—by removing value from it or by conferring an undue preference on one creditor at the expense of others.

7. Second, Articles 112 to 115 of the LCM do not contemplate that a loan to the debtor can be voided or treated as fraudulent because the loan was too risky for the lender, or departed from the standard practices under which a lender would provide financing to a debtor in like circumstances.

8. Third, LCM Article 114 expressly provides that the enumerated acts are not ineffective where the estate benefits from the payments made to the debtor. The loan provided by AlterBank to TV Azteca (the "AlterBank Loan") did not impoverish the estate. Its proceeds were used, on the same day, to discharge a final and enforceable tax liability that the Mexican tax authority was days from enforcing against TV Azteca's accounts and business, and the payment reduced the estate's liabilities by nearly two billion pesos. Under Mexican law, such an act is the opposite of an act in fraud of creditors and cannot be declared ineffective under LCM Articles 113 through 115.

**<u>The Mexican-Law Framework for Acts in Fraud of Creditors</u>**

9. When a Mexican court declares a merchant in *concurso mercantil*, the judgment fixes a "retroaction date" (*fecha de retroacción*)—by default, 270 days before the date of the concurso declaration—which defines the period within which the debtor's prior acts may be examined and, if they are in fraud of creditors, declared ineffective against the estate. LCM Art. 112. The purpose of this regime, like the parallel civil-law action for acts in fraud of creditors, is to annul acts that harm creditors and diminish the estate available to satisfy them.

10. LCM Articles 113 through 115 identify the acts that may be declared ineffective against the estate when performed after the retroaction date. Article 114 enumerates categories of acts deemed to be in fraud of creditors, including: acts for which the counterparty gave nothing in return; transactions in which the debtor paid a notoriously higher price, or received a notoriously lower price, than the value of the good or service. LCM Art. 114.

11. There is nothing in Article 114 suggesting that a loan to a debtor is fraudulent because the lender took too much risk or departed from market practices when issuing the loan. No Mexican precedent has ever held such a thing.

12. Critically, Article 114 itself provides that the acts it enumerates are not ineffective where the estate benefits from the payments made to the debtor. In other words, even an act that would otherwise fall within one of Article 114's categories is not set aside where the estate derived a benefit from it. This exception reflects the animating principle of the entire regime: ineffectiveness is a remedy for acts that harm the estate, not for acts that help it.

**The AlterBank Loan**

13. The undisputed facts of record, which I have reviewed, establish that the estate benefited from the AlterBank Loan. TV Azteca drew MXN $4,085,000,000 under the facility and, on the same day, transferred MXN $3,925,150,202 to the Servicio de Administración Tributaria (the "SAT") to discharge final, non-appealable tax assessments. *See* Response to the *Incidente* ¶¶ 5(C); 21(B)(e).[1]

14. The SAT had demanded payment on January 9, 2026, with a five-day deadline, and had warned that it would otherwise seize TV Azteca's bank deposits under Article 156-Ter of the Federal Tax Code and enforce the administrative attachment it already held over the business itself. Id. ¶ 21(B)(b)-(c).

15. TV Azteca's payment triggered statutory reductions of the tax liability under Article 70-A of the Federal Tax Code in the amount of MXN $1,856,303,526—32.11% of the tax debt. As a result, liabilities that would have stood at MXN $5,781,453,728 were extinguished for MXN $3,925,150,202. *Id.* ¶ 21(B)(d)-(e).

16. An act that reduced the estate's liabilities by approximately 1.86 billion peso, and that averted the seizure of the debtor's operating accounts and the enforcement of an attachment over its business, is the antithesis of an act in fraud of creditors. *Id.* ¶¶ 6; 21(B)(f)-(g). The estate

[1] The Response to the *Incidente* is Exhibit K to the Declaration of Pulecio-Boek submitted in support of the Motion.

plainly "benefit[ed] from the payments made to the debtor" within the meaning of LCM Article 114, and the Loan therefore cannot be declared ineffective against the estate under LCM Articles 113 through 115. *Id.* ¶ 21(D).

17. This conclusion does not change if, as the Trustee alleges, the Loan's terms were "outside of market conditions" or "in contravention of banking and commercial customs and practices." Even accepting that characterization (which is not correct), such a transaction falls within Article 114 only subject to the benefit-to-the-estate exception, which is dispositive here. The Trustee has identified no provision of the LCM (or any other authority), and I am aware of none, under which a loan is rendered ineffective against the estate merely because its pricing or terms were aggressive or unusual, where the estate benefited and suffered no prejudice.

18. Nor does the Trustee's contention that intent is not "the determining factor," or its invocation of the Article 115 presumption, alter the analysis. Whether the debtor's intent is an element, the benefit-to-the-estate exception in Article 114 applies by its terms, and the Article 115 presumption is both rebuttable and directed at the grant or increase of collateral—not at the value-preserving discharge of a mandatory tax debt. The requirement of prejudice to the estate is not dispensed with in either case.

**Conclusion**

19. For the foregoing reasons, it is my opinion that, as a matter of Mexican law, the AlterBank Loan did not impoverish the estate, that the estate benefited from the payment its proceeds funded, and that the Loan therefore cannot be deemed an act in fraud of creditors under LCM Articles 113 through 115—including on the theory that it was made "outside of market conditions."

20. I reserve the right to supplement or amend this Declaration should additional information or documents become available.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Mexico City, Mexico
September 29, 2026

/s/
Jose Victor Rodriguez Barrera